Kevin P. Simpson (SBN: 344644)
KPSimpson@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Fl.
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Sean G. Wieber (*pro hac vice*)
SWieber@winston.com
Sophie R. LaCava (*pro hac vice*)
SLaCava @winston.com
**WINSTON & STRAWN LLP**
300 N. LaSalle Drive, Suite 4400
Chicago, Illinois 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Defendant Foris DAX, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

JOSE ORTIZ and JAVIER HERNANDEZ, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

vs.

FORIS DAX, INC.,

Defendant.

**Case No. 3:25-cv-08950-EMC**

**DEFENDANT FORIS DAX, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT OR FOR MORE DEFINITE STATEMENT IN THE ALTERNATIVE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

DISTRICT JUDGE: EDWARD M. CHEN

Hearing Date: April 9, 2026
Time: 1:30 p.m.
Courtroom: 5
Complaint Filed: October 17, 2025

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that on April 9, 2026, at 1:30 p.m., or as soon thereafter as this matter can be heard, in the Courtroom of the Honorable Edward M. Chen (Courtroom 5) of the above-entitled Court, located at the First Street Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Foris DAX, Inc. d/b/a Crypto.com ("Crypto.com") moves to dismiss the Class Action Complaint (the "Complaint") of Plaintiffs Javier Ortiz and Javier Hernandez (collectively, "Plaintiffs") under Federal Rule of Civil Procedure 12(b)(6). By this Motion, Crypto.com seeks an Order under Rule 12(b)(6) dismissing all causes of action in Plaintiffs' Complaint against Defendant for failure to state a claim. Crypto.com alternatively seeks an Order for a more definite statement under Federal Rule of Civil Procedure 12(e) on the basis of impermissibly vague pleading.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, and all pleadings, papers, and documents on file herein, and any other written or oral submissions that may be presented at or before the hearing on this Motion.

Dated: January 9, 2026

**WINSTON & STRAWN LLP**

By: */s/ Kevin P. Simpson*

Kevin P. Simpson (SBN: 344644)
Sean G. Wieber (*pro hac vice*)
Sophie R. LaCava (*pro hac vice*)

*Attorneys for Defendant Foris DAX, Inc.*

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 3

II. STATEMENT OF THE ISSUES ........ 4

III. PLAINTIFFS' ALLEGATIONS ........ 5

A. The Website ........ 5

B. Plaintiffs' Alleged Visits to the Website ........ 5

IV. LEGAL STANDARDS ........ 6

V. ARGUMENTS ........ 7

A. Plaintiffs' allegations fail to satisfy the heightened pleading requirements of Rule 9(b) and are impermissibly vague. ........ 7

1. Plaintiffs' claims must be dismissed for failure to comply with Rule 9(b). ........ 7

2. Alternatively, Plaintiffs must be ordered to make a more definite statement. ........ 8

B. Plaintiffs fail to state a claim under CIPA Section 631(a) (Count III). ........ 9

1. Plaintiffs fail to allege a violation of the second clause of Section 631(a). ........ 10

2. Plaintiffs do not allege that the contents of any message or communication were intercepted. ........ 11

3. Plaintiffs do not plausibly allege that the Third Parties attempted to read or learn the contents of communications while in transit. ........ 12

4. Because Plaintiffs fail to state a claim under the second clause of Section 631(a), their claims under the third and fourth clauses necessarily fail. ........ 14

C. Plaintiffs fail to state a claim under CIPA Section 638.51 (Count IV). ........ 14

1. The statutory definition of "pen register" is ambiguous and must be interpreted in light of the statute's legislative history, which makes clear that the provision was intended to apply only to telephonic communications. ........ 14

2. The rule of lenity dictates that any ambiguity must be construed in favor of Crypto.com. ........ 19

D. Plaintiffs fail to plead claims for invasion of privacy (Count I) and intrusion upon seclusion (Count II) .......... 19

1. Crypto.com's actions were not highly offensive. .......... 20

2. Plaintiffs cannot allege a reasonable expectation of privacy. .......... 21

E. Plaintiffs fail to plead a claim for fraud, deceit, and/or misrepresentation (Count V). .......... 23

F. Plaintiffs fail to plead a claim for unjust enrichment (Count VI). .......... 24

VI. CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambriz v. Google, LLC*,
2025 U.S. LEXIS 29609 (N.D. Cal. Feb. 10, 2025) ....................13

*Ashcroft v. Iqbal*,
556 U.S. 622 (2009) ....................6, 23

*Aviles v. Liveramp, Inc.*,
2025 Cal. Super. LEXIS 776 (Cal. Super. Ct. Jan. 28, 2025) ....................15

*Ayora v. Inspire Brands, Inc.*,
2025 U.S. Dist. LEXIS 264583 (N.D. Cal. Dec. 22, 2025) ....................7, 8

*B.K. v. Desert Care Network*,
2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024) ....................24

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................25

*Baker v. Yahoo, Inc.*,
2025 U.S. Dist. LEXIS 228493 (S.D.N.Y. Nov. 19, 2025) ....................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) ....................6

*Beltran v. Drs. Med. Ctr. of Modesto*,
2025 U.S. Dist. LEXIS 109145 (E.D. Cal. June 9, 2025) ....................11

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016) ....................8

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................11

*Brower v. Evans*,
257 F.3d 1058 (9th Cir. 2001) ....................18

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................22

*Casillas v. Transitions Optical, Inc.*,
2024 Cal. Super. LEXIS 70523 (Cal. Super. Ct. Sept. 9, 2024) ....................15

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ....................................................................11

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ......................................................................13

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)......................................................................11

*Doe v. Eating Recovery Ctr. LLC*,
2025 U.S. Dist. LEXIS 207952 (N.D. Cal. Oct. 17, 2025)........................................... *passim*

*Esparza v. Gen. Digit. Inc.*,
2024 U.S. Dist. LEXIS 28132 (C.D. Cal. Jan. 16, 2024) ..............................................10, 14

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................................................................................20, 22

*Fireman's Fund Ins. Co. v. Super. Ct.*,
127 Cal. Rptr. 3d 786 (Cal. App. Ct. 2011)...............................................................19

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................................................................11

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ......................................................................25

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ......................................................................21

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)......................................................................16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..............................................................19, 20

*Harrott v. Cty. of Kings*,
25 P.3d 649 (Cal. 2001) ..........................................................................................19

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) .........................................................................................20

*Hubbard v. Google LLC*,
2024 U.S. Dist. LEXIS 117876 (N.D. Cal. July 1, 2024)..............................................20, 24

*In re iPhone Application Litig.*,
844 F. Supp. 2d. 1040 (N.D. Cal. 2012) ....................................................................20

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) (Chen, J.) ....................12

*In re Jenson*,
233 Cal. Rptr. 3d 868 (Cal. Ct. App. 2018) ....................18

*Johnson v. GMRI, Inc.*,
2007 U.S. Dist. LEXIS 27368 (E.D. Cal. Mar. 28, 2007) ....................15, 16

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ....................21

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ....................21

*In re K.B.*,
317 Cal. Rptr. 3d 798 (Cal. Ct. App. 2024) ....................18

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................7

*Khamooshi v. Politico LLC*,
2025 U.S. Dist. LEXIS 197891 (N.D. Cal. Oct. 2, 2025) ....................22

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025) ....................15

*La Fontaine v. Vollucci*,
2012 U.S. Dist. LEXIS 198292 (N.D. Cal. July 2, 2012) ....................16

*LaCourt v. Specific Media, Inc.*,
2011 U.S. Dist. LEXIS 50543 (C.D. Cal. Apr. 28, 2011) ....................24

*Licea v. Hickory Farms LLC*,
2024 Cal. Super. LEXIS 66498 (Cal. Super. Ct. Mar. 13, 2024) ....................15

*Martin v. Sephora USA, Inc.*,
2023 U.S. Dist. LEXIS 55930 (E.D. Cal. Mar. 30, 2023) ....................9

*McCoy v. Alphabet, Inc.*,
2021 U.S. Dist. LEXIS 24180 (N.D. Cal. Feb. 2, 2021) ....................24

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ....................15

*Mirmalek v. L.A. Times Commc'ns LLC*,
2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ....................15, 16

*Ovation Toys Co. v. Only Hearts Club*,
675 F. App'x 721 (9th Cir. 2017) ....................7, 8, 9

*People v. Blair*,
602 P.2d 738 (Cal. 1979) ....................17

*People v. Cornett*,
118 Cal. Rptr. 3d 816 (Cal. Ct. App. 2010) ....................16

*People v. Johnson*,
59 Cal. Rptr. 3d 405 (Cal. Ct. App. 2007) ....................19

*People v. Ramirez*,
169 Cal. Rptr. 3d 260 (Cal. Ct. App. 2014) ....................19

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) ....................8

*Popa v. Microsoft Corp*.
153 F. 4th 784 (9th Cir. 2025) ....................4, 20, 21, 22

*Price v. Headspace, Inc.*,
2025 Cal. Super. LEXIS 27951 (Cal. Super. Ct. Apr. 1, 2025) ....................15

*R.C. v. Sussex Publishers, LLC*,
2025 U.S. Dist. LEXIS 59491 (N.D. Cal. Mar. 28, 2025) ....................12, 14

*Rieckborn v. Jeffries, LLC*,
81 F. Supp. 3d 902 (N.D. Cal. 2015) ....................7, 23

*Riganian v. LiveRamp Holdings, Inc*.,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ....................24, 25

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
Case No. 25STCV15350, Order (Cal. Super. Ct. Dec. 10, 2025) ....................15, 17, 18

*Sanchez v. Cars.com Inc.*,
2025 Cal. Super. LEXIS 710 (Cal. Super. Ct. Jan. 27, 2025) ....................15

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
99 F.4th 458 (9th Cir. 2024) ....................16

*SEC v. Kara*,
2009 U.S. Dist. LEXIS 97593 (N.D. Cal. Oct. 19, 2009) ....................8

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....................24

*Smittick v. Elkerenkotter*,
2008 U.S. Dist. LEXIS 146474 (C.D. Cal. June 24, 2008) ....................8

*Tavernetti v. Super. Ct.*,
583 P.2d 737 (Cal. 1978) ....................9

*Torres v. Prudential Fin., Inc.*,
2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) ....................13

*In re U.S. for an Ord. Authorizing Roving Interception of Oral Commc'ns*,
349 F.3d 1132 (9th Cir. 2003) ....................16

*Underwood v. O'Reilly Auto Parts, Inc.*,
671 F. Supp. 3d 1180 (D. Nev. 2023) ....................6

*Vernon v. City of Los Angeles*,
27 F.3d 1385 (9th Cir. 1994) ....................15

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................7, 23

*Wells v. One2One Learning Found.*,
141 P.3d 225 (Cal. 2006) ....................16

*Wiley v. Universal Music Grp., Inc.*,
2025 U.S. Dist. LEXIS 261303 (N.D. Cal. Dec. 17, 2025) ....................8, 9

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ....................7

*Williams v. What If Holdings, LLC*,
2022 U.S. Dist. LEXIS 230732 (N.D. Cal. Dec. 22, 2022) ....................10

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 U.S. Dist. LEXIS 229707 (S.D. Cal. Nov. 21, 2025) ....................11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................12, 21

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................11, 12

**Statutes**

18 U.S.C. § 3127(3) ....................16

Cal. Civ. Code § 1798.100(c) ....................18

Cal. Civ. Code § 1798.140(v)(1)(A) ........ 18
Cal. Penal Code § 631 ........ 4
Cal. Penal Code § 631(a) ........ *passim*
Cal. Penal Code § 632 ........ 13
Cal. Penal Code § 638.50(b) ........ 14, 16, 18
Cal. Penal Code § 638.51 ........ *passim*
Cal. Penal Code § 638.51(b) ........ 18
Cal. Penal Code § 638.52(d) ........ 17
California Consumer Protection Act ........ 18
California Invasion of Privacy Act ........ *passim*
Wiretap Act ........ 11, 12, 16

**Other Authorities**

Assembly Bill 929 ........ 17
Fed. R. Civ. P. 9(b) ........ *passim*
Fed. R. Civ. P. 12(b)(6) ........ 6, 23
Fed. R. Civ. P. 12(e) ........ 4, 6, 8, 9
U.S. Const. art. III ........ 22
www.crypto.com ........ 5, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs hinge their case on a single allegation: that at some point they merely visited Crypto.com's website. They provide no details as to when they allegedly visited the site, how long the visit lasted, what pages were accessed, or what actions—if any—they took while there, nor do they allege any other facts essential to establishing any viable claim against Crypto.com. They have not alleged that any genuinely personal information was shared, that any sensitive data was disclosed, or that any communications were intercepted by third parties. Nor could they, as the Crypto.com website functions predominantly as a static, informational advertisement directing visitors off platform to download the company's mobile application.

Yet, in the absence of any allegations that Plaintiffs had any meaningful interaction with Crypto.com's website, they seek to transform a mere visit to a public webpage into a statutory privacy claim under the California Invasion of Privacy Act ("CIPA") and to impose $5,000 in statutory damages per visit for a putative class of individuals who likewise had only a passive encounter with a website at an unspecified time.

Unlike the typical CIPA case, this action does not allege that any sensitive personal, financial, or medical information was captured, transmitted, or disclosed to a third party. Instead, Plaintiffs ask the Court to dramatically expand CIPA beyond its text and purpose to regulate nothing more than a passive visit to a publicly available website. That theory finds no support in the statute and would convert CIPA from a targeted privacy law into a sweeping regulation of ordinary web browsing. Plaintiffs' claims rest on that impermissible expansion and should be dismissed for the following reasons.

First, Plaintiffs' allegations are impermissibly vague and conclusory. Not only does the Complaint fail to meet the heightened pleading standard of Rule 9(b)—which applies to all of Plaintiffs' claims—it does not put Crypto.com on notice of the misconduct alleged such that it can adequately prepare a response.

Second, the CIPA provisions Plaintiffs invoke do not apply to modern website technologies.

Nothing in the statutory text suggests the Legislature intended CIPA to govern routine website interactions, and courts have repeatedly rejected efforts to retrofit decades-old wiretapping provisions to fundamentally different technologies.

Third, Plaintiffs fail to state any claim for aiding and abetting. They do not plausibly allege an underlying CIPA violation by any third party, nor do they allege that any communication content was intercepted, acquired, or received. Absent a primary violation and an actual interception, their aiding and abetting theory fails as a matter of law.

Fourth, Plaintiffs' attempt to stretch CIPA's pen register provision to cover website technology directly contradicts the statute's legislative history and purpose, which were narrowly focused on telephone surveillance. Even if the Court were to assume some ambiguity in that provision, it still cannot be applied to the conduct alleged here without rewriting the statute and disregarding the limits imposed by the Legislature.

Finally, Plaintiffs' remaining state-law claims independently fail. Their claims for invasion of privacy and intrusion upon seclusion are inadequately pled and inapplicable to the alleged conduct, as the Ninth Circuit recently confirmed in *Popa v. Microsoft Corp*. 153 F. 4th 784, 791 (9th Cir. 2025). Their fraud and misrepresentation claims fare no better, falling well short of the heightened pleading requirements of Rule 9(b).

For these reasons, Plaintiffs' Complaint should be dismissed in full. Alternatively, as Plaintiffs have provided no detail about their alleged use of Crypto.com's website, the Court should require Plaintiffs to make a more definite statement pursuant to Rule 12(e).

## II. STATEMENT OF THE ISSUES

***First***, whether Plaintiffs' allegations satisfy the heightened pleading requirements of Rule 9(b) or require a more definite statement under Rule 12(e);

***Second***, whether Plaintiffs have failed to state a claim under CIPA Section 631 (Count III);

***Third***, whether Plaintiffs have failed to state a claim under CIPA Section 638.51 (Count IV);

***Fourth***, whether Plaintiffs have failed to state claims for invasion of privacy (Count I) and

intrusion upon seclusion (Count II) under California common law;

***Fifth***, whether Plaintiffs have failed to state a claim for fraud, deceit, and/or misrepresentation (Count V) under California common law; and

***Sixth,*** whether Plaintiffs have failed to state a claim for unjust enrichment (Count VI) under California common law.

## III. PLAINTIFFS' ALLEGATIONS

### A. The Website

Defendant Crypto.com operates the website www.crypto.com (the "Website"). ECF No. 1, Compl. ¶ 1. The Website allegedly uses cookies to collect users' information for advertising and analytics purposes. *Id*. ¶ 2. Cookies are small text files that are sent by a website server to a user's web browser and stored locally on the user's device. *Id*. ¶ 28.

The Website also allegedly uses third-party cookies. *Id*. ¶ 2. A third-party cookie is set by a third-party domain or webserver. *Id*. ¶ 30. Plaintiffs allege that these third-party cookies collected information from users, such as users' browsing activities and "Private Communications" with Crypto.com. *Id*. ¶ 31. The Complaint defines "Private Communications" to include browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data. *Id.*

When a user accesses the Website, the Website allegedly determines the user's location and presents the user with a cookie consent banner. *Id.* ¶¶ 1, 33. The Website's cookie consent banner discloses that the Website uses cookies and gives users the options to control cookies settings. *Id.* ¶ 1. Users are given the option to "Customize Settings," "Disable All," or "Accept All." *Id.* Plaintiffs allege that upon visiting the Website they chose the "Disable All" option, but third-party cookies from a set of providers (the "Third Parties") were still used to track and collect their information in real time. *Id.* ¶ 3.

### B. Plaintiffs' Alleged Visits to the Website

Plaintiffs allegedly visited the Website "on one or more occasions during the last four years." *Id.* ¶¶ 104, 114. Plaintiffs do not specify any dates of their alleged visits. Both Plaintiffs allege that they

selected the "Disable All" option on the Website's cookie consent banner before continuing to "browse" the Website. *Id.* ¶¶ 3, 108, 111, 118, 121. The Complaint provides no information about Plaintiffs' alleged browsing, such as whether they visited any webpages other than the homepage, whether they scrolled through any pages, whether they clicked any links or buttons, whether they entered any information into the Website, or whether they used its search function.

In February 2024, Plaintiff Hernandez allegedly discovered the facts giving rise to this lawsuit. *Id.* ¶ 14. Plaintiff Ortiz allegedly made the same discovery in September 2025. *Id.* Hernandez and Ortiz did not act independently; instead, the Complaint alleges that they were advised of the alleged violations by counsel. *Id.* Before filing this lawsuit, Plaintiff Hernandez filed claims against Crypto.com with the American Arbitration Association, and that action was closed in September 2025. *Id.* ¶ 22. Plaintiff Ortiz never initiated an arbitration proceeding. Both Plaintiffs now assert their claims against Crypto.com in this action.[1]

## IV. LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must sufficiently plead facts that create "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009). Factual allegations must be sufficiently pleaded such that they raise the right to relief "above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555–56 (2007). Additionally, where a pleading "is so vague or ambiguous that the [defendant] cannot reasonably prepare a response, a defendant may move for a more definite statement" of a pleading. Fed. R. Civ. P. 12(e). "Whether to grant a Rule 12(e) motion is within the discretion of the district court." *Underwood v. O'Reilly Auto Parts, Inc.*, 671 F. Supp. 3d 1180, 1187 (D. Nev. 2023).

Plaintiffs' claims are also subject to Rule 9(b). Claims that "sound in fraud," i.e., those that allege a "unified course of fraudulent conduct" and "rely entirely on that course of conduct as a basis of that

[1] Plaintiffs seek to represent a putative class of similarly situated persons. *See* Compl. ¶¶ 134–131. At present, Crypto.com cannot identify the putative class members (if any exist) and contends that the class is not ascertainable. However, Crypto.com expressly reserves and does not waive its right to compel arbitration against any members of the putative class who may be ascertained and who have agreed to arbitrate their claims against Crypto.com.

claim," must satisfy the heightened pleading requirements of Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Here, Plaintiffs' common law claims sound in fraud because Plaintiffs allege that Crypto.com knowingly misrepresented the presence of cookies on the Website, which they claim created a reasonable expectation of privacy in any information shared by users. Compl. ¶¶ 135, 149, 187, 192; *see also Ayora v. Inspire Brands, Inc.*, 2025 U.S. Dist. LEXIS 264583 (N.D. Cal. Dec. 22, 2025) (applying Rule 9(b) to similar claims); *Williams v. Facebook, Inc*., 384 F. Supp. 3d 1043, 1046–52 (N.D. Cal. 2018) (applying Rule 9(b) to claims for intrusion upon seclusion and invasion of privacy); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (Rule 9(b) applies even if complaint does not use the word "fraud").

To successfully plead a claim sounding in fraud, Plaintiffs must state with particularity how, when, where, to whom, and by what means the alleged fraudulent misrepresentations were made, as well as the "manner in which the representations at issue were false and misleading." *See Rieckborn v. Jeffries, LLC*, 81 F. Supp. 3d 902, 913 (N.D. Cal. 2015). Further, Plaintiffs' factual allegations must be "specific enough to give defendants notice of the particular misconduct . . . so they can defend against the charge and not just deny that they did anything wrong." *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 723 (9th Cir. 2017) (internal citations omitted).

## V. ARGUMENTS

### A. Plaintiffs' allegations fail to satisfy the heightened pleading requirements of Rule 9(b) and are impermissibly vague.

Plaintiffs offer no specific allegations about the "what" or the "when" of their engagement with the Website. Without details as to the type of information Plaintiffs purportedly provided, or when they supposedly provided it, Crypto.com cannot adequately prepare a response to the Complaint. Thus, Plaintiffs' Complaint must accordingly be dismissed, or alternatively, amended to make a more definite statement.

#### 1. Plaintiffs' claims must be dismissed for failure to comply with Rule 9(b).

While the Complaint emphasizes types of information Third Parties *can* collect from Website users (*see*, *e.g.*, Compl. ¶ 31), it does not allege any information provided *by Plaintiffs*. Nor do Plaintiffs allege

any specific actions they took to engage with the Website. The absence of any allegations detailing the "what" of the purported fraud is especially problematic where, as here, the nature of the information at issue (for example, whether it contained "contents" under CIPA) is critical to Crypto.com's ability to defend against Plaintiffs' underlying claims. *See Ovation Toys Co.*, 675 F. App'x at 723; *see also Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing fraud-based claims in privacy action where plaintiff "fail[ed] to provide the particulars of *her own experience*" relying on alleged website misrepresentations) (emphasis added).

The Complaint also conspicuously lacks allegations as to the "when" of Crypto.com's alleged misrepresentations. Plaintiffs allege only that they visited the website "on one or more occasions during the last four years." Compl. ¶¶ 104, 114. "This level of generality fails to provide [Crypto.com] with notice of the misconduct alleged" under Rule 9(b). *Wiley v. Universal Music Grp., Inc.*, 2025 U.S. Dist. LEXIS 261303, at *25–26 (N.D. Cal. Dec. 17, 2025); *see also Ayora*, 2025 U.S. Dist. LEXIS 264583 (N.D. Cal. Dec. 22, 2025) (dismissing complaint based on identical allegation of website visits within the "last four years"); *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1174–75 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016) (finding Rule 9(b) not satisfied where the plaintiff failed to allege when he viewed defendant's website or relied on its contents).

Plaintiffs' Complaint should be dismissed in its entirety.

**2. Alternatively, Plaintiffs must be ordered to make a more definite statement.**

Alternatively—and to the extent any claims in the Complaint are not dismissed on other grounds—Plaintiffs should be ordered to file a more definite statement. For the same reasons that the Complaint does not satisfy Rule 9(b), it is also insufficient under Rule 12(e). *See Smittick v. Elkerenkotter*, 2008 U.S. Dist. LEXIS 146474 at *5 (C.D. Cal. June 24, 2008) ("Plaintiff[s'] failure to plead the elements of a fraud claim with any specificity or to comply with Rule 9(b) highlights the need for a more definite statement."); *SEC v. Kara*, 2009 U.S. Dist. LEXIS 97593, at *9 (N.D. Cal. Oct. 19, 2009) (Rule 12(e) "may be used in conjunction with Rule 9(b) to challenge a pleading based on its failure to plead fraud with particularity").

Because the Complaint fails to allege any specifics about the nature or timeframe of their alleged visits to the Website, Crypto.com "cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also Ovation Toys Co*, 675 F. App'x at 723 (Rule 9(b) allegations must be "specific enough" that "defendants can defend against the charge and not just deny that they did anything wrong"). Crypto.com "cannot, for example, determine what specific representations regarding cookies were made on [the Website] on the specific dates that [Plaintiffs] visited," or determine how the Website "was using any cookies placed on users' devices on those specific dates." *Wiley*, 2025 U.S. Dist. LEXIS 261303, at *26.

Courts in similar circumstances have ordered plaintiffs to file amended pleadings. For example, in *Baker v. Yahoo, Inc.*, 2025 U.S. Dist. LEXIS 228493 (S.D.N.Y. Nov. 19, 2025), the plaintiffs (1) alleged that Yahoo violated privacy laws by collecting their information after they signed up for websites that utilized Yahoo's targeted advertising technology, but (2) failed to allege *when* they created accounts on those websites. *Id.* at *1–2, 9. On that basis, the court *sua sponte* ordered plaintiffs to make a more definite statement under Rule 12(e). *Id.* There, as here, by "pleading around that crucial information," plaintiffs "hamstrung" Yahoo's ability to develop defenses, and the court ordered plaintiffs to amend the complaint to identify their account creation dates and other information necessary for Yahoo to identify the "interfaces the plaintiffs encountered" and "policies that are linked or otherwise referenced in those interfaces." *Id.* at *10.

Plaintiffs must be ordered to amend the Complaint to make a more definite statement.

**B. Plaintiffs fail to state a claim under CIPA Section 631(a) (Count III).**

Section 631(a) of CIPA is a convoluted provision that has been described by this Court as a "total mess."[2] That provision directly proscribes three "distinct and mutually independent" types of conduct: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Martin v. Sephora USA, Inc.*, 2023 U.S. Dist. LEXIS 55930, at *17–18 (E.D. Cal. Mar. 30, 2023) (citing *Tavernetti v. Super. Ct.*, 583 P.2d 737

[2] *Doe v. Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS 207952, at *1 (N.D. Cal. Oct. 17, 2025).

(Cal. 1978)). These three types of direct conduct are identified by separate clauses within Section 631(a), which also contains a fourth clause imposing aiding and abetting liability on anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" first three grounds for liability. *Id.* Although not individually numbered in the statute, courts routinely refer to these Section 631(a) subparts as clauses one through four.

Plaintiffs assert that Crypto.com is liable under Section 631(a) for aiding Third Parties in (1) their alleged willful attempt to learn the contents or meaning of a communication in transit over a wire and (2) their attempt to use or communicate information obtained a result—in other words, for the Third Parties' alleged violations of the second and third clauses of Section 631(a). *See* Compl. ¶¶ 165–166, 168–169.[3] As explained below, because Plaintiffs fail to sufficiently allege that the Third Parties actually violated those clauses, they fail to state a claim against Crypto.com for aiding and abetting under the fourth clause. *See, e.g.*, *Esparza v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 28132, at *11 (C.D. Cal. Jan. 16, 2024) ("With respect to the fourth clause, a plaintiff alleging a CIPA violation must adequately allege a violation under one of the first three clauses of Section 631(a)."). Accordingly, Count III of the Complaint should be dismissed.

**1. Plaintiffs fail to allege a violation of the second clause of Section 631(a).**

The second clause of Section 631(a) imposes liability where, "without consent of all parties," a person "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit." Cal. Penal Code § 631(a) (clause two). Plaintiffs fail to plead a violation of that clause for two independent reasons. First, Plaintiffs do not allege that they sent a "communication" or "message" to Crypto.com that included any "contents." Second, Plaintiffs fail to allege that the Third Parties attempted to "read" or "learn" the contents of any such communication while it was "in transit."

[3] Plaintiffs quote the first clause in Paragraph 158, but do not allege that it applies to Crypto.com or the Third Parties. And for good reason: the first clause applies only to telephonic communications, not websites. *See Williams v. What If Holdings, LLC*, 2022 U.S. Dist. LEXIS 230732 (N.D. Cal. Dec. 22, 2022) (collecting cases holding that the first clause "does not apply to the context of the internet").

**2. Plaintiffs do not allege that the contents of any message or communication were intercepted.**

Plaintiffs fail to allege that the Third Parties intercepted the contents of any message or communication between Plaintiffs and Crypto.com. To satisfy the "contents" requirement of CIPA Section 631(a) (clause two), Plaintiffs must allege that they conveyed "information concerning the substance, purport, or meaning of [their] communication" with the Website. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citation and quotation marks omitted).[4] Contents are distinct from "record information," such as "the location of a webpage a user is viewing on the internet." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014); *see also Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) ("simply opening a webpage . . . is not a communication with content").

Here, Plaintiffs only plead disclosure of record information—not contents. Specifically, Plaintiffs only allege that they visited and browsed the Website, which establishes nothing other than that Plaintiffs visited www.crypto.com. *See* Compl. ¶¶ 107, 111 (Plaintiff Ortiz); *id.* ¶¶ 117, 121 (Plaintiff Hernandez). Plaintiffs do not allege that they interacted with the Website other than by clicking the "Disable All" button. For example, they do not allege that they navigated away from the homepage, scrolled the homepage or other pages, clicked any links or buttons, entered any keystrokes, or used the Website's search function.

As a result, Plaintiffs fail to state a claim under the second clause of Section 631(a). Courts have routinely dismissed such claims where, as here, "[p]laintiffs do not explain what information they provided to [d]efendant." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023). And courts have dismissed claims with allegations much more detailed than Plaintiffs' here. *See, e.g.*, *Beltran v. Drs. Med. Ctr. of Modesto*, 2025 U.S. Dist. LEXIS 109145, at *13 (E.D. Cal. June 9, 2025) (granting motion to dismiss where plaintiffs "vaguely allege[d] that they used the Website to search for information" but did "not describe the types of searches they conducted or the webpages they viewed"); *Wright v. TrueCare Prop. Holdings, LLC*, 2025 U.S. Dist. LEXIS 229707, at *9 (S.D. Cal. Nov. 21, 2025)

[4] *Brodsky*'s definition of "contents" comes from the federal Wiretap Act, which courts follow when interpreting CIPA. *See Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citation omitted).

(allegations that Meta tracked "events categorized as searches, contacts, and page views" over three website visits failed to plausibly state a claim); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (alleged interception of "keystrokes, mouse clicks, and pages viewed," did not constitute "contents" under Section 631(a)).[5]

Because Plaintiffs do not allege that the Third Parties intercepted the contents of any communications or messages between Plaintiffs and Crypto.com, Count III should be dismissed.

**3. Plaintiffs do not plausibly allege that the Third Parties attempted to read or learn the contents of communications while in transit.**

Even if Plaintiffs could satisfy the contents requirement, there is not a single allegation to support any inference that the Third Parties attempted to "read" or "learn" those contents while the communications were "in transit," as required to sustain a claim under the second clause of Section 631(a). On the contrary, every relevant allegation describes only real-time *collection* and *storage* of information. *See, e.g.*, Compl. ¶ 31 ("[T]he third-party cookies . . . enable[e] them to surreptitiously track in real time and collect Website users' personal information."); ¶ 39 (Third Parties "access" Private Communications); ¶ 41 (Third Parties "collect" user data in real time); ¶ 43 (data is "transmitted"); ¶ 60 (Third Parties "obtain and store" data).

Clause two is construed narrowly and courts have been clear that it is not violated when a communication is merely *intercepted* while in transit, as Plaintiffs have generally alleged here. *See Doe*, 2025 U.S. Dist. LEXIS 207952, at *6 (a defendant "must do something more than just intercept the communication while it is in transit to be held liable"). Rather, the Third Parties must have actually attempted to *access the contents* in real time. *See id.*; *see also R.C. v. Sussex Publishers, LLC*, 2025 U.S. Dist. LEXIS 59491, at *22 (N.D. Cal. Mar. 28, 2025) (dismissing claims under second clause where

[5] Crypto.com notes that Plaintiffs' allegations here fall short of the allegations that this Court previously found sufficient in *James*, where the plaintiffs alleged that a third party intercepted information about specific webpages viewed by plaintiffs and the searches they conducted on an interactive media website. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) (Chen, J.). Even allegations of webpages viewed, without more, would not be enough. *See In re Zynga*, 750 F.3d at 1108–09 (under the federal Wiretap Act, basic URLs "function like an address" and are not "contents").

plaintiffs did "not plausibly allege Google views or reads the information while it is in transit").

It is also not enough to allege that a third party collected data in real time and stored it for later use and analysis. *See, e.g.*, *Torres v. Prudential Fin., Inc.*, 2025 U.S. Dist. LEXIS 73736, at *15–16 (N.D. Cal. Apr. 17, 2025) ("Even if [third-party] software intercepts the contents of Plaintiffs' communications in real time and stores the recording on [a third party's] server that [third party] employees can access, nothing in the record plausibly indicates that [the third party] reads or attempts to read the contents of the communication while they are in transit."). As one court noted, if that conduct were enough to violate Section 631(a), then Section 632 would be rendered "superfluous," because that provision "creates liability for anyone who eavesdrops upon or records a confidential communication without the consent of all parties to the communication." *See Doe*, 2025 U.S. Dist. LEXIS 207952, at *16.

Here, none of Plaintiffs' allegations create an inference of in-transit reading. To begin, Plaintiffs have failed to plead any specific allegations about the alleged interception, which is a prerequisite to in-transit reading. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (plaintiff's "vague allegations fail to explain how the software works or how the interception occurs."). Even if Plaintiffs could do so, the complaint alleges complex uses of data by Third Parties, such as long-term profile building and the development of identity webs—all of which suggest attempts to learn the "contents" *after* the alleged point of interception. *See, e.g.*, Compl. ¶ 45 (building consumer profiles and audience segments); ¶ 59 (targeted advertising and retargeting); ¶ 55 (cross-site and cross-device tracking); ¶ 51 (advertising and marketing analytics); ¶ 79 (research, development, and product improvement). Notably, the Complaint does not allege that Plaintiffs actually inputted any personal information during their alleged visits to the Website. Even accepting the pleaded facts as true, those allegations cannot support a plausible inference that any communications were read, intercepted, or learned in real time. *Cf. Ambriz v. Google, LLC*, 2025 U.S. LEXIS 29609, at *13 (N.D. Cal. Feb. 10, 2025) (second clause of CIPA claim could proceed where plaintiff alleged that Google's call center software "monitor[s] the state of the conversation," "identif[ies] [caller] intent" in "real-time," "transcribes calls in real time," and "grabs context of the conversation [to suggest] real-time . . . guidance" to agents while on telephone calls).

For this independent reason, Plaintiffs fail to state a claim under Section 631(a)'s second clause.

**4. Because Plaintiffs fail to state a claim under the second clause of Section 631(a), their claims under the third and fourth clauses necessarily fail.**

Claims brought under clauses three and four of Section 631(a) cannot survive without a credibly alleged violation of one of the first two clauses. This is because clause three establishes a violation only where a person "uses, or attempts to use, in any manner" information obtained in violation of the first or second clauses, and clause four only penalizes a person who "aids, agrees with, employs, or conspires" with any person to do "any of the acts or things mentioned above." *Id.* As explained above, Plaintiffs have failed to plead a violation of clause two of Section 631(a).[6] As a result, Plaintiffs cannot establish liability under the third or fourth clauses. *See R.C.*, 2025 U.S. Dist. LEXIS 594491, at *23 ("Plaintiffs' failure to plausibly allege a violation of the first two clauses defeats any allegations as to the third."); *Esparza v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 28132, at *11 (C.D. Cal. Jan. 16, 2024) ("With respect to the fourth clause, a plaintiff alleging a CIPA violation must adequately allege a violation under one of the first three clauses of Section 631(a).").

The Court should dismiss Plaintiffs' claim under Section 631(a) in its entirety.

**C. Plaintiffs fail to state a claim under CIPA Section 638.51 (Count IV).**

Plaintiffs allege that the third-party cookies on Crypto.com are "pen registers" that violate Section 638.51 of CIPA. Compl. ¶ 177. A pen register is a "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Section 638.51 does not apply to the third-party cookies at issue here for two reasons.

**1. The statutory definition of "pen register" is ambiguous and must be interpreted in light of the statute's legislative history, which makes clear that the provision was intended to apply only to telephonic communications.**

As Judge Chhabria recently observed, "[t]he language of CIPA is a total mess." *Doe,* 2025 U.S. Dist. LEXIS 207952, at *1. Indeed, there is a growing split among courts when applying Section 638.51 to modern website technology. To the extent this split indicates ambiguity, the Court's analysis should

[6] Plaintiffs have not alleged a violation of the first clause of Section 631(a) (illegal wiretapping).

be informed by the statute's legislative history and the purpose of CIPA's pen register provision, which show that Plaintiffs' theories go far beyond what the California Legislature intended.

There is no question that the definition of pen register is ambiguous. *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) ("The relevant statutory language is ambiguous."). This is evident not just from the vague statutory language, but also from the many differing interpretations emerging from CIPA lawsuits. One disagreement in the case law is whether website tracking technology constitutes a "device or process"—terms that are "vague and inclusive." *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378, at *3 (N.D. Cal. Dec. 12, 2024). Another dispute is whether the pen register provision applies only to website technology that is capable of capturing substantive communications, rather than mere record information. *See* Def.'s Req. for Judicial Notice ("RJN"), Ex. H, *Price v. Headspace, Inc.*, 2025 Cal. Super. LEXIS 27951, at *3 (Cal. Super. Ct. Apr. 1, 2025) (noting that "both 'pen registers' and 'trap and trace devices' are designed to capture information about the communication, but not the content of the communication itself"); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 U.S. Dist. LEXIS 120002, at *10 (N.D. Cal. June 24, 2025) (same); *but see In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1153 (reaching opposite conclusion).

Courts are divided on the meaning and scope of the term "pen register." At least five California state courts have held that Section 638.51 applies only to telephones, and not to internet communications. *See* RJN, Ex. I, *Rodriguez v. Ink Am. Int'l Grp. LLC*, Case No. 25STCV15350, Order (Cal. Super. Ct. Dec. 10, 2025); RJN, Ex. D, *Licea v. Hickory Farms LLC*, 2024 Cal. Super. LEXIS 66498 (Cal. Super. Ct. Mar. 13, 2024); RJN, Ex. E, *Sanchez v. Cars.com Inc.*, 2025 Cal. Super. LEXIS 710 (Cal. Super. Ct. Jan. 27, 2025); RJN, Ex. F, *Aviles v. Liveramp, Inc.*, 2025 Cal. Super. LEXIS 776 (Cal. Super. Ct. Jan. 28, 2025); RJN, Ex. G, *Casillas v. Transitions Optical, Inc.*, 2024 Cal. Super. LEXIS 70523 (Cal. Super. Ct. Sept. 9, 2024). The opinions of these state courts are persuasive in this Court. "Where the issues involved are ones upon which the state supreme court has not yet ruled, federal courts must attempt to predict how the state supreme court would decide." *Johnson v. GMRI, Inc.*, 2007 U.S. Dist. LEXIS 27368, at *9 (E.D. Cal. Mar. 28, 2007) (citing *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994)).

In doing so, federal courts properly consider "the opinions of lower state courts (intermediate courts of appeal or trial courts) . . . ." *Id.*; *cf. La Fontaine v. Vollucci*, 2012 U.S. Dist. LEXIS 198292, at *3–4 (N.D. Cal. July 2, 2012) ("[S]tate claims are traditionally more appropriate for adjudication by state courts, which have a greater stake in developing the principles of state law and more expertise in applying those specific principles to the issues at hand.").

On the other hand, some courts have applied the pen register provision to website technology. *See, e.g.*, *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *3; *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–52 (S.D. Cal. 2023). Importantly, "this very jurisdictional split on the subject is what finally forces us to face the fact that there must be ambiguity, for if there were none there would likewise be no legal controversy." *People v. Cornett*, 118 Cal. Rptr. 3d 816, 830 (Cal. Ct. App. 2010), *rev'd on other grounds*, 274 P.3d 456 (Cal. 2012).

To resolve this ambiguity, the Court's analysis should be guided by the legislative history and purpose of the pen register provision. *See Wells v. One2One Learning Found.*, 141 P.3d 225, 236 (Cal. 2006) ("[I]f the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction."); *see also Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 485 (9th Cir. 2024) ("When a federal court interprets a California statute it applies California canons of construction."). Those interpretive tools make clear that the pen register provision applies only to traditional telephones.

To begin, the California Legislature borrowed the provision nearly wholesale from the federal Wiretap Act in 2015. *Compare* 18 U.S.C. § 3127(3), *with* Cal. Penal Code § 638.50(b). The Legislature (1) used the term "pen register," a phrase with an established and specific application to telephonic technologies, and (2) borrowed the definitional language from a statutory scheme that has consistently been interpreted and understood to apply only in the telephonic context. *See* Pen Register, Merriam-Webster, merriamwebster.com/dictionary/penregister (last visited Jan. 9, 2025) (a "pen register" is "a device that registers the numbers dialed from a telephone"); *In re U.S. for an Ord. Authorizing Roving Interception of Oral Commc'ns*, 349 F.3d 1132, 1136 n.7 (9th Cir. 2003) ("A pen register is a mechanical

device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *People v. Blair*, 602 P.2d 738, 747 n.11 (Cal. 1979) (same). As an example of the Legislature's clear intent on this issue, other clauses of CIPA's pen register provision, enacted at the same time, assume that a pen register involves a telephone line. *See*, *e.g.*, Cal. Penal Code § 638.52(d) (requiring that, in approving a pen register via a court order, a magistrate shall specify "[t]he identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register . . . is to be attached").

Moreover, the purpose of the pen register provision undermines Plaintiffs' theory. That provision was enacted for a specific reason: because federal law did not allow state and local law enforcement officers "to obtain an emergency order [for a pen register] unless there [was] a state statute authorizing and creating a process" for officers to do so. RJN, Ex. A (Assembly Committee on Public Safety, Apr. 7, 2015). California did not have "a state statute authorizing the use of pen registers," so the Legislature passed Assembly Bill 929 in 2015 to specifically enable "state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations." *Id.* Thus, as courts have recognized, the Legislature's *stated intent* was to authorize specific uses of pen register technologies, as they are commonly understood. *See Rodriguez*, Case No. 25STCV15350, Order at 6 ("CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software.").

The contemporaneous bill analyses and legislative statements further demonstrate a narrow legislative intent. For example, the Assembly Committee on Public Safety's legislative analysis explained that the bill would "clarify that any location information obtained by a pen register or a trap and trace device is limited to the information that is contained in the telephone number." *Id.*; *see also id.* ("Pen registers . . . track incoming and outgoing telephone calls."). Other California Assembly Committees' analyses are similarly limited in scope. *See, e.g.*, RJN, Ex. B (Privacy and Consumer Protection, Apr. 21, 2015) (describing the bill as authorizing "state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in telephone surveillance"); RJN, Ex. C

(Appropriations, Apr. 29, 2015) (same). Tellingly, this history contains no reference to cookies or other online tracking technologies, which were already in widespread use at the time. When a law enacted in 2015 mentions no technology other than "telephones," that law should not be expanded by courts to cover other technologies in existence at the time of enactment. *See* Cal. Penal Code § 638.50(b). The Legislature is clearly capable of regulating website technology when it wishes to do so. *See Rodriguez*, Case No. 25STCV15350, Order at 6 (citing examples of the Legislature "expressly referenc[ing] internet or online communications and services when extending protections beyond traditional telephonic technologies").

Plaintiffs' pen register theory is also in conflict with the California Consumer Protection Act ("CCPA"), which Plaintiffs cite in support of their privacy claims. *See* Compl. ¶ 136 (borrowing CCPA's definition of "personal information"). Just three years after enacting Section 638.51, the Legislature passed the CCPA, a comprehensive privacy statute that regulates the collection and sharing of personal information. The CCPA unambiguously governs the collection of personal information by the tracking technologies at issue here, and encompasses data like IP addresses, which Plaintiffs allege fall within the relevant pen register collection. *See* Cal. Civ. Code § 1798.140(v)(1)(A); Compl. ¶ 182. Critically, the CCPA establishes a notice and opt-out regime for the collection and disclosure of this type of information—without requiring consent (much less a court order). *See id.* § 1798.100(c). As the *Rodriguez* court noted, if the Court adopts Plaintiffs' theory, Section 638.51 would be in direct conflict with the CCPA's specific and clearly applicable regulatory scheme. *See* Case No. 25STCV15350, Order at 6 ("Suing under CIPA for activity that's already governed by the CCPA goes against legislative intent, creates confusion, punishes compliance, and doesn't make Californians any safer.") (citation omitted); *see also In re Jenson*, 233 Cal. Rptr. 3d 868, 873 (Cal. Ct. App. 2018) ("If conflicting statutes cannot be reconciled, later enactments supersede earlier ones, and more specific provisions take precedence over more general ones.") (internal citations omitted).[7]

[7] Plaintiffs' proposed reading of Section 638.51 also creates discrepancies within the statute itself. For example, Section 638.51 contains no exemption for consent unless the defendant is a "provider of electronic or wire communication service." Cal. Penal Code § 638.51(b). Meanwhile, Section 631(a)—which governs the more sensitive "contents" of communications—*does* contain a consent exception, *without* the need to be a qualifying service provider. *Id.* § 631(a). This is precisely the type of incongruity

Given these considerations, "courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Doe*, 2025 U.S. Dist. LEXIS 207952, at *3. Here, because the meaning of the term "pen register" is ambiguous, the Court should defer to the legislative history and purpose of the provision, which make clear that modern website technologies do not fall within its ambit.

**2. The rule of lenity dictates that any ambiguity must be construed in favor of Crypto.com.**

Finally, although the Court need not reach this issue to dismiss the claim, because Section 638.51 is a criminal statute, the rule of lenity requires the Court to select a reasonable interpretation that is most favorable to the defendant. The rule of lenity applies as "a tie-breaking principle." *People v. Ramirez*, 169 Cal. Rptr. 3d 260, 264 (Cal. Ct. App. 2014). "Where [a] statute is susceptible of two reasonable constructions, a defendant is ordinarily entitled to that construction most favorable to him." *People v. Johnson*, 59 Cal. Rptr. 3d 405, 415 (Cal. Ct. App. 2007). The rule of lenity applies even when a criminal statute is invoked in a civil action. *Doe*, 2025 U.S. Dist. LEXIS 207952, at *2 (citing *Harrott v. Cty. of Kings*, 25 P.3d 649, 659 (Cal. 2001)). Likewise, courts must narrowly construe civil statutes that impose punitive civil penalties. *Id.*

Following that logic, one court in this district recently invoked the rule of lenity when interpreting a similarly ambiguous provision of CIPA Section 631(a). *See Doe*, 2025 U.S. Dist. LEXIS 207952, at *12 (noting that courts "have been all over the map on the issue"). As discussed above, the pen register definition is, at best, susceptible of multiple interpretations. The Court should reject Plaintiffs' theory, rule that pen registers apply only to telephones, and dismiss Count IV in its entirety.

**D. Plaintiffs fail to plead claims for invasion of privacy (Count I) and intrusion upon seclusion (Count II).**

Plaintiffs cannot state a claim for either invasion of privacy or intrusion upon seclusion. Given the similar elements of both claims, courts often consider them together. *See Hammerling v. Google LLC*,

---

that courts seek to avoid in construing statutes. *See, e.g.*, *Brower v. Evans*, 257 F.3d 1058, 1067 (9th Cir. 2001) (courts avoid statutory interpretations that "produce absurd results"); *In re K.B.*, 317 Cal. Rptr. 3d 798, 804–05 (Cal. Ct. App. 2024) (collecting cases construing statutes to avoid "absurd consequence[s]," such as "more serious offenses receiving lesser sanctions"); *Fireman's Fund Ins. Co. v. Super. Ct.*, 127 Cal. Rptr. 3d 786, 781 (Cal. Ct. App. 2011) (rejecting "patently absurd" construction that would provide greater protections to written, as opposed to unwritten, work product).

615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). To prevail on either claim, Plaintiffs must sufficiently allege (1) a reasonable expectation of privacy and (2) that the intrusion was highly offensive. *See id.*; *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). The Ninth Circuit recently curtailed these types of common law privacy claims in *Popa v. Microsoft Corp.*, 153 F. 4th 784 (9th Cir. 2025), which is instructive here. In *Popa*, the Ninth Circuit rejected the plaintiff's claim that "tracking of her interactions" with a website caused any harm that was "remotely similar" to the "highly offensive" interferences or disclosures actionable at common law. Like the plaintiff in *Popa,* Plaintiffs here cannot plead either element because their sparsely alleged "Private Communications" were limited, impersonal, and made in the course of routine commercial conduct. *See Popa*, 153 F.4th 784 at 791 (rejecting claims in part because Popa "identifie[d] no embarrassing, invasive, or otherwise private information collected").

**1. Crypto.com's actions were not highly offensive.**

For an invasion to be "highly offensive," it must be so serious as to constitute an "egregious breach of the social norms," causing "unjustified embarrassment or indignity." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 654 (1994). Plaintiffs' allegations come nowhere close to meeting this standard.

To begin, courts have repeatedly held that "data collection and disclosure to third parties" is "routine commercial behavior" that is "not highly offensive." *Hammerling*, 615 F. Supp. 3d at 1090 (collecting cases). Plaintiffs allege that the Third Parties can access users' browsing history, website interactions, behaviors, and device or session information, and track users across different websites. Comp. ¶ 31. Those allegations are insufficient as a matter of law to state a claim for invasion of privacy. *See Hubbard v. Google LLC*, 2024 U.S. Dist. LEXIS 117876, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much."). Even the collection of user-specific data—such as unique device identified numbers, geolocation data, and a user's personal information—without a user's consent is not considered an offensive breach of social norms sufficient to give rise to a claim. *See In re iPhone Application Litig*., 844 F. Supp. 2d. 1040, 1063 (N.D. Cal. 2012).

Further, courts dismiss privacy claims when a plaintiff baldly asserts that the information collected *could* be private or personal, but does not allege the information was *actually* private or personal to the plaintiff. *See Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1043–44 (S.D. Cal. 2024); *see also Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 950–51 (S.D. Cal. 2024) (same). That is exactly the situation here. As discussed in Section V(A)(1)(a), Plaintiffs identify types of data that Third Parties can *potentially* track, but fail to specifically allege what information was *actually* collected, much less that it was private or personal in any way. And because Plaintiffs' claims sound in fraud, their allegations must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See supra* Section V(A).

Plaintiffs' allegations fail to demonstrate that the alleged routine collection of data via third-party cookies is an "egregious" breach of social norms that rises to the level of being highly offensive, and their privacy claims should accordingly be dismissed.

**2. Plaintiffs cannot allege a reasonable expectation of privacy.**

Plaintiffs' privacy claims separately fail because they do not have a reasonable expectation of privacy in the limited, non-sensitive data allegedly collected by the Third Parties. There is no reasonable expectation of privacy in information that is only tracked and collected while using the Website. *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (no reasonable expectation of privacy in location data when Google "only tracked and collected data during use of Google services"); *see also Yoon*, 549 F. Supp. 3d at 1086 (no privacy interest in browsing data collected while plaintiff was using defendant's website). The Ninth Circuit in *Popa* explicitly rejected privacy claims arising out of much more significant information than Plaintiffs allege was disclosed here. *See Popa*, 153 F.4th 784 at 786, 791 (finding "over 30 different categories of information [allegedly disclosed] including: the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from [and] . . . . the user's mailing address with the street number and zip code omitted" were "most similar to a store clerk's observing shoppers").

And although Plaintiffs allege that they were not on notice that their information would be shared

with the Third Parties, Plaintiffs concede that they were on notice of the collection of the information generally. In describing the Website's cookie banner, Plaintiffs note the statement that some cookies always remain active, and that Crypto.com's "Cookie Details" link at the bottom of the cookie banner allowed them to review certain cookies that Crypto.com may deploy. Compl. ¶¶ 35–36. That notice eliminated any expectation of privacy that Plaintiffs could have had.

Moreover, courts have ruled in similar cookie tracking litigation that whether there is a reasonable expectation of privacy depends on the amount of data collected, the sensitivity and nature of the data collected, and the defendant's representations to users. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 629 (N.D. Cal. 2021) (citing *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 602). In *Calhoun* and *In re Facebook*, the plaintiffs alleged that Google and Facebook collected information across each website that the plaintiff used, even when plaintiffs were not signed into their Google and Facebook accounts, allowing the websites to create comprehensive profiles based on individuals' interactions with other websites. *See Calhoun*, 526 F. Supp. 3d 605 at 630 (alleging that up to 86 percent of websites use Google's code, and accordingly defendant could collect information from almost every website plaintiffs visited); *see In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 602 (alleging that scores of websites use Facebook plug-ins and allowed users to be tracked across many websites). Here, in contrast, Plaintiffs allege that Crypto.com aided Third Parties in collecting information only about Plaintiffs' visit to the Crypto.com Website—not to any other websites visited by Plaintiffs. Compl. ¶¶ 47–97. Similarly, in *Khamooshi v. Politico LLC,* 2025 U.S. Dist. LEXIS 197891 (N.D. Cal. Oct. 2, 2025), another recent CIPA third party tracking lawsuit, the Court distinguished between types of browsing activity that "implicate protectable privacy interests" and those that do not. Applying *Popa,* that Court found that, because the plaintiffs had "identified no embarrassing, invasive, or otherwise private information collected," they had failed to allege a concrete privacy injury sufficient to establish Article III standing, resulting in the case being dismissed with prejudice. *Id*. at *7. The same result should follow here.

Because Plaintiffs fail to allege any conduct that is highly offensive and that violates their reasonable expectation of privacy, the Court should dismiss Counts I and II of the Complaint.

**E. Plaintiffs fail to plead a claim for fraud, deceit, and/or misrepresentation (Count V).**

Plaintiffs do not come close to adequately pleading their claim for fraud, deceit, and/or misrepresentation. To state a claim sounding in fraud, Plaintiffs must plead five elements: (1) a false representation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damages. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (citation omitted). To satisfy the heightened pleading standard of Rule 9(b), allegations of fraud must "state with particularity the [factual] circumstances constituting fraud." *Rieckborn,* 81 F. Supp. 3d at 913; *see also supra* Section V(A). Plaintiffs fail to meet these standards in at least three ways.

First, Plaintiffs do not allege sufficient facts to establish that Crypto.com made a knowingly false statement or intentionally defrauded Plaintiffs. The only allegations in the Complaint remotely directed toward those elements are in paragraph 188, where Plaintiffs purport to identify ways in which Crypto.com *could have* learned that the "Disable All" button was allegedly not functioning correctly—for example, through "testing" or "evaluating performance metrics." Compl. ¶ 188. But Plaintiffs never allege that Crypto.com actually had those tools at its disposal or used them. Nor do Plaintiffs explain how those tools would have revealed an issue otherwise unknown to Crypto.com.

Second, Plaintiffs do not explain how they justifiably relied on the alleged false statement. They allege in conclusory fashion that if they had known the "Disable All" button was not functioning, they "would not have interacted with the Website." Compl. ¶ 192. However, as explained in Section V(A)(1)(a), Plaintiffs fail to allege that they interacted with the Website at all, and instead allege nothing more than that they "visited" and "browsed" the website and clicked "Disable All." Because Plaintiffs do not allege how they interacted with the Website, they necessarily fail to plead what they would have done differently if they had known what they claim to know now. Accordingly, Plaintiffs' allegation of justifiable reliance is a "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," which "do[es] not suffice" to state a claim under Rule 12(b)(6)—let alone the heightened pleading standards of Rule 9(b). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

Finally, Plaintiffs fail to allege any damages resulting from the alleged fraud. In an attempt to plead damages, Plaintiffs claim that they "provided more personal data than they would have otherwise," Compl. ¶ 193, but do not actually identify the personal data they allegedly provided, much less what value that data had to Plaintiffs (if any). *See, e.g.*, *Hubbard*, 2024 U.S. Dist. LEXIS 117876, at *26–35 (granting motion to dismiss for lack of damages where plaintiffs did not explain how defendant's alleged misappropriation of plaintiffs' information reduced its value); *LaCourt v. Specific Media, Inc.*, 2011 U.S. Dist. LEXIS 50543, at *12 (C.D. Cal. Apr. 28, 2011) (complaint did not identify a "single individual who was foreclosed from entering a 'value-for-value exchange'" or explain how plaintiffs "were deprived of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party."). Likewise, Plaintiffs' speculative allegation that their data had value to Crypto.com is insufficient to establish damage *to Plaintiffs*. *See, e.g.*, *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047–48 (N.D. Cal. 2025) ("[E]ven if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property.") (citation omitted). Nor do Plaintiffs plead any other non-conclusory facts about the damages they allegedly incurred. These allegations are categorically insufficient.

Accordingly, Plaintiffs have failed to plead a claim for fraud, deceit, and/or misrepresentation, and the Court should dismiss Count V on that basis.

**F. Plaintiffs fail to plead a claim for unjust enrichment (Count VI).**

Plaintiffs' claim for unjust enrichment should be dismissed. California courts are split on whether California law recognizes a standalone cause of action for unjust enrichment, or whether the court may allow the claim to continue as a quasi-contract claim for restitution. *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025); *see also McCoy v. Alphabet, Inc.*, 2021 U.S. Dist. LEXIS 24180, at *38 (N.D. Cal. Feb. 2, 2021); *B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *38 (C.D. Cal. Feb. 1, 2024). Regardless, allowing Plaintiffs' claim to proceed under either framework would be improper because Plaintiffs do not adequately allege a loss or benefit.

The elements of an unjust enrichment and quasi-contract claim seeking restitution are the same:

"receipt of a benefit and unjust retention of the benefit at the expense of another." *Riganian*, 791 F. Supp. 3d at 1094. Plaintiffs do not allege that Crypto.com received any "benefit" from purportedly allowing Third Parties to collect Plaintiffs' "Private Communications." As a threshold matter, Plaintiffs fail to allege any "Private Communications" at all. Plaintiffs merely allege that they visited and browsed the Website—they do not allege that they interacted with the Website in any other way. *See supra* Section V(A)(1)(a). Nor do Plaintiffs explain how the mere fact of their visiting the Website, without any other activity, conferred a benefit on Crypto.com.

Moreover, even if Plaintiffs had alleged that they provided information to Crypto.com or somehow interacted with the Website, Plaintiffs also fail to allege that Crypto.com capitalized on that information. At most, Plaintiffs allege that Crypto.com *can* use third-party cookies to target online advertisements to certain users. *See* Compl. ¶ 99. But Plaintiffs do not allege that Crypto.com actually did so. Courts have dismissed claims based on similarly deficient allegations. *See, e.g.*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (N.D. Cal. 2020) (dismissing unjust enrichment claim based on personalized advertising where there was no allegation as to how the defendant allegedly profited from it); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1070 (C.D. Cal. 2024) (dismissing unjust enrichment claim where "the Complaint does not include facts specific to unjust enrichment of Defendant").

Count VI should be dismissed.

## VI. CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Complaint with prejudice. Alternatively, the Court should order Plaintiffs to file an amended pleading that cures the deficiencies in the Complaint.

Dated: January 9, 2026

WINSTON & STRAWN LLP

By: /s/ *Kevin P. Simpson*

Kevin P. Simpson (SBN: 344644)
KPSimpson@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Fl.
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Sean G. Wieber (*pro hac vice*)
SWieber@winston.com
Sophie R. LaCava (*pro hac vice*)
SLaCava@winston.com
**WINSTON & STRAWN LLP**
300 N. LaSalle Drive, Suite 4400
Chicago, Illinois 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Defendant Foris DAX, Inc.*