**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

JOSE ORTIZ and JAVIER HERNANDEZ, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

FORIS DAX, INC.

Defendant.

Case No. 3:25-cv-08950-EMC

**PLAINTIFFS' OPPOSITION TO DEFENDANT FORIS DAX, INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

Hon. Edward M. Chen

Date: April 9, 2026
Time: 1:30 PM
Location: San Francisco, Crtrm 5, 7th Fl.

Complaint Filed: October 17, 2025

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

III. ARGUMENT ..... 4

A. Plaintiffs' Allegations Satisfy Rule 9(b)'s Heightened Pleading Requirements. ..... 4

B. Plaintiffs Sufficiently Plead their Wiretapping Claims under CIPA § 631(a). ..... 7

1. Plaintiffs allege that third parties intercepted the contents of communications. ..... 7

2. Plaintiffs allege that the third parties attempted to learn the contents of communications while in transit. ..... 8

C. Plaintiffs Sufficiently Plead their Pen Register Claims under CIPA § 638.51. ..... 11

1. It is well-established that Pen Registers are "Device[s] or Process[es]" not limited to telephonic technology ..... 12

2. The Rule of Lenity is inapplicable to defendant's argument. ..... 14

D. Plaintiffs Sufficiently Plead their Invasion of Privacy (Count I) and Intrusion upon Seclusion Claims (Count II) ..... 15

E. Plaintiffs Sufficiently Plead their Claims for Fraud, Deceit, and Misrepresentation (Count V). ..... 17

F. Plaintiffs Sufficiently Plead their Claims for Unjust Enrichment (Count VI). ..... 19

G. Plaintiffs Request Leave to Amend If Necessary. ..... 19

IV. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Grp.*, No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ...................... 20

*Alghusain v. Webb*, No. 24-cv-01863-JSC, 2025 U.S. Dist. LEXIS 110241 (N.D. Cal. June 10, 2025) ........................ 7

*Amin v. Subway Rests., Inc.*, No. 21-CV-00498-JST, 2022 U.S. Dist. LEXIS 243270 (N.D. Cal. July 7, 2022) ........................ 2

*Ayora v. Inspire Brands, Inc.*, No. 250cv003645-AGT, 2025 U.S. Dist. LEXIS 264583 (N.D. Cal. Dec. 22, 2025) ................. 5, 6

*Barber v. Thomas*, 560 U.S. 474, 130 S. Ct. 2499 (2010) ........................ 3, 15

*Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988) ........................ 18

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ........................ 8, 16, 19

*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ........................ 6

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468 (9th Cir. 2017) ........................ 19

*Calhoun v. Google LLC*, 526 F. Supp.3d 605 (N.D. Cal. 2021) ........................ 16

*Casillas v. Six Flags Ent. Corp*., No. 2:25-cv-6824-CBM-PD, 2025 U.S. Dist. LEXIS 260100 (C.D. Cal. Dec. 15, 2025) .............. 4

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) ........................ 7

*D'Angelo v. Penny Opco, LLC*, No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal Oct. 24, 2023)............ 2, 10

*DeSoto v. Yellow Freight Sys*., 957 F.2d 655 (9th Cir. 1992) ........................ 20

*Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952 (N.D. Cal. Oct. 17, 2025).............. 3, 10, 15

*Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814 (E.D. Cal. 2025) ........................ 10, 11

*Esparza v. UAG Escondido A1 Inc*., No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ............... 2, 9

*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025)............ passim

*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ................ passim

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........................ 12

*Hawkins v. Kroger Co.,* 906 F.3d 763 (9th Cir. 2018) ........................ 9

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 18

*Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781 (C.D. Cal. July 19, 2024) ........ 8

*Hernandez* z v. *Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ........ 16

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994) ........ 17

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 9

*In re Facebook Consumer Priv. Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 19

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ........ 16, 19, 20

*In re Google Location History Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021) ........ 16

*In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147 (N.D. Cal. 2025) ........ 13

*In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557-PCP, 2025 U.S. Dist. LEXIS 130946 (N.D. Cal. May 9, 2025) ........ 2

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ........ 8

*Jackson v. Linkedin Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024) ........ 9

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 8

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) ........ 7

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 17, 19

*Lewis v. Magnite, Inc.*, No. 2:25-cv-03448-MWC-SSCx, 2025 U.S. Dist. LEXIS 263675 (C.D. Cal. Dec. 4, 2025) ........ 14

*Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 11

*Matera v. Google, Inc.*, No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 107918 (N.D. Cal. 2016) ........ 3, 13, 16

*Media.net Adver. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052 (N.D. Cal. 2016) ........ 7

*Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ........ passim

*Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024) ........ 9

*Muscarello v. United States*, 524 U.S. 125 (1998) ........ 14

*Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721 (9th Cir. 2017) .......... 5
*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025).......... 4, 6
*People v. Manzo*, 53 Cal. 4th 880 (2012) .......... 15
*Popa v. Microsoft Corporation*, No. 24-14, 2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025) .......... 17, 18
*R.C. v. Sussex Publishers, LLC*, No. 24-cv-02609-JSC, 2025 U.S. Dist. LEXIS 59491 (N.D. Cal. Mar. 28, 2025).......... 10, 11
*Reno v. Koray*, 515 U.S. 50, 115 S. Ct. 2021, 132 L. Ed. 2d 46 (1995) .......... 14
*Ribas v. Clark*, 38 Cal. 3d 355 (1985) .......... 9
*Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV 08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. April 4, 2025) .......... 6
*Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 7
*Rodriguez v. Google*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024).......... 19
*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986).......... 20
*Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025).......... 20
*Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024).... 11, 12, 13, 14
*Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021).......... 17
*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024).......... passim
*Thomas v. Papa Johns Int'l, Inc.*, No. 22cv2012DMS(MSB), 2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024).......... 16
*Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) .......... 10
*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 9, 10, 11
*Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) .......... 4, 6
*Wiley v. Universal Music Grp, Inc.*, No. 25-cv-03095-PCP, 2025 U.S. Dist. LEXIS 261303 (N.D. Cal. Dec. 17, 2025) .......... 5, 6
*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 17
*Yoon v. Lululemon*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021).......... 8

**Statutes**

Cal. Penal Code § 631(a) ........ 2, 7, 8, 9
Cal. Penal Code § 638.50(b) ........ 11, 12
Cal. Penal Code § 638.51 ........ 2, 12, 13, 14
Cal. Penal Code § 638.51(a) ........ 11
Cal. Penal Code § 638.51(b) ........ 3, 12

**Rules**

Fed. R. Civ. P. 12(e) ........ 7
Fed. R. Civ. P. 9(b) ........ 1, 4, 6, 18

## I. INTRODUCTION

Plaintiffs Jose Ortiz and Javier Hernandez ("Plaintiffs") filed this class action complaint against Foris DAX, Inc. ("Defendant" or "Crypto") for intentionally aiding third parties to collect California users' private communications ***against their express instructions.*** Defendant promised users that they could opt out of the tracking, collection, and sale of their personal information by clicking "Disable All" cookies on Defendant's website—crypto.com (the "Website"), as depicted in the following:




ECF 1 ("CAC") ¶ 1. But Defendant's representations were false.

In truth, Defendant surreptitiously enabled third-party advertising, analytical and tracking cookies on the devices of California visitors to the Website, *even after those visitors explicitly disabled all such cookies*. As a result, Defendant caused the third parties to instantaneously collect and analyze vast swaths of user data, including "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more (collectively, "Private Communications") ***despite promising not to do so***. CAC ¶¶ 3, 31, 41. This deceptive practice is a highly offensive violation of Plaintiffs' privacy rights, as well as a breach of Defendant's promises. As Judge Orrick, Judge Tigar (and others) have opined, Plaintiffs more than sufficiently plead claims for relief. *See, e.g., Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *21–22 (N.D. Cal. July 14, 2025) (Tigar, J.) (denying motion to dismiss complaint alleging defendant's website violated CIPA and privacy laws by using tracking cookies after expressly promising it would not do so, and finding plaintiff's complaint sufficiently pled for Rule 9(b)'s standard); *Gabrielli v. Haleon US Inc.*, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) (Orrick, J.) (same). Defendant tellingly opted not to bring either opinion to this Court's attention. Nor does it mention any other case decided in this context—i.e., where a defendant falsely promised not to track website visitors.

Instead, Defendant shirks responsibility for its privacy violations by claiming that lying to website visitors and procuring those visitors' data against their express consent is "routine commercial behavior" that is "not highly offensive." ECF 19 ("MTD") at 21. But, to Plaintiffs' knowledge, no judge (anywhere) agrees. At best, "courts are generally hesitant to decide claims of this nature at the pleading stage[,]" because it is a "factually intensive" inquiry. *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *23 (citing *In re Meta Pixel Tax Filing Cases*, 2025 U.S. Dist. LEXIS 130946 (N.D. Cal. May 9, 2025)); *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26 (same).

Defendant similarly refuses to acknowledge that its own misrepresentation—that Website visitors can indeed "Disable All" cookies for private browsing—creates a reasonable expectation of privacy for Website visitors. As courts in this District rule, "defendant's representations that sensitive information would not be disclosed" made this disclosure highly offensive. *St. Aubin v. Carbon Health Techs., Inc*., 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024). This District has ruled that this misrepresentation can sustain Plaintiffs' common-law claims as to Invasion of Privacy (Count I); Intrusion upon Seclusion (Count II), and Fraud (Count V). *See Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26; *Haleon*, 2025 U.S. Dist. LEXIS 169503.

Defendant's remaining arguments fare no better. As to Plaintiffs' fraud claims, "these allegations satisfy the 'who, what, when, and where' of Rule 9(b)." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *37–38 (citing *Amin v. Subway Rests., Inc*., 2022 U.S. Dist. LEXIS 243270, at *4 (N.D. Cal. July 7, 2022)). Plaintiffs' wiretapping claims under CIPA § 631(a) survive because Plaintiffs' "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement" at the pleadings phase. *Esparza v. UAG Escondido A1 Inc*., 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Ruling otherwise would require Plaintiffs to prove their case before discovery. *D'Angelo v. Penny Opco, LLC*, 2023 U.S. Dist. LEXIS 191054, at *8 (S.D. Cal Oct. 24, 2023). Plaintiffs' pen register claims under CIPA § 638.51 also survive, as courts in this District have rejected Defendant's argument that "the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. The Court disagrees." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30 (Tigar, J.). Defendant's lenity argument is also dead on arrival:

"the rule of lenity only applies if . . . there remains a **grievous ambiguity**" in the statute. *Barber v. Thomas*, 560 U.S. 474, 488, 130 S. Ct. 2499 (2010) (emphasis added). "California's Legislature's chosen definition" of a pen register is *broad*, but not *grievously ambiguous*: it is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek v. L.A. Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (citing Cal. Pen. Code § 638.51(b)). And even then, the California Supreme Court "has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *34 (quoting *Matera v. Google, Inc.*, 2016 U.S. Dist. LEXIS 107918, at *19 (N.D. Cal. 2016)). Even though some courts believe CIPA to be "a total mess"[1] of inconsistent opinions, that does not exculpate Defendant from lying to Website visitors for profit.

Finally, Defendant is right about one thing: Plaintiffs' case is "unlike the typical CIPA case," including *Eating Recovery Ctr.* and virtually every other case Crypto cites. MTD p. 3. "Unlike the typical CIPA case" where a defendant only uses tracking devices, *here* Defendant also promised its Website visitors that they could browse privately. But it lied.

This Court should deny Defendant's motion in its entirety.

## II. FACTUAL BACKGROUND

When consumers visit Defendant's Website—Crypto.com—Defendant displays a popup cookie consent banner, in which Defendant disclosed it "use[s] cookies on our website to . . . conduct advertising and analytics," and gave Website users the option to either "Customize Settings," "Accept All," or "Disable All" such analytical, tracking and advertising cookies before continuing to browse Defendant's website. CAC ¶¶ 1, 37, 117. Despite this clear promise, Defendant nevertheless enabled numerous third parties—including, without limitation, Meta (Facebook), Google, X (Twitter), and Snapchat (the "Third Parties")—to use cookies to collect and aggregate those users' personal information, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and more. CAC ¶¶ 2–4. The Third Parties then instantly

[1] *Doe v. Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS 207952, at *1 (N.D. Cal. Oct. 17, 2025).

analyze this ill-gotten personal information to create consumer profiles, target and personalize advertising, and evaluate the effectiveness of advertising—all for their own financial gain. *Id.* ¶¶ 4, 32, 51, 61, 64, 78. This is exactly what website visitors like Plaintiffs Hernandez and Ortiz (who both "Disabled All" cookies) sought to avoid.

## III. ARGUMENT

### A. Plaintiffs' Allegations Satisfy Rule 9(b)'s Heightened Pleading Requirements.

Plaintiffs' allegations satisfy Rule 9(b)'s heightened pleading requirements. As Judge Tigar held when evaluating identical allegations under 9(b)'s standard; "[t]he complaint states that the 'who' is [Defendant]; the 'what' are misrepresentations by [Defendant] through the popup banner offering users the option to ["Disable All" cookies]; the 'when' is the … occasion[s] that [Plaintiff] visited [Defendant's] website … ; the 'where' is on [Defendant's] website; and the 'how' is through the storage of cookies on users' devices that transmit personal information about the users. These allegations satisfy the 'who, what, when, and where' of Rule 9(b)." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *21–22; *accord Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 (per "Fed. R. Civ. 9(b), [Plaintiff's] allegations are sufficient for now."). Here, Plaintiffs plead the same who, what, when, and where as to Crypto.com and its "Disable All" cookie banner. *See* CAC ¶¶ 1–2, 37, 104, 107–110, 117–118, 120, 186–87.

Defendant nevertheless argues that Plaintiffs fall short in pleading the requisite "what" or "when" elements of Rule 9(b). Even if this Court is inclined to depart from *Haleon*, *Motorola*, and their progeny[2], Defendant's arguments are misguided. First, Defendant misstates that Plaintiffs "emphasize[] types of information Third Parties *can* collect from Website users … [but do] not allege any information [is actually] provided." MTD at 7. That is simply untrue. The Complaint clearly contains such allegations, including specific allegations as to how Defendant's Website actually and surreptitiously transmitted Plaintiffs' and all other users' browsing history, visit history, website

[2] Including similar cookie-banner fraud cases like *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 U.S. Dist. LEXIS 230964, at *22 (N.D. Cal. Nov. 24, 2025) (quoting *Motorola,* and "finding similar allegations sufficient" to survive a 9(b) challenge); *Walsh v. Dollar Tree Stores, Inc.*, 2025 U.S. Dist. LEXIS 204652, at *57 (N.D. Cal. Oct. 16, 2025) ("Plaintiffs proffer the who, what, when, where and how in their Opposition, citing to portions of the Complaint" in a reject-all cookies case); *Casillas v. Six Flags Ent. Corp*., 2025 U.S. Dist. LEXIS 260100, at *27 (C.D. Cal. Dec. 15, 2025) ("Therefore, the FAC sufficiently pleads what alleged data is being sent to whom for Plaintiff's fraud claim.").

interactions, user input data, demographics, interests, shopping behavior, device information, the referring URL, user identifier tags, and geolocation data of users (including Plaintiffs) to Third Parties. *See, e.g.*, CAC ¶¶ 31, 41–43, 137, 165. Plaintiffs more than adequately plead numerous categories of data that put Defendant on "notice of the particular misconduct . . . so they can defend against the charge[.]" *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 723 (9th Cir. 2017) (internal citations omitted). This is precisely the "information at issue (for example, whether it contained "contents" under CIPA) [that] is critical to Crypto.com's ability to defend against Plaintiffs' underlying claims." MTD at 16. Indeed, Defendant undermines its own argument by attacking this exact issue later on in its brief—i.e., whether the type of information that was alleged to have been improperly shared violates CIPA. *See* MTD at 19 (where Defendant determines that "Plaintiffs only plead disclosure of record information—not contents"). Put differently, Defendant itself demonstrates that Plaintiffs' as-pled information is sufficient to defend itself against all of Plaintiffs' claims.

Likewise, Plaintiffs satisfactorily allege the "when" of their website visits. Defendant's reliance on *Wiley v. Universal Music Grp, Inc.*, 2025 U.S. Dist. LEXIS 261303 (N.D. Cal. Dec. 17, 2025) and *Ayora v. Inspire Brands, Inc.*, 2025 U.S. Dist. LEXIS 264583 (N.D. Cal. Dec. 22, 2025) is misplaced. In *Ayora*, multiple websites were at issue, each with different cookie banners that were updated at different times within the four-year class period. As a result, "[g]iven that the cookie banners were changed during the accused period," Magistrate Judge Tse held that plaintiffs had not pled "when" they visited with enough particularity for the defendant to know *which* misrepresentation was in effect. *Id.* The same factor compelled a similar conclusion in *Wiley*: given the number of websites at issue (including arianagrande.com, icespicemusic.com, universalmusic.com, nickiminajofficial.com, theweekend.com, and lilyachtyofficial.com), the defendant could not determine *what* specific representations regarding cookies were made on *which* website over a four year period. *Wiley*, 2025 U.S. Dist. LEXIS 261303, at *26.

Here, by contrast, Plaintiffs are concerned with *only one* website: Crypto.com. CAC ¶ 1. Part of that Website is the cookie banner displayed in ECF 1 ¶ 1, misrepresenting to visitors that they can "Disable All" cookies. *Id.* Unlike the defendants in *Wiley* or *Ayora*, Defendant does not have to guess which version of which website's representation Plaintiffs encountered. Indeed, given that Plaintiffs

allege that the "what" of Defendant's fraud are "misrepresentations by [Defendant] through the popup banner offering users the option to ["Disable All" cookies]," Defendant would only have to compare changes to its popup banner on Crypto.com to "determine what specific representations regarding cookies were made on [the website]" to defend itself. *Compare Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 *with* MTD at 9. But, to Plaintiffs' knowledge, Defendant has not done so. Regardless, Plaintiffs have alleged "when" they visited the Website; "on one or more occasions during the last four years." CAC ¶¶ 104, 114. Courts in this District find those allegations sufficient for defendants to "defend against the charge and not just deny that they have done anything wrong." *See Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022); *see also Haleon*, 2025 U.S. Dist. LEXIS 169503; *Motorola,* 2025 U.S. Dist. LEXIS 133836, at *21–22; *Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *22; *Walsh*, 2025 U.S. Dist. LEXIS 204652, at *57.

Finally, to the extent that Defendant argues that Plaintiffs must allege *exactly* when and what specific information of theirs Defendant misappropriated, that would essentially require any would-be Plaintiff to record his network activity all the time, *expecting* Defendant to disregard his privacy elections. That would be a de facto bar to Plaintiffs from bringing successful internet privacy cases. Moreover, it would open all Plaintiffs *who survive* a Motion to Dismiss to an attack on their Article III standing, as they would be *expecting* that their privacy rights would be infringed upon. *See Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787 at *1 (C.D. Cal. April 4, 2025) (no Article III testing when a "tester" Plaintiff expected to be harmed by privacy violations). Accordingly, this Court should follow Judge Tigar and Judge Orrick in their well-reasoned finding that Plaintiffs have satisfied Rule 9(b)'s standard. *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *21–22; *accord Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 (per "Fed. R. Civ. 9(b), [Plaintiff's] allegations are sufficient for now.").[3]

[3] In the alternative, Defendant requests this Court order Plaintiffs to make a more definite statement. Defendant's request is improper, and must be rejected. "Rule 12(e) motions are disfavored and are proper ***only if*** the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *Alghusain v. Webb*, 2025 U.S. Dist. LEXIS 110241, at *37–38 (N.D. Cal. June 10, 2025) (quoting *Media.net Adver. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1075 (N.D. Cal. 2016)) (cleaned up). Such motions are "ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail." *Id.* Here, Defendant's "[m]otion to dismiss demonstrates it is aware of the nature of the claims being asserted." *Id*. Accordingly, the Complaint is not "so vague or ambiguous" as to prevent Defendant from responding. *See id*. (citing Fed. R. Civ. P. 12(e)).

**B. Plaintiffs Sufficiently Plead their Wiretapping Claims under CIPA § 631(a).**

The fourth clause of Section 631(a) makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024) (cleaned up); *see* CAC ¶¶ 16, 114–133, 178–179. This clause "can apply to internet communications." *Id*. (*citing Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024)); *Javier v. Assurance IQ, LLC*, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to internet communications.").

Plaintiffs adequately allege that Defendant integrated its Website with third-party code that enables the Third Parties to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." CAC ¶¶ 174–175. The Complaint further describes how these cookies transmit communications "in real time." *See, e.g.*, *id*. ¶¶ 3, 31, 41, 45, 157, 166. Specifically, Plaintiffs allege that "the third-party cookies . . . surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant." *Id*. ¶ 31. Plaintiffs include screenshots showing network traffic that occurs *after* a user rejects these cookies using the Website's cookie banner and proceeds to browse the Website. *Id*. ¶¶ 42–43. This is sufficient. Defendant's arguments to the contrary—that Plaintiffs do not establish that Third Parties tapped the "contents" of Plaintiffs' communications "in transit"—are counterfactual.

**1. Plaintiffs allege that third parties intercepted the contents of communications.**

The parties agree that CIPA prohibits interception of "contents" of communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v. Lululemon*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (§ 631(a) protects "user-generated material" but not "routine identifiers"). Here, Plaintiffs allege interception of "contents,"

including user input data such as "search queries, the user's name, age, gender, email address, location, and/or payment information." CAC ¶¶ 31, 167 (information collected includes, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data"). Indeed, like this Court held in *James v. Walt Disney Co.*, Plaintiffs have *at least* pled that Third Parties indeed intercepted the "specific web pages viewed." *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953 (N.D. Cal. 2023) (Chen, J.) (holding that privacy claims could survive when plaintiffs alleged a third-party intercepted "specific web pages viewed, search terms entered, and purchase behavior.") Plaintiffs further *demonstrate* that interception through multiple screenshots. *See, e.g.*, CAC at ¶ 81 (screenshot of tw_document_href tag transmitting the specific web page viewed to Twitter).

But Defendant simply ignores the Complaint, instead asserting that "Plaintiffs only plead disclosure of record information—not contents." MTD at 19. But selective reading cannot change what is pled, including Plaintiffs' myriad allegations about the interception of user input data. Nor can selective reading override the overwhelming number of cases holding that user input data (including search terms and URLs that include search terms) are "contents" under CIPA. *See, e.g.*, *Heerde v. Learfield Commc'ns, LLC*, 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also In re Zynga Priv. Litig.*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *See, e.g.*, *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *11 (URLs which reveal queries reflect "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" constitute content); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content").

**2. Plaintiffs allege that the third parties attempted to learn the contents of communications while in transit.**

Defendant next argues that Plaintiffs do not allege that third parties "attempted to ***learn***" their communications "while" the communication was in transit. MTD at 12–13. This is neither true nor necessary for pleading a CIPA claim. Plaintiffs plausibly allege that the communications were

intercepted "contemporaneous[ly] with the sending or receipt of the message," *see Valenzuela v. Keurig Green Mountain, Inc*., 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Allegations describing the real-time transmission of communications are sufficient to survive a motion to dismiss.[4] *See, e.g.*, *Jackson v. Linkedin Corp*., 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024). Not only have Plaintiffs explained how third-party cookies operate, they give specific examples that transmit data in real time. CAC ¶¶ 3, 31, 41, 51, 68, 81, 95.[5] Further, courts also find simultaneous duplication and interception of communications sufficient to meet CIPA's "in transit" element: "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza*, 2024 U.S. Dist. LEXIS 24429, at *3. Put differently, "the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17. Plaintiffs have alleged that "the interception [] occur[s] contemporaneous[ly] with the sending or receipt of the message," through alleging "real time" analysis of Plaintiffs' information. *Valenzuela*, 674 F. Supp. 3d at 759; *see also Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."). Thus, Plaintiffs have alleged that their

---

[4] Indeed, some federal courts question whether it is necessary for Plaintiffs to plead that the interception happened "while" the transmission occurred at all, given the California Supreme Court's keystone case *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985): "Section 631(a) relates not just to messages, reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state." *Mitchell v. Sonesta Int'l Hotels Corp*., 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. Oct. 4, 2024) (citing Cal. Penal Code § 631(a) and *Ribas*, 38 Cal. 3d at 359). The California Supreme Court's decision in *Ribas* is instructive. In *Ribas*, "the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California." *Mitchell*, 2024 U.S. Dist. LEXIS 186701, at *25 ("There is no indication in *Ribas* that the word 'while' was a key focus of the California Supreme Court's analysis.").

[5] Defendant similarly invites this Court to draw adverse inferences against Plaintiffs, and to hold that Plaintiffs' allegations in ¶¶ 45, 51, 55, 59, and 79 of the Complaint "suggest attempts to learn the 'contents' *after* the alleged interception." MTD at 13. Defendant provides no support for why this would be a proper suggestion. It is also mistaken, as Plaintiffs specifically pleads otherwise. CAC ¶¶ 49, 166, 3, 31, 41. Regardless, "[t]his Court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)"). *Hawkins v. Kroger Co.,* 906 F.3d 763, 767 n.2 (9th Cir. 2018).

communications were tapped "in transit" sufficient to sustain their CIPA claims. *St. Aubin*, U.S. Dist. LEXIS 179067, at *17.

Defendant instead urges this Court to apply holdings born from disparate facts and different procedural postures; namely, *Eating Recovery Ctr. LLC* and *Torres v. Prudential Fin., Inc*., 2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025). To begin with, both *Eating Recovery Ctr.* and *Torres* were decided at ***summary judgment***, after extensive discovery, and not on the pleadings. *See, e.g.*, *Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS 207952, at *8 (examining whether a third party "attempt[ed] to learn this information while it was 'in transit'? If the answer is *indisputably* 'yes' . . . [plaintiff] is entitled to *summary judgment*.") (emphasis supplied). But there is neither reason nor authority to require Plaintiffs to prove as such at the pleadings: Indeed, "a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo*, 2023 U.S. Dist. LEXIS 191054, at *8. And in *Eating Recovery Center LLC*—even *after* extensive discovery where "corporate representative[s] testified" as to the specific steps taken in reading and processing data—the Court made its determination "***without*** a great deal of confidence that [the third party's] conduct did not satisfy the 'in transit' requirement as a matter of law." *See* 2025 U.S. Dist. LEXIS 207952, at *8 (emphasis added).

Moreover, Defendant's only appropriately-postured case, *R.C. v. Sussex Publishers, LLC*, 2025 U.S. Dist. LEXIS 59491, at *22 (N.D. Cal. Mar. 28, 2025) is a doctrinal outlier that did not substantiate its holding. Despite properly observing that *Valenzuela v. Keurig Green Mountain, Inc.* stands for the proposition that the eavesdropping must occur "while the communication is in transit," the court reached its conclusion in a vacuum. *See* F. Supp. 3d 751, 759 (N.D. Cal. 2023). Indeed, the *R.C.* court's only support for its stated holding that a plaintiff must allege the third party *read*—as opposed to *intercepted*—the contents of a message in transit is *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023). But *Licea* does not support that distinction: there, the court held that the plaintiff "d[id] not specifically allege that [his] messages were *intercepted* while in transit[;]" it did not read CIPA to require Plaintiff to plead that his messages were *read* in transit as well. *Id.* Regardless, neither *R.C.* nor *Licea* distinguish the clear rule that "the key to the interception analysis

is whether the plaintiff alleges that the transmission was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17. And neither *R.C.* nor *Licea* propose a *different*, clearer rule to help this Court reach a different conclusion here. Plaintiffs have alleged interception "real time," and supported with detailed allegations, which is more than sufficient. *See Valenzuela*, 674 F. Supp. 3d at 759; *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 838. And even if *R.C.* were soundly decided, it is still distinct: there, the plaintiff alleged the information was "sent to Google for processing," without sufficiently specifying when or how that transmission occurred. *See R.C.*, 2025 U.S. Dist. LEXIS 59491, at *22. Here, however, Plaintiffs have alleged that the Third Parties "instantaneously collect and analyze" user data "in real time," providing specific screenshots of the HTTP network traffic to demonstrate exactly how and when the transmission occurred. CAC ¶¶ 31, 41, 42–43, 51, 68, 81, 93.

**C. Plaintiffs Sufficiently Plead their Pen Register Claims under CIPA § 638.51.**

CIPA § 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device ***or process*** that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b) (emphasis supplied). Decisions from this District—including Judge Tigar's decision in *Motorola* on identical arguments—clarify that Plaintiffs adequately plead each element of this claim. *See, e.g.*, *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30; *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (collecting cases); *Shah v. Fandom, Inc.*, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023). Plaintiffs allege that the cookies and the corresponding software code Defendant installed on its Websites operate as pen registers under the meaning of the statute because they record information about the communications such as users' IP address and user-agent information, which is "routing, addressing, or signaling information." *Id.*; *see* CAC ¶¶ 177–78.

Defendant, however, spends nearly six pages rehashing arguments that courts in this District have already rejected, misquoting precedent, and advancing new arguments that simply do not work. Each of these arguments fail.

### 1. It is well-established that Pen Registers are "Device[s] or Process[es]" not limited to telephonic technology.

It is well-established that courts in this District almost invariably reject Defendant's argument that § 638.51 applies only to telephones. As Judge Tigar ruled in *Motorola*; "[Defendant] argues that the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. The Court disagrees." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30 (citing *Greenley v. Kochava, Inc*., 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023)). Other courts in this District agree that internet trackers can be pen registers. *See, e.g*., *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Fandom*, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024). This is because "California's Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Cal. Pen. Code § 638.51(b)). "[T]he Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiffs allege here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*.

But Defendant manufactures ambiguity where there is none. It quotes *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) for the authority that *"**the relevant*** statutory language is ambiguous." MTD at 23 (emphasis added). But that quote does not pertain to the alleged ambiguity of whether § 638.51 governs internet technologies. The "relevant statutory language" in that quote concerns whether a pen register can still be considered a pen register if it captures *both* record information *and* contents simultaneously. *See In re Meta Pixel Tax Filing Cases*,

793 F. Supp. 3d at 1153. Likewise, Defendant misquotes *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *3. The quoted "vague and inclusive" language does not mean that the statute is *ambiguous*; it means that the California legislature deliberately drafted a narrow definition of the protected data, but a *broad* definition of the prohibited collection tool used to harvest that data. *See id*. at *7 ("the Court cannot ignore the expansive language in the California Legislature's chosen definition [of pen register]," which is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e. "device or process")).

Separately, Defendant contends that the 2015 enactment of Section 638.51 was passed *solely* to enable state and local law enforcement to obtain emergency orders in compliance with federal wiretapping statutes. While satisfying federal requirements for law enforcement was undoubtedly a motivating factor for the legislation, that specific purpose does not limit the statute's modern application or override its plain text. As courts in this District rule, CIPA can and *does* accomplish multiple objectives: it enables necessary law enforcement tools while simultaneously establishing broad privacy protections adaptable to new technologies. *See Matera*, 2016 U.S. Dist. LEXIS 107918, at *19 (Federal courts are instructed to "interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests'"). Had the California Legislature intended to restrict the statute strictly to telephonic surveillance by police, it would not have utilized the expansive "device or process" definition or defined the captured data to include "routing, addressing, or signaling information" so broadly. Thus, even if this Court agrees with Defendant's contention, the Legislature's choice of inclusive language demonstrates that the statute was not limited to the single issue of federal compliance.

In sum, Defendant's position wholly ignores the "device *or process*" definition universally accepted by this District. Instead, Defendant argues that the historical *device* aspect of the definition precludes CIPA's application to internet processes. Like the plaintiffs in *Motorola* and *Mirmalek*, Plaintiffs specifically allege that the Third-Party cookies and the corresponding software code installed by Defendant on its Websites are each a "device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 with CAC ¶¶ 178–79 (explaining "cookies and the corresponding software code—which are pen registers—[were] placed on Plaintiffs' and Class members' browsers and

devices, and/or [] used to transmit Plaintiffs' and Class members' IP address and user-agent information").

**2. The Rule of Lenity is inapplicable to defendant's argument.**

Defendant next insists the rule of lenity acts as a "tie-breaking principle" to exculpate itself from its prohibited actions. MTD at 19. Defendant's reliance on lenity is misplaced for several reasons. First, as the Supreme Court ruled in 2010, "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute." *Barber*, 560 U.S. at 488 (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998)). As established above—and given this District's rulings in *Motorola*, *Haleon*, *Mirmalek*, and *Fandom*—it is not "grievously ambiguous" whether § 638.51 applies to internet technologies as well as telephonic technologies. It does. And "absent [that] ambiguity . . . there is no occasion for such statutory interpretation . . . [and the court] finds no ambiguity regarding the application of § 638.50[.]" *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *41–42 (C.D. Cal. Dec. 4, 2025). Moreover, contrary to Defendant's assertions that a jurisdictional split must mean that there is ambiguity, "[a] statute is not ambiguous for purposes of lenity merely because there is a division of judicial authority over its proper construction." *Reno v. Koray*, 515 U.S. 50, 64 (1995).

Secondly, Defendant's only support for applying the rule of lenity to CIPA is unsound precedent. As authority, Defendant cites only *Eating Recovery Center LLC*, 2025 U.S. Dist. LEXIS 207952, at *12. As discussed *supra*, *Eating Recovery Center LLC* is inapposite because it assesses whether a Plaintiff can "indisputably" demonstrate a third party "attempt[ed] to learn this information while it was in transit" at summary judgment. *Id.* at *8.

But even beyond that fatal procedural distinction, the *Eating Recovery Ctr. LLC* court's opinion is still legally unpersuasive because it applies lenity *without consideration* of the Supreme Court's articulated standard in *Barber v. Thomas*. The *Eating Recovery Ctr. LLC* court applied the rule of lenity to limit CIPA. *Id.* at *2–3 ("[T]he statutory language at issue here is ambiguous. . . the rule of lenity applies . . . [s]o the Court will adopt a narrower but equally reasonable interpretation of CIPA—one that does not encompass the conduct at issue in this case."). But the *Eating Recovery Ctr. LLC* court did not heed the Supreme Court's instruction that "the rule of lenity only applies if, after

considering text, structure, history, and purpose, there remains a ***grievous*** ambiguity or uncertainty in the statute." *Barber*, 560 U.S. at 488 (emphasis supplied). Instead, it merely asserted that the statute was "ambiguous," citing frustration with the modern, accepted applications of CIPA to internet technology in this District, and used that asserted ambiguity to apply lenity. *See Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS 207952, at *1–2, *16 ("CIPA is a total mess"; "the state of affairs with CIPA is untenable"; "the statute is just badly drafted"; "it's virtually impossible to apply [CIPA] to the online world. Hopefully, the Legislature will go back to the drawing board on CIPA" . . . "[u]ntil that happens, courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation."). That, however, is not the standard articulated in *Barber*; it is not a sound basis for upending the rest of this District's interpretation of CIPA; and it does not support dismissing Plaintiffs' complaint here.

Finally, California's Supreme Court forecloses any of Defendant's remaining lenity arguments. As the California Supreme Court ruled in 2012, "[t]he rule of lenity is not an inexorable command to override common sense and evident statutory purpose. The rule of lenity does not require magnified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of the whole remaining language. The rule of lenity also does not require that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope—nor does any rule require that the act be given the narrowest meaning. It is sufficient if the words are given their fair meaning in accord with the evident intent of the legislative body." *People v. Manzo*, 53 Cal. 4th 880, 881 (2012). Here, as referenced above, that "fair import" and "evident intent," per the California Supreme Court, is to "interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *34 (*quoting Matera*, 2016 U.S. Dist. LEXIS 107918, at *19 ("Thus, when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection").

### D. Plaintiffs Sufficiently Plead their Invasion of Privacy (Count I) and Intrusion upon Seclusion Claims (Count II).

The parties agree that California's common law invasion of privacy and intrusion upon seclusion are analyzed together. Plaintiffs demonstrate "(1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020); *see also Hernandez* v. *Hillsides, Inc*., 47 Cal. 4th 272, 285–97 (2009).

First, as explained above, Defendant itself created a heightened expectation of privacy when it presented a cookie banner explicitly promising users the choice to disable tracking. *See* CAC ¶ 1. A reasonable user would expect that choice to be honored. *See, e.g.*, *In re Facebook Internet Tracking Litig*., 956 F.3d at 601 (reasonable expectation of privacy inquiry examines the "customs, practices, and circumstances surrounding a defendant's particular activities"); *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *15 (denying motion to dismiss privacy claims where defendant allegedly tracked user data after the user clicked a "Reject All non-essential cookies" button). *See also Thomas v. Papa Johns Int'l, Inc.*, 2024 U.S. Dist. LEXIS 84019, at *4–6 (S.D. Cal. May 8, 2024); *Brown*, 685 F. Supp. 3d at 941; *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021); *In re Google Location History Litig*., 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021). Thus, Plaintiffs have a reasonable expectation of privacy as to their activity on the Websites based on Defendant's own representations. *See* CAC ¶¶ 1–2, 26–29, 95.

Defendant downplays this as "routine" commercial behavior. But there is nothing routine about blatantly lying to consumers who click to "Disable All" cookies, only to track them and profit off them via those cookies nevertheless. Indeed, Defendant simply ignores that Plaintiffs gave Defendant explicit notice that they affirmatively did *not* consent to cookies, and thereby did *not* consent to the disclosure of their data—record or otherwise—through those tracking cookies. CAC ¶¶ 30, 79. District courts recognize this mass *accumulation* of data is highly offensive, regardless of the specific type and quality. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023); *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. July 28, 2021) ("volume of the collected information is also important" in determining whether "the intrusion was highly offensive."). Plaintiffs allege that their data was collected to "create[] consumer profile[s] containing detailed information about a consumer's behavior." *See* CAC ¶¶ 4, 35. Plaintiffs expressly rejected Defendant's

third-party cookies that compile that information. *Id*. Such conduct violates not only Defendant's own promises, but also social norms. *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *36 ("defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive). Plaintiffs and other users had a reasonable expectation of privacy, Defendant's conduct was highly offensive,[6] and thus violated Plaintiffs' privacy interests guaranteed by the California Constitution.

Defendant quotes *Popa v. Microsoft Corporation*, 2025 U.S. App. LEXIS 21946, at *24–25 (9th Cir. Aug. 26, 2025) suggesting that it "explicitly rejected privacy claims arising out of much more significant information than Plaintiffs allege was disclosed here."[7] Not so. In *Popa*, the Plaintiff "challenged user-tracking practices employed by a website that she visited. She did not challenge the storage and/or transmission of cookies; she challenged the use of something called 'session-replay technology,' which, put simply, 'allows a business to capture and reproduce customers' interactions with its website.'" *See Haleon*, 2025 U.S. Dist. LEXIS 169503, at *18 (*distinguishing Popa*, 2025 U.S. App. LEXIS 21946, at *1.). Most salient to the reasonable expectation of privacy, however; "*Popa* never purported to have expressly 'reject[ed]' the tracking technology at issue[,]" unlike the allegations in *Haleon* and here. *Id.* That is an independent basis for distinguishing *Popa* and its ilk.

**E. Plaintiffs Sufficiently Plead their Claims for Fraud, Deceit, and Misrepresentation (Count V).**

Fraud, deceit and misrepresentation claims require a plaintiff to plead (1) a misrepresentation or omission of material fact; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Heeger v. Facebook, Inc*., 509 F. Supp. 3d 1182, 1194 (N.D. Cal. 2020). Plaintiffs have done so. They plead that Defendant "assure[d] visitors that they can choose to Disable All cookies"; that "Defendant's representations, however, were false," because

---

[6] Courts do not typically resolve these questions on the pleadings; these inquiries are fact-intensive and entail weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *Williams v. Facebook, Inc*., 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct is highly offensive "is indeed a factual question best left for a jury").

[7] Strangely, Defendant appears to conflate challenges to Article III standing with establishing a reasonable expectation of privacy for purposes of a Motion to Dismiss. *See* MTD at 22 (urging this Court to find Plaintiffs "failed to allege a concrete privacy injury sufficient to establish Article III standing . . . the same result should follow here").

"even though Defendant received notice that certain users . . . did not consent . . . Defendant nevertheless caused the Third Party Tracking Cookies to be placed . . . even for those users who elected to reject all cookies." CAC ¶¶ 1, 40.

Defendant asserts three separate challenges to Plaintiffs' fraud claim. First, Defendant contends that Plaintiffs have failed to allege that Defendant "made a knowingly false statement or intentionally defrauded Plaintiffs." MTD at 23. That contention is unsupported by fact or law. In a claim for fraud, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). When essential information is within the other parties' knowledge, Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988). The Complaint alleges that Defendant acted with knowledge. CAC ¶¶ 34–35, 42, 217. Despite Defendant's assertion that Plaintiffs must plead that Defendant had "tools at its disposal" to uncover its own Website's failure, these allegations are sufficient for the pleadings phase. *See Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 ("Haleon argues that Gabrielli has failed to show intent. But because intent may be alleged generally, his allegations are sufficient for now." (*citing* Fed. R. Civ. P. 9(b)).

Second, Defendant contradicts the Complaint, asserting that "Plaintiffs do not explain how they justifiably rely on the alleged false statement." MTD at 23. But, as the Complaint alleges, "Plaintiffs . . . justifiably and reasonably relied on Defendant's misrepresentations and omissions [that] Defendant would not permit third parties to obtain users' Private Communications when consumers chose to disable all cookies. As a result, Plaintiffs and the Class provided more personal data than they would have otherwise[.]" CAC ¶¶ 193–194. Put differently; "Had Plaintiff[s] . . . known this fact, [they] would not have use[d] the Website" at all. *Id*. ¶¶ 112, 122, 192. This is sufficient for the pleading phase. *See Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36.

Finally, Defendant contends that Plaintiffs "fail to allege any damages resulting from the alleged fraud." MTD at 24. But this ignores Plaintiffs' allegations regarding invasion of protected interests, misappropriation of their information, and that their information has objective value. *See, e.g.*, CAC ¶¶ 69–73, 131, 150–51, 184. These are recognized, cognizable damages. Plaintiffs "have a stake in the value of their misappropriated data." *Google LLC*, 685 F. Supp.at 940 (denying summary

judgment on a claim involving misappropriated data); *see also Rodriguez v. Google*, 2024 U.S. Dist. LEXIS 1290, at *35–36 (N.D. Cal. Jan. 3, 2024) (viable damages model can be based on "[u]ser's willingness to pay to prevent data collection"). This is precisely what Plaintiffs have claimed here. CAC ¶¶ 101–102, 190. Thus, Plaintiffs adequately plead their fraud, deceit and misrepresentation claims.

**F. Plaintiffs Sufficiently Plead their Claims for Unjust Enrichment (Count VI).**

The Ninth Circuit allows independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook Consumer Priv. Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (permitting an independent unjust enrichment claim alongside distinct breach of contract and fraud claims). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. Here, Plaintiffs may bring an unjust enrichment claim because they allege that Defendant benefited from using their Private Communications for personal profit. CAC ¶¶ 32, 200–201 (describing ways in which Defendant benefited from the use of cookies). And, as the Ninth Circuit recognized in *In re Facebook Inc. Internet Tracking Litig*., "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." 956 F.3d at 596 (citation omitted). "In other words, California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *Id.* ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" where they "allege that their browsing histories carry financial value"). "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (same).

**G. Plaintiffs Request Leave to Amend If Necessary.**

"[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber*

*Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend is only properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied in full.

Dated: January 30, 2026

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*