Kevin P. Simpson (SBN: 344644)
KPSimpson@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Fl.
Los Angeles, California 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Sean G. Wieber (*pro hac vice*)
SWieber@winston.com
Sophie R. LaCava (*pro hac vice*)
SLaCava@winston.com
**WINSTON & STRAWN LLP**
300 N. LaSalle Drive, Suite 4400
Chicago, Illinois 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Defendant Foris DAX, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOSE ORTIZ and JAVIER HERNANDEZ, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FORIS DAX, INC.,<br><br>Defendant. | Case No. 3:25-cv-08950-EMC<br><br>**DEFENDANT FORIS DAX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT IN THE ALTERNATIVE**<br><br>Hearing Date: April 9, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5<br>Complaint Filed: October 17, 2025 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. ARGUMENTS ........ 2

A. Plaintiffs' allegations do not meet the heightened pleading standard under Rule 9(b). ........ 2

1. Plaintiffs allege no substantive details about their individual browsing activities on the Crypto.com Website ........ 2

2. Plaintiffs fail to identify "when" they viewed the alleged misrepresentation ........ 5

B. Plaintiffs fail to state a claim under CIPA Section 631(a) (Count III). ........ 6

1. Plaintiffs fail to allege that they made any "communications" containing "contents." ........ 6

2. Plaintiffs fail to allege that third parties attempted to read or learn the contents of Plaintiff's communications while in transit ........ 7

C. Plaintiffs fail to state a claim under CIPA Section 638.51 (Count IV). ........ 8

1. CIPA's pen register provision applies only to telephonic communications, as confirmed by the statute's purpose and legislative history ........ 8

2. The rule of lenity dictates that any ambiguity must be construed in Crypto.com's favor ........ 10

D. Plaintiffs fail to plead claims for invasion of privacy and intrusion upon seclusion (Counts I and II). ........ 11

1. Plaintiffs fail to allege a highly offensive intrusion ........ 11

2. Plaintiffs fail to allege a reasonable expectation of privacy in information voluntarily provided to the Website ........ 12

E. Plaintiffs fail to plead fraud, deceit, and/or misrepresentation (Count V). ........ 13

F. Plaintiffs fail to plead a claim for unjust enrichment (Count VI). ........ 14

G. Alternatively, Plaintiff must make a more definite statement under Rule 12(e). ........ 15

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AB Inv. LLC v. Regal One Corp.*,
2009 U.S. Dist. LEXIS 140350 (C.D. Cal. Sep. 10, 2009)....................14

*Adler v. Cmty.*,
2021 U.S. Dist. LEXIS 201644 (C.D. Cal. Aug. 2, 2021)....................7

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)....................12

*Asis Internet Services v. Consumerbargaingiveaways, LLC*,
622 F. Supp. 2d 935 (N.D. Cal. 2009)....................15

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)....................2

*Augustine v. Great Wolf Resorts, Inc.*,
2024 U.S. Dist. LEXIS 127257 (S.D. Cal. July 18, 2024)....................7

*Ayora v. Inspire Brands, Inc.*,
2025 U.S. Dist. LEXIS 264583 (N.D. Cal. Dec. 22, 2025)....................5

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....................15

*Baker v. Yahoo, Inc.*,
2025 U.S. Dist. LEXIS 228493 (S.D.N.Y. Nov. 19, 2025)....................15

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal. 2014)....................2, 3, 4, 5

*Briskin v. Shopify Inc.*,
2026 U.S. Dist. LEXIS 11317 (N.D. Cal. Jan. 21, 2026)....................7

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................6

*Calhoun v. Google, LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)....................13

*Casillas v. Six Flags Ent. Corp.*,
Case No. 2:25-cv-06824 (C.D. Cal. Aug. 25, 2025), Dkt. 1-1, ¶ 15....................6

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................6

*DeLeon v. Wells Fargo Bank, N.A.*,
2011 U.S. Dist. LEXIS 8296 (N.D. Cal. Jan. 28, 2011)....................14

*Doe v. Beard*,
63 F. Supp. 3d 1159 (C.D. Cal. 2014)....................12

*Doe v. Eating Recovery Ctr. LLC*,
2025 U.S. Dist. LEXIS 207952 (N.D. Cal. Oct. 17, 2025)....................7, 10

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014)....................14

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................13

*Gabrielli v. Haleon*,
2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025)....................5

*Gabrielli v. Motorola*,
Case No. 4:24-cv-09533 (N.D. Cal. Dec. 31, 2024)....................5

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)....................15

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019)....................13

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014)....................11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994)....................11

*Hubbard v. Google LLC*,
2024 U.S. Dist. LEXIS 117876 (N.D. Cal. July 1, 2024)....................11, 13, 14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................11

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024)....................11

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024)....................11

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................12

*Khamooshi v. Politico LLC*,
2025 U.S. Dist. LEXIS 197891 (N.D. Cal. Oct. 2, 2025)....................11

*Lewis v. Magnite, Inc.*,
2025 U.S. Dist. LEXIS 263675 (C.D. Cal. Dec. 4, 2025) ....................7, 8

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. July 14, 2021)....................7

*Ovation Toys Co. v. Only Hearts Club*,
675 F. App'x 721 (9th Cir. 2019) ....................4

*Pemberton v. Rest. Brands Int'l, Inc.*,
2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025)....................5

*Pete v. Breach*,
2026 U.S. Dist. LEXIS 1928 (N.D. Cal. Jan. 6, 2026) ....................3

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) ....................3, 4

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................11, 12

*R.C. v. Sussex Publishers, LLC*,
2025 U.S. Dist. LEXIS 59491 (N.D. Cal. Mar. 28, 2025)....................7

*Shah v. MyFitnessPal, Inc.*,
2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) .................... *passim*

*Silver v. Stripe Inc.*,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021)....................12

*Smith v. LoanMe, Inc.*,
483 P.3d 869 (Cal. 2021) ....................10

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024)....................12

*Thomas v. Papa Johns*,
2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024)....................13

*Torres v. Prudential Fin., Inc.*,
2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) ....................8

*Tovar v. Zuchowski*,
982 F.3d 631 (9th Cir. 2020) ....................9

*Walsh v. Dollar Tree Stores, Inc.*,
Case No. 25-cv-01601, Dkt. 1, ¶¶ 76, 84, 92 (N.D. Cal. Feb 14, 2025) ....................6

*Wiley v. Universal Music Grp., Inc.*,
2025 U.S. Dist. LEXIS 261303 (N.D. Cal. Dec. 17, 2025) ....................5, 6

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................13

**Statutes**

Cal. Penal Code § 631(a) ....................1, 6, 7, 9

Cal. Penal Code § 638.50(b) ....................8

Cal. Penal Code § 638.51 ....................1, 8

Cal. Penal Code § 638.52(c) ....................9

Cal. Penal Code § 638.52(d) ....................9

**Other Authorities**

Fed. R. Civ. P. 8(a) ....................14

Fed. R. Civ. P. 9 ....................14

Fed. R. Civ. P. 9(b) .................... *passim*

Fed. R. Civ. P. 12(e) ....................1, 15

## I. INTRODUCTION

Plaintiffs' response (Dkt. 23) fails to address the Complaint's fundamental defects. Plaintiffs claim to be offended that Defendant tracked their unspecified web browsing activities on the Crypto.com website (the "Website"), but they plead no specifics about their supposed browsing, nor do they allege that any of their personal information was shared with third parties—much less that any sensitive information was disclosed during their visits. To mask this pleading defect, the response repeatedly emphasizes hypothetical harm to unspecified generic "Website users." *See*, *e.g.*, Resp. at 3–4, 7–8. But allegations of harm to unspecified others cannot sustain a lawsuit in these circumstances. Plaintiffs themselves must credibly plead individual harm, and their Complaint is so lacking in individualized allegations that there is no question they have failed to do so. As other courts have found, this requires dismissal.

Plaintiffs acknowledge none of this in their response and instead resort to rhetoric and citations to cases that don't apply. Plaintiffs fail to credibly explain why their mere visit to a public, static webpage is legally actionable under any theory. And Plaintiffs come nowhere close to pleading their fraud-based claims with the particularity required by Rules 9(b) and 12(e).

Despite their best efforts to muddy the waters in their response, Plaintiffs' claims nevertheless fail and should be dismissed for at least five reasons. ***First***, the Complaint does not satisfy Rules 9(b) and 12(e), as Plaintiffs do not allege when they visited the Website, what actions (if any) they took, or what information (if any) they provided. ***Second***, Plaintiffs cannot plead a wiretapping claim under CIPA Section 631(a) because they fail to allege that they had any communications with the Website and that a third party attempted to read or learn the contents of those communications in transit. ***Third***, Section 638.51 of CIPA applies only to telephonic communications, not online tracking technologies. ***Fourth***, Plaintiffs have failed to plead a highly offensive intrusion or a reasonable expectation of privacy in routine browsing data. ***Fifth***, Plaintiffs fail to plead facts in support of their claims for fraud and unjust enrichment.

The Complaint should be dismissed in full. Alternatively, the Court should order Plaintiffs to make a more definite statement.

## II. ARGUMENTS

### A. Plaintiffs' allegations do not meet the heightened pleading standard under Rule 9(b).

#### 1. Plaintiffs allege no substantive details about their individual browsing activities on the Crypto.com Website.

As noted above, Plaintiffs' narrative has a fatal flaw. As another judge in this district very recently found, virtually identical allegations brought by the same plaintiffs' counsel in another case required dismissal of similar claims because those plaintiffs, like Plaintiffs here, could not allege specifics as to their personal interactions with the website at issue. *See Shah v. MyFitnessPal, Inc.*, 2026 U.S. Dist. LEXIS 15193, at *24–26 (N.D. Cal. Jan. 27, 2026). The complaint in *Shah* suffered from the same fundamental problems as the Complaint in this case: the plaintiffs there relied on broad allegations about the theoretical experience of "website users," but could not allege that "they **personally** engaged in any communications with the websites." *Id.* at *20 (emphasis added).

Similarly here, the Complaint alleges *nothing* about Plaintiffs' individual browsing activities on the Website, and instead relies on sweeping assertions about potential tracking of the activity of generic Website users. The allegations specific to Plaintiffs can be summarized as follows: (1) At some point in the last four years, Plaintiffs visited Crypto.com and clicked a button to "Disable All" cookies (*see* Compl. ¶¶ 107–108, 117–118); and (2) the Website continued using cookies even after Plaintiffs opted out, thus allowing third parties to theoretically access information about Plaintiffs' visits. *Id.* ¶¶ 111, 121.

But what happened in between? What did Plaintiffs actually *do* on the Website? The Complaint doesn't say, and instead alleges only that Plaintiffs "continue[d] browsing the Website" after opting out. *Id.* ¶¶ 109, 119. But Plaintiffs provide no details about that alleged browsing: what pages they visited (if any) and whether they scrolled through those pages; whether they clicked any links or buttons; whether they entered any information into the Website; or whether they used its search function.[1] Without such allegations, the Court cannot infer that Plaintiffs took *any* of these actions. *See Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume that [plaintiff] can prove facts that it has not alleged."); *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1174–75 (C.D. Cal. 2014) ("[T]he FAC does not expressly allege that [plaintiff] viewed the

[1] At all times material to this case, the Crypto.com website was primarily a static website.

Walmart.com webpages listing each medicine's active ingredients. At best, the FAC invites the reader to *infer* [plaintiff] viewed these webpages, but this is insufficient to state a claim . . . .").

Because Plaintiffs provide zero specifics about their purported browsing, they have failed to satisfy the "what" requirement of Rule 9(b). *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing fraud-based claims regarding website misrepresentations because plaintiff "fail[ed] to provide the particulars of her own experience"); *Boris*, 35 F. Supp. 3d at 1174 (dismissing claim under Rule 9(b) because plaintiff failed to alleged details of his website visits). As explained below and in Crypto.com's Motion (Dkt. 19), each of Plaintiffs' claims hinges on whether and how they interacted with the Website. For instance, if Plaintiffs simply clicked "Disable All," spent a few moments reading the Website's homepage, and then left, that would mean they had no "communications" with the Website and cannot sustain their wiretapping claim (Count III). *See* Mot. at 11–12; *infra* at 6–7. That fact pattern would also defeat Plaintiffs' claims for invasion of privacy, because it is not "highly offensive" to disclose that a consumer merely visited a static website about cryptocurrency. *See* Mot. at 20–21; *infra* at 11–13.

Plaintiffs' response ignores this glaring defect in their Complaint. They do not (and cannot) identify any allegations in their Complaint that provide information about their browsing. Nor do Plaintiffs respond to Crypto.com's argument that this pleading defect defeats their claims. The Complaint should be dismissed for that reason alone. *See Pete v. Breach*, 2026 U.S. Dist. LEXIS 1928, at *4 (N.D. Cal. Jan. 6, 2026) ("[Plaintiff's] opposition briefs fail to respond to this argument, and he thus concedes that his claims should be dismissed on that ground.").

Instead of responding to this pleading flaw, Plaintiffs focus on a different issue: the specific types of information that could be provided to third parties. But Plaintiffs do not even respond to Crypto.com's argument on *that* point; instead, they attack a strawman by misleadingly altering Crypto.com's arguments. At page four of their response, Plaintiffs write:

> First, Defendant misstates that Plaintiffs "emphasize[] types of information Third Parties *can* collect from Website users … [but do] not allege any information [is actually] provided." MTD at 7. That is simply untrue.

This is deliberately misleading. The quoted sentence from the Motion states in full as follows:

> "While the Complaint emphasizes types of information Third Parties *can* collect from Website users (*see, e.g.*, Compl. ¶ 31), it does not allege any information provided *by Plaintiffs*."

Mot. at 7 (emphasis in original).

The Court should reject Plaintiffs' selective and misleading editing of Crypto.com's argument, which attempts to divert attention away from the Complaint's lack of specificity as to the Plaintiffs' individual experiences—i.e., the same pleading defect that required similar claims to be dismissed in the *Shah* case. Plaintiffs' addition of "is actually" and omission of "by Plaintiffs" changes the argument entirely. As the full quotation makes clear, the relevant distinction is not between information that "can" be collected and information that "is actually" collected. Rather, the question is what specific information (if any) was provided "*by Plaintiffs*," as opposed to by generic "users" of the Website. *See, e.g.*, Compl. ¶ 31 (alleging information collected about "users"); *id.* ¶ 41 (depicting image of information collected about a "user"—presumably Plaintiffs' counsel). Nowhere in the Complaint do Plaintiffs allege which of *their* specific and individual data points were conveyed to third parties. Plaintiffs identify 12 broad categories of information, *see id.* ¶ 31, but never allege (1) which categories if any were collected during their visits or (2) what specific data points within those broad categories were collected.

Those omissions are fatal, because much of the information identified in Paragraph 31 of the Complaint would not exist as to the Plaintiffs unless they themselves actually interacted with the Website—which they do not allege having done. For instance, if Plaintiffs did nothing more than visit the homepage, there would be no data about "time spent on each page," "navigation patterns," "links, buttons, or ads on the Website that a user clicks," "information the user entered into the Website's form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information," or "Website products viewed or added to shopping carts." *Id.* ¶ 31. Plaintiffs do not allege that the Website collected each category of information listed in Paragraph 31 of their Complaint because—with regard to their own visits—they *cannot* make that allegation. Setting aside Plaintiffs' failure to plead facts about their browsing, this independently requires dismissal under Rule 9(b).

Finally, while Plaintiffs wholly ignored Crypto.com's Rule 9(b) cases, none of Plaintiffs' cases are on point. Plaintiffs' cases do not address the two pleading defects discussed in this section: (1) the lack of any details about Plaintiffs' website visits, and (2) the failure to allege what Plaintiff-specific information was allegedly provided to third parties. Those failures doom Plaintiffs' claims. *See Pirozzi*, 913 F. Supp. 2d at 850; *Boris*, 35 F. Supp. 3d at 1174; *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 723 (9th Cir. 2019) (Rule 9(b) allegations must be "specific enough" that defendants can

"defend against the charge and not just deny that they did anything wrong").[2]

**2. Plaintiffs fail to identify "when" they viewed the alleged misrepresentation.**

Plaintiffs also fail to plead "when" the alleged fraud occurred under Rule 9(b), instead only vaguely claiming that they each visited the website "on one or more occasions during the last four years." Compl. ¶¶ 104, 114. Courts have previously dismissed the same inadequate allegations about website visits that occurred "during the last four years." *Ayora v. Inspire Brands, Inc.*, 2025 U.S. Dist. LEXIS 264583, at *8–11 (N.D. Cal. Dec. 22, 2025); *Wiley v. Universal Music Grp., Inc.*, 2025 U.S. Dist. LEXIS 261303, at *25–26 (N.D. Cal. Dec. 17, 2025). Plaintiffs attempt to distinguish *Ayora* and *Wiley* on the basis that those cases involved multiple websites, but that distinction is irrelevant as the existence of multiple websites did not drive the analysis in those cases. Regardless of the number of websites at issue, without a more precise time frame, Crypto.com cannot "determine what specific representations regarding cookies were made" or "how the [Website was] using any cookies . . . on those specific dates." *Wiley*, 2025 U.S. Dist. LEXIS 261303, at *26. Indeed, in the time since Crypto.com filed its Motion, the *Shah* court rejected the very same allegations in a case involving only one website. *See Shah*, 2026 U.S. Dist. LEXIS 15193, at *24–26; *see also Boris*, 35 F. Supp. 3d at 1174–75 (dismissing fraud-based claims under California consumer protection statutes for failure to allege when plaintiff viewed the sole website at issue).

Plaintiffs' cases do not help them. Their cases involve time frame allegations far more specific than those made here. In *Gabrielli v. Motorola*, the plaintiff specifically identified website visits "in or around February 2022, December 2022, November 2023, and January 2024." *See* Def.'s Req. for Judicial Notice ("RJN"), Ex. A, Case No. 4:24-cv-09533 (N.D. Cal. Dec. 31, 2024), Dkt. 1 ¶ 70; *see also Gabrielli v. Haleon*, 2025 U.S. Dist. LEXIS 169503, at *3 (N.D. Cal. Aug. 29, 2025) (identifying specific month of visit to each relevant website, including August 2023 [Tums Website], January 2024 [Emergenc Website], November 2023 [Centrum Website], and June 2024 [Sensodyne Website]); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 U.S. Dist. LEXIS 230964, at *3 (N.D. Cal. Nov. 24, 2025) (plaintiff visited the website

---

[2] Plaintiffs assert that Crypto.com "contradicts itself" by arguing that the allegations are insufficiently specific while also arguing that the allegations fail to state a claim. Those arguments are perfectly consistent—Plaintiffs' failure to plead anything about their Website visits and their specific information means they have not pleaded the elements of their claims. Further, even if Plaintiffs had provided each category of data listed in Complaint Paragraph 31, those types of information are not legally actionable for other reasons explained in the Motion.

in March 2023); RJN, Ex. B, *Walsh v. Dollar Tree Stores, Inc.*, Case No. 25-cv-01601, Dkt. 1, ¶¶ 76, 84, 92 (N.D. Cal. Feb 14, 2025) (alleging visits in October 2024, December 2024, and January 2025); RJN, Ex. C, *Casillas v. Six Flags Ent. Corp.*, Case No. 2:25-cv-06824 (C.D. Cal. Aug. 25, 2025), Dkt. 1-1, ¶ 15 ("Plaintiff visited the Website in the last year.").

Because Plaintiffs have not satisfied Rule 9(b), the Complaint should be dismissed in its entirety.

### B. Plaintiffs fail to state a claim under CIPA Section 631(a) (Count III).

#### 1. Plaintiffs fail to allege that they made any "communications" containing "contents."

Plaintiffs do not dispute that they have no claim unless Crypto.com conveyed to third parties "information concerning the substance, purport, or meaning of [Plaintiffs'] communication" with the Website. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). But Plaintiffs identify just one concrete action they took while on the Website: clicking the "Disable All" button when presented with a cookie banner. Compl. ¶¶ 108, 118. They do not allege that Crypto.com relayed their selection to third parties, and Plaintiffs do not assert their clicking of a cookie banner alone constituted a "communication" with any "contents" under CIPA.

In their response, Plaintiffs attempt to rewrite their Complaint, claiming that it makes "myriad allegations about the interception of user input data." Resp. at 8. This may be true, but as explained above and in the Motion, Plaintiffs critically allege nothing about the interception of *their* "user input data." Mot. at 11–12; *supra* at 2–3. It is not enough to allege that the Website captures certain information provided by generic "users." *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissing Section 631(a) claim where "[p]laintiffs do not explain what information they provided to [d]efendant"); *Wiley*, 2025 U.S. Dist. LEXIS 261303, at *20 (dismissing claim where plaintiffs "do not allege that, in interacting with [the website], they *personally* engaged in any communications with the websites whose content could have been intercepted.") (emphasis added). Just last month, the court in *Shah* dismissed essentially the same complaint—filed by Plaintiffs' counsel here—for the same reason:

> The problem with plaintiffs' wiretapping claim is that plaintiffs do not specifically allege that *their* communications were intercepted by any third parties. Plaintiffs repeatedly allege that [defendant] enabled third parties to track the information and communications of 'Website users.' But with respect to *their own* interactions with [defendant's] websites,

> plaintiffs allege only that they visited the website and chose to opt out of certain cookies. They do not allege that, in interacting with [defendant's] website, they personally engaged in any communications with the websites whose content could have been intercepted.

*Shah*, 2026 U.S. Dist. LEXIS 15193, at *20–21 (emphasis in original). This Complaint fails for the same reason.

Likewise, Plaintiffs assert that "user input data (including search terms and URLs that include search terms) are 'contents' under CIPA." Resp. at 8. But again, Plaintiffs never allege that they entered search terms, generated unique URLs, or entered any other "user input data" into the Website. As another court has noted, that distinguishes this case from *James*, which Plaintiffs wrongly rely on. *See Augustine v. Great Wolf Resorts, Inc.*, 2024 U.S. Dist. LEXIS 127257, at *16–17 (S.D. Cal. July 18, 2024).

**2. Plaintiffs fail to allege that third parties attempted to read or learn the contents of Plaintiff's communications while in transit.**

Even if Plaintiffs had alleged that they personally made communications via the Crypto.com Website (they have not), they fail to allege that any third party attempted to read or learn the contents of those communications while such communications were in transit. In fact, Plaintiffs' response effectively concedes that they have *not* alleged any in-transit reading or learning by third parties, and instead argues that they are not required to plead those facts at all. *See* Resp. at 8–11. According to Plaintiffs, it is enough to allege that third parties "intercepted" Plaintiffs' communications "in real time." *Id.*

Plaintiffs are wrong. To begin, their argument contradicts the text of the statute. *See* Cal. Penal Code § 631(a) (clause 2) (penalizing anyone who "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"). The statute says nothing about "interception," so Plaintiffs' allegations on that score are irrelevant.

Moreover, many courts have applied the statute exactly as written. *See, e.g.*, *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *38 (C.D. Cal. Dec. 4, 2025) ("This Court agrees with others that 'you have to do something more than just intercept the contents of the communication' to state a claim.").[3]

---

[3] *See also Briskin v. Shopify Inc.*, 2026 U.S. Dist. LEXIS 11317, at *19–20 (N.D. Cal. Jan. 21, 2026) (same); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. July 14, 2021) ("[T]he crucial question under § 631(a)'s second clause is whether Mastel has plausibly alleged that Miniclip read one of his communications while it was still in transit, i.e., before it reached its intended recipient."); *Adler v. Cmty.*, 2021 U.S. Dist. LEXIS 201644, at *9–12 (C.D. Cal. Aug. 2, 2021) *9–12 ("[T]here is no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received."); *R.C. v. Sussex Publishers*, LLC, 2025 U.S. Dist. LEXIS 59491, at *22 (N.D. Cal. Mar. 28, 2025) (same); *Doe v. Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS

And courts have recognized that allegations like Plaintiffs' regarding the analysis of data for monetization support an inference of reading *after the fact*—not while in transit. *Lewis*, 2025 U.S. Dist. LEXIS 263675, at *38–39 ("This section of the [complaint] concerns Defendant's monetization of Plaintiffs' data, but . . . Plaintiffs' allegations suggest that Defendant would analyze Plaintiffs' communications after it collects them, not as it collects them."). Contrary to Plaintiffs' assertion, the purely legal holdings of these cases are as valid at the pleading stage as at summary judgment.

Because Plaintiffs plead no facts supporting the "in transit" requirement, their Count III wiretapping claim should be dismissed on this independent basis.

**C. Plaintiffs fail to state a claim under CIPA Section 638.51 (Count IV).**

**1. CIPA's pen register provision applies only to telephonic communications, as confirmed by the statute's purpose and legislative history.**

Plaintiffs argue in their response for a broad reading of CIPA Section 638.51, but cannot plead a violation of that section because it applies only to telephonic communications. That is the best interpretation of an ambiguous provision that has divided California courts, because it is the only one that fits the purpose and legislative history of the provision. *See* Mot. at 14–19 (collecting cases).

To begin, there is simply no dispute that the definition of "pen register" is ambiguous. *See* Cal. Penal Code § 638.50(b) ("'[A] device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."). The ambiguity is evident from the definition's vague terms. Plaintiffs argue that the statutory term "device or process" is broad enough to include internet tracking tools. Resp. at 12–13. But that conclusion, even if correct, addresses only the collection *tool*—not the collection *place*. On that score, Plaintiffs—and the cases they cite—do not grapple with the statute's much narrower definition of the collection place: an "instrument or facility." A telephone is plainly an instrument—but no ordinary user of English would think of an internet website as an instrument or facility.

Given that ambiguity, many courts have considered the statute's purpose and legislative history

207952, at *1 (N.D. Cal. Oct. 17, 2025) (a defendant "must do something more than just intercept the communication while it is in transit to be held liable"); *Torres v. Prudential Fin., Inc.*, 2025 U.S. Dist. LEXIS 73736, at *15–16 (N.D. Cal. Apr. 17, 2025) (same).

when interpreting the pen register provision. Those interpretive tools overwhelmingly indicate that a pen register applies only to telephones. Crypto.com highlighted six clear reasons for this in its Motion, and Plaintiffs chose to ignore five of them in their response. In brief, the six reasons are:

(1) CIPA borrowed the pen register definition wholesale from the federal Wiretap Act—a 1986 law whose pen register provision applies only to telephones. Mot. at 16–17; *Tovar v. Zuchowski*, 982 F.3d 631, 636 (9th Cir. 2020) ("When a statutory term is obviously transplanted from another legal source, it brings the old soil with it.");

(2) The legislature's stated purpose for enacting the pen register provision in 2015 was to create a state-level equivalent to the federal Wiretap Act so that law enforcement officers could conduct telephone surveillance. Mot. at 17;

(3) The pen register provision refers to only one type of technology: telephones. Mot. at 17; Cal. Penal Code § 638.52(c), (d);

(4) Contemporaneous bill analyses and legislative statements confirmed that the legislature's purpose was to regulate telephone surveillance. The legislature said nothing about regulating internet technologies, which were by then in widespread use. Mot. at 17–18;

(5) Internet technologies are regulated separately—and differently—under the California Consumer Privacy Act ("CCPA"), which provides a broader regulatory framework that conflicts with Plaintiffs' interpretation. Mot. at 18; and

(6) Plaintiffs' theory would create conflicts within CIPA itself. For instance, websites could collect and transmit consumer data under Section 631(a) if consent is obtained, but consent would not be a defense to the pen register claim. Put differently, even though the crux of Plaintiffs' grievance is the Website's alleged failure to honor their opt-out request, their pen register theory would apply *even if they had affirmatively opted in*. Mot. at 18 n.7.

For these reasons, California courts have regularly declined to apply the pen register provision to internet technologies. *See* Mot. at 15 (collecting cases). Plaintiffs fail to address any of these cases. And Plaintiffs' response ignores all of the above points listed above except the second. While conceding that the legislature's stated purpose was a "motivating factor," Plaintiffs argue that this "specific purpose does not limit the statute's modern application or override its plain text." Resp. at 13. But the text of the pen

register statute is anything but plain, as explained above, and the "modern application" does not involve any technology that is new since 2015. The only new development is a wave of extortionate lawsuits filed by the plaintiffs' bar. If the legislature had wanted to regulate internet data collection, it clearly knew how to do so, as it showed when it enacted the CCPA three years later. Moreover, the legislature's general purpose in enacting CIPA in 1967—to protect the privacy of Californians—does not override the legislature's more specific, targeted purpose in enacting the pen register provision in 2015.

**2. The rule of lenity dictates that any ambiguity must be construed in Crypto.com's favor.**

Because the pen register provision is an ambiguous criminal statute, it must be construed in Crypto.com's favor under the rule of lenity. *See* Mot. at 19.

Plaintiffs' first response to this argument is that that statute is merely ambiguous—not "grievously" ambiguous. Resp. at 14. Plaintiffs criticize Judge Chhabria for not using that specific word in his recent decision applying the rule of lenity to CIPA. *See Doe v. Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS 207952 (N.D. Cal. Oct. 17, 2025). But Judge Chhabria applied the standard as articulated by the California Supreme Court. *See Smith v. LoanMe, Inc*., 483 P.3d 869, 880 (Cal. 2021) ("[W]hen two reasonable interpretations of the same provision stand in relative equipoise," the defendant should be given "the benefit of every reasonable doubt on questions of interpretation"). Regardless, whatever distinction may exist between "ambiguous" and "grievously ambiguous," Judge Chhabria correctly made clear that CIPA is plagued by the highest possible level of ambiguity. *Doe*, 2025 U.S. Dist. LEXIS 207952, at *1–3 (calling the statute a "total mess" that is "borderline impossible" to apply, such that companies "have no way of telling whether their online business activities will subject them to liability").

Plaintiffs' second argument fares no better. They assert that the rule of lenity does not permit courts to "override common sense and evident statutory purpose." Resp. at 15. True enough—but *Plaintiffs'* interpretation defies both common sense and the legislature's expressly stated purpose. Even if the Court favors Plaintiffs' interpretation, there is no question that Defendant's interpretation—the one endorsed by many California courts—is equally "reasonable." *Smith*, 483 P.3d at 880. Thus, the rule of lenity applies in Crypto.com's favor, and Count IV should be dismissed.

**D. Plaintiffs fail to plead claims for invasion of privacy and intrusion upon seclusion (Counts I and II).**

Plaintiffs' response fails to meaningfully rebut Crypto.com's arguments for dismissing the common law privacy claims, and this Court should join many others in dismissing those claims at the pleading stage. *See, e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038–39 (N.D. Cal. 2014); *Hubbard v. Google LLC*, 2024 U.S. Dist. LEXIS 117876, at *7 (N.D. Cal. July 1, 2024).[4]

**1. Plaintiffs fail to allege a highly offensive intrusion.**

Pleading a highly offensive intrusion is a high bar. It is not enough to allege a "breach of social norms," as Plaintiffs assert. Resp. at 17. Instead, the intrusion must be an "*egregious* breach of the social norms" that causes "unjustified embarrassment or indignity." *Hill*, 865 P.2d at 655 (Cal. 1994) (emphasis added); *Khamooshi v. Politico LLC*, 2025 U.S. Dist. LEXIS 197891, at *7–8 (N.D. Cal. Oct. 2, 2025) (dismissing privacy lawsuit filed by plaintiff's counsel in this action because "Plaintiff identifie[d] no embarrassing, invasive, or otherwise private information collected.").

Plaintiffs fail to meet their burden. They allege that the Website continued to use tracking cookies even after Plaintiffs opted out, but they allege nothing about their post-opt-out browsing activities, *see supra* at 2–4, and their privacy claims must be dismissed for this reason alone. *See Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1043–44 (S.D. Cal. 2024) (dismissing privacy claims at the pleading stage because "[p]laintiff's allegations lack[ed] the requisite specificity to indicate the existence of a legally protected privacy interest or a sufficiently serious breach thereof"); *see also Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 950–51 (S.D. Cal. 2024) (same). And even if Plaintiffs alleged specific browsing activity after opting out, that would still be insufficient under Ninth Circuit law. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (rejecting the plaintiff's claim that "tracking of her interactions" with a website caused any harm that was "remotely similar" to the "highly offensive"

[4] Plaintiffs argue that courts do not typically resolve this issue on the pleadings. Resp. at 17 n.6. But when, as here, "the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 657 (Cal. 1994).

interferences or disclosures actionable at common law").[5]

In response, Plaintiffs argue that the Website's alleged tracking activities were "highly offensive" because Plaintiffs were led to believe that they would not be tracked after they clicked a button to disable cookies. Resp. at 16. But Plaintiffs do not allege any specific browsing activity or information capture after their alleged optouts. If Plaintiffs did nothing after opting out, it does not matter whether the cookies were active or not, because by definition they cannot have suffered an actionable injury under their claims.

Finally, Plaintiffs argue that the "mass accumulation of data is highly offensive, regardless of the specific type and quality." Resp. at 16. This is another attempt to conflate Plaintiffs with the unspecified generic "Website users" identified throughout the Complaint, but as previously explained, Plaintiffs do not allege any "mass accumulation" of their *own* data by Crypto.com or the third parties. In any event, Plaintiffs' cases do not support Plaintiffs' broad-brush assertion. Rather, courts conduct a holistic assessment of the circumstances, including the sensitivity and amount of data at issue. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 935–36, 942–43 (N.D. Cal. 2023) (involving "sensitive health and personal safety information," and information related to the user's race and political affiliations); *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. July 28, 2021) (involving "sensitive financial information"); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) (involving sensitive private medical information). Indeed, the *nature* of the data at issue informs whether the collection is an "egregious" breach of social norms. *See, e.g.*, *Doe v. Beard*, 63 F. Supp. 3d 1159, 1170 (C.D. Cal. 2014) (noting the bar for "egregious" intrusions is more likely satisfied with certain types of information, such as medical information like HIV status); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) (data breach involving medical information more likely to constitute "egregious breach" that is "highly offensive"). Plaintiffs allege nothing similar here.

**2. Plaintiffs fail to allege a reasonable expectation of privacy in information voluntarily provided to the Website.**

Plaintiffs also fail to allege a reasonable expectation of privacy in the limited, nonsensitive data

[5] Plaintiffs attempt to distinguish *Popa* because it addressed plaintiff's standing, rather than the merits of her claims. But a key factor in the standing analysis is whether a plaintiff has suffered a harm similar to one protected by common law privacy torts—i.e., the same inquiry that applies here. *See id.* at 789–92.

allegedly collected by third parties. "Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard*, 2024 U.S. Dist. LEXIS 117876, at *22. Thus, there is no reasonable expectation of privacy in information that is tracked and collected only while using the Website. *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (no reasonable expectation of privacy in location data when Google "only tracked and collected data during use of Google services"); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (no privacy interest in browsing data collected while plaintiff was using defendant's website).

Plaintiffs again argue that they had a reasonable expectation of privacy because they believed they opted out of all cookies. Resp. at 2, 16–17. However, Plaintiffs were on notice that some Website cookies would remain active even if they selected "Disable All," thus eliminating any absolute expectation of privacy that Plaintiffs could have had. Compl. ¶¶ 35–36. Moreover, Plaintiffs' reasonable expectation of privacy does not exist in a vacuum—it is tethered to the sensitivity of the information allegedly disclosed. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 601–06 (9th Cir. 2020) ("[*B*]*oth* the nature of collection and the sensitivity of the collected information are important.") (emphasis added); *Thomas v. Papa Johns,* 2024 U.S. Dist. LEXIS 84019, at *2–15 (S.D. Cal. May 8, 2024) (a failure to give notice of tracking of website interactions may create a reasonable expectation of privacy, but the non-sensitive nature of the information at issue undermined any reasonable expectation of privacy); *Calhoun v. Google, LLC*, 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (amount of data driving factor in court's analysis).

Because Plaintiffs plead nothing about their interactions with the Website after they clicked "Disable All," they have failed to allege that they had any reasonable expectation of privacy. Counts I and II should be dismissed.

**E. Plaintiffs fail to plead fraud, deceit, and/or misrepresentation (Count V).**

Plaintiffs fail to plead multiple elements of their common law fraud claims.

First, Plaintiffs do not allege facts establishing that Crypto.com made a knowingly false statement or intentionally defrauded Plaintiffs—i.e., that Crypto.com actually knew the "Disable All" cookies button was not functioning and that Crypto.com intended to mislead Plaintiffs. Plaintiffs argue that knowledge and intent may be pleaded "generally." Resp. at 18. Even so, Plaintiffs must allege *some* facts to make it

plausible that Crypto.com made knowingly false statements with intent to defraud. *See Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n.5 (9th Cir. 2014) ("[A]lthough the language of Rule 9 poses no barrier in itself to general pleading of fraudulent intent, *Twombly* and *Iqbal's* pleading standards must still be applied to test complaints that contain claims of fraud."); *DeLeon v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 8296, at *23 (N.D. Cal. Jan. 28, 2011) ("While the heightened pleading requirements of Rule 9(b) do not apply to allegations of knowledge or intent, Plaintiffs must still plead facts establishing scienter with the plausibility required under Rule 8(a)."). Plaintiffs have not done so. Rather, they merely point to the alleged falsity of the cookie banner.

Plaintiffs also fail to plead justifiable reliance—i.e., that they would have done anything differently if they had known that the "Disable All" button was allegedly not functioning. Their response repeats the same conclusory allegations from their Complaint—that they "would not have used the Website at all." Resp. at 18; Compl. ¶ 192 (Plaintiffs "would not have interacted with the Website"). But Plaintiffs fail to allege that after clicking "Disable All," they meaningfully used or interacted with the Website *at all*. *See* Mot. at 23; *supra* at 2–4. Plaintiffs fail to allege any action they took in reliance on the allegedly nonfunctional "Disable All" button. *See AB Inv. LLC v. Regal One Corp.*, 2009 U.S. Dist. LEXIS 140350, at *8 (C.D. Cal. Sep. 10, 2009) (plaintiff failed to allege what it would have done differently).

Finally, Plaintiffs fail to credibly allege any damages. Their response points to their "allegations regarding invasion of protected interests, misappropriation of their information, and that their information has objective value." Resp. at 18. But, as explained above and in the Motion, Plaintiffs do not allege what information (if any) was "appropriated" from them. And even if they had done so, they do not allege what "objective value" their unidentified information had. *See Hubbard*, 2024 U.S. Dist. LEXIS 117876, at *26–35 (plaintiffs did not explain how alleged misappropriation of their information reduced its value). Nor do Plaintiffs plead any other non-conclusory facts about the damages they allegedly incurred.

Plaintiffs' fraud claim, Count V, should be dismissed.

### F. Plaintiffs fail to plead a claim for unjust enrichment (Count VI).

Plaintiffs have not pled unjust enrichment because: (1) they fail to allege any browsing activities or information collection, and thus allege no benefit conferred on Crypto.com, and (2) they fail to allege that Crypto.com profited on, or otherwise made use of, any unalleged information. *See* Mot. at 24–25.

Plaintiffs ignore all this in their response, and they claim to have alleged that "Defendant benefited from using [Plaintiffs'] Private Communications for personal profit." Resp. at 19 (citing Compl. ¶¶ 32, 200–201). But Paragraphs 200 and 201 of Plaintiffs' Complaint are merely boilerplate recitations of the elements of an unjust enrichment claim. And Paragraph 32 contains a generic statement that "third-party cookies can be used for a variety of purposes," including some financial purposes. But Plaintiffs do not allege that Crypto.com used cookies in this way. Nor do Plaintiffs allege that Crypto.com used *their* information for profit—even if Plaintiffs had alleged that they provided any personal information (which they do not). In other words, Plaintiffs have not adequately pled a benefit conferred on Crypto.com.

Courts have dismissed unjust enrichment claims based on these same defects. *See, e.g.*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (N.D. Cal. 2020) (dismissing unjust enrichment claim where plaintiffs had "not pleaded any description of the 'personal information' that [defendant] allegedly used"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1070 (C.D. Cal. 2024) (same). The Court should do the same here. Accordingly, Count VI should be dismissed.

**G. Alternatively, Plaintiff must make a more definite statement under Rule 12(e).**

In the alternative, the Court should order Plaintiffs to make a more definite pleading under Rule 12(e). *See* Mot. at 8–9. Plaintiffs fail to address any of Crypto.com's authorities applying the Rule in this context. *See id.*; *see also Asis Internet Services v. Consumerbargaingiveaways*, *LLC*, 622 F. Supp. 2d 935, 945 (N.D. Cal. 2009) ("To satisfy the particularity requirement, the complaint must provide, at a minimum, the specifics regarding . . . the date ranges of the emails in each category. Defendants' motion for a more definite statement is therefore granted."). But the Court need look no further than the Rule itself, which requires a more definite statement when the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). That is the case here. Plaintiffs fail to allege when they visited the Website or they actions they took while there (if any), and by "pleading around that crucial information," they have deprived Crypto.com of the ability to defend itself. *Baker v. Yahoo, Inc.*, 2025 U.S. Dist. LEXIS 228493 (S.D.N.Y. Nov. 19, 2025).

## III. CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Complaint in full. Alternatively, the Court should order Plaintiffs to file a more definite statement under Rule 12(e).

Dated: February 13, 2026

WINSTON & STRAWN LLP

By: */s/ Kevin P. Simpson*

Kevin P. Simpson (SBN: 344644)
KPSimpson@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Fl.
Los Angeles, California 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Sean G. Wieber (*pro hac vice*)
SWieber@winston.com
Sophie R. LaCava (*pro hac vice*)
SLaCava@winston.com
**WINSTON & STRAWN LLP**
300 N. LaSalle Drive, Suite 4400
Chicago, Illinois 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Defendant Foris DAX, Inc.*