UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE ORTIZ, et al.,

          Plaintiffs,

    v.

FORIS DAX, INC.,

          Defendant.

Case No. 25-cv-08950-EMC

**ORDER GRANTING IN PART MOTION TO DISMISS**

Docket No. 19

In this putative class action, Plaintiffs Jose Ortiz and Javier Hernandez allege that Defendant Foris Dax, Inc. violated their privacy rights by placing third party cookies on their devices even though they had expressly opted out of receiving such cookies.  They assert six causes of action: invasion of privacy, intrusion upon seclusion, violations of CIPA §631(a) and §638.5, fraud, and unjust enrichment.  Defendant moves to dismiss on all counts for failure to state a claim.

## I.    BACKGROUND

Defendant Foris Dax runs a cryptocurrency exchange under the name Crypto.com.  The www.crypto.com website serves as a marketing platform for Defendant's cryptocurrency exchange and related financial services.  Dkt. No. 1, Complaint ¶ 33.  Visitors to the website can download Defendant's cryptocurrency trading application, view current cryptocurrency prices, browse listings of non-fungible tokens (NFTs), and access educational or promotional resources related to cryptocurrency trading and investment.  *Id.*

Plaintiffs Ortiz and Hernandez visited the Crypto.com website "on one or more occasions during the last four years."  *Id.* ¶¶ 104, 114.  Plaintiff Ortiz visited the website "to obtain

information about both the rates and prices for specific cryptocurrencies in which he was interested." *Id.* ¶ 106. Plaintiff Hernandez similarly visited the website "to obtain information about trading, crypto assets, including pricing, and Defendant's credit cards offering." *Id.* ¶ 116. Upon initially visiting the website, both plaintiffs were presented with a popup cookie consent banner. *Id.* ¶¶ 107, 117. This banner stated: "We use cookies on our website to operate our site, enhance your experience, analyze our traffic and conduct advertising and analytics." *Id.* ¶¶ 107, 117. The banner provided the option to "Accept All" cookies, "Disable All" cookies, or customize settings. *Id.* ¶¶ 107, 117. Both plaintiffs selected the "Disable All" option. *Id.* ¶¶ 108, 118. They believed that selecting this option would opt them out of the cookies described in the banner. *Id.* ¶ 108, 118. After selecting this option, plaintiffs "continue[d] browing" the website. *Id.* ¶¶ 109, 119. The complaint provides no further detail about their browsing activities.

Plaintiffs now allege that Defendant's representation that they could "Disable All" cookies was false. Even before the popup cookie banner appeared, Defendant had placed cookies on plaintiff's device, including third-party tracking cookies. *Id.* ¶ 120. And after Plaintiffs selected the disable option, Defendant continued to place cookies or transmit user data based on the already-placed cookies. *Id.* ¶ 121.

Plaintiffs allege that these third-party cookies have the ability to collect the following information about a user's activity on Crypto.com: pages viewed on Crypto.com, the time spent on each page, the user's navigation patterns, the frequency and number of the user's visits to the Crypto.com website, which link or ads the user clicked on the website, any information entered into the website's form fields, products added to a shopping cart, data about the user's devices, browser, and geolocation. *Id.* ¶ 31. Defendant's Privacy Preference Center, accessible from Defendant's cookie popup banner, explains the categories of cookies it uses and the information they collect, including "targeting cookies" set by its advertising partners Google, X, and Snapchat, that "may be used by those companies to build a profile of [the user's] interests and show [the user] relevant adverts on other sites." *Id.* ¶ 36.

At oral argument, Plaintiffs clarified the nature of the information collection they allege. Counsel represented that Defendant's website sets cookies that engage in "cross-tracking." These

United States District Court
Northern District of California

cookies contain an identifier that allows third-parties to connect information collected by the Crypto.com website about activity on that website to the same user's activity on other websites that contain that third-party's cookies. The user's activity on Crypto.com would thus be one source in the third-party's aggregation of data about that user – a page in a larger dossier. The remainder of the information in this dossier would be determined by the websites the user visits before and after visiting Crypto.com and the extent to which those websites contain similar tracking cookies. The Crypto.com cookies thus provide information about the user's activity while on Crypto.com and the ability to connect those activities to other online activity of the user that has been tracked by the third-party. But the Crypto.com cookies themselves do not collect information about the user's online activity outside of the Crypto.com website.

Plaintiffs bring six California law claims for (I) Invasion of Privacy, (II) Intrusion Upon Seclusion, (III) Violation of CIPA Section 631, (IV) Violation of CIPA Section 638.51, and (V) Unjust Enrichment. Jurisdiction is asserted under 28 U.S.C. § 1332(d)(2), as between California plaintiffs and a Delaware corporation with a principal place of business in Texas. Defendant moves to dismiss on all counts for failure to state a claim.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action for failure to state a claim for relief. To overcome a Rule 12(b)(6) motion after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

## III.   DISCUSSION

### A. California Privacy Tort Claims

Plaintiffs bring claims for the common law torts of invasion of privacy and intrusion upon seclusion. Since these claims involve similar elements, courts typically consider them together. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). To prevail on either claim, Plaintiffs must plausibly allege that (1) they had "a reasonable expectation of privacy," and (2) Defendant's intrusion upon their privacy was "highly offensive." *Id.*

#### 1.   Plaintiffs adequately plead a reasonable expectation of privacy

Whether a user had a reasonable expectation of privacy is a mixed question of fact and law. *Id.* Courts consider "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.'" *Id.* at 601–02 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (Cal. 2009)). To answer this question, courts examine "a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id.* (citing *Hill v. NCAA*, 7 Cal. 4th 1, 36 (Cal. 1994)).

The Ninth Circuit has held that a user has a reasonable expectation of privacy as to online activity that a website affirmatively represents that it will not track. *Id.* at 602. In *Facebook Tracking*, plaintiffs had a reasonable expectation of privacy in their data after logging out of the Facebook app because the privacy policy stated that Facebook would not collect data when the user was logged off. *Id.*; *see also In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 151 (3rd Cir. 2015) (holding that users had a reasonable expectation of privacy in their browsing history after users denied consent for Google to track their browsing); *see also Shah v. MyFitnessPal, Inc.*, No. 25-CV-04430-PCP, 2026 WL 216334, at *4 (N.D. Cal.

United States District Court
Northern District of California

Jan. 27, 2026) (noting that "a reasonable visitor to [Defendant]'s website who chose to opt out of optional cookies would thus reasonably expect [Defendant] not to install such cookies on their devices.").

Accordingly, Plaintiffs have pled a reasonable expectation that Defendant's website would stop collecting their data via third-party cookies after they clicked "disable all" cookies.  Plaintiffs clicked on a button that purported to disable *all* cookies while using the website.  Nevertheless, Plaintiffs allege that Defendant continued to place and operate cookies that collected browsing history, website interactions, personal preferences, and user location data.  They further allege that the collected data was provided to third parties to use to create user profiles and targeted advertisements.  A reasonable person would not expect the Defendant to continue to process user data in this manner after it has affirmatively represented that it would not do so.

Custom in California regarding online cookies also supports that Plaintiffs had a reasonable expectation of privacy.  Websites that operate in California are subject to the California Consumer Privacy Act ("CCPA"), which requires websites to allow users the opportunity to opt out of the collection of personal information that may be used by other websites for advertising analytics.  *Shah*, 2026 WL 216334, at *5.  This opt-out option typically takes the form of a popup banner, like the popup banner in this case, that allows users to decide whether, and to what extent, they permit a website to track their actions.  *Id.*  Due to the CCPA's opt-out requirements, California users are presumably accustomed to seeing these cookie rejection popups online and understand the pop-up to be an effective means to reject cookies.  *See* Compl. ¶ 108, 118.  Such expectation would be reasonable, since a failure to honor a user's optout request would violate the CCPA and place the website at risk of civil penalties.  *See* Cal Civ Code § 1798.199.90.

Given Defendant's affirmative representation to Plaintiffs that users of its website could opt out of the tracking at issue here and the customs governing California website practices, Plaintiffs have plausibly alleged that they had a reasonable expectation of privacy with respect to the data allegedly collected.

2.   <u>Plaintiffs fail to plausibly allege a highly offensive intrusion</u>

To successfully plead the second element of a privacy invasion, the intrusion in question must be "'highly offensive' to a reasonable person, and so 'sufficiently serious' and unwarranted so as to constitute an 'egregious breach of the social norms.'"  *In re Facebook*, 956 F.3d at 606 (quoting *Hernandez*, 47 Cal. 4th at 295).  The California Supreme Court has observed that this bar is set high because "[n]o community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy."  *Hill*, 7 Cal. 4th at 37.  To determine whether a defendant's actions rise to the level of "highly offensive," courts consider a variety of factors "such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive" as well as the use of deceit.  *In re Facebook*, 956 F.3d at 606.

Here, the alleged invasion of privacy involves Defendant placing third-party tracking cookies after users explicitly chose the option to disable them.  To perform the "highly-offensive" inquiry, however, the Court must have sufficient allegations to evaluate the degree of the intrusion.  Here, Plaintiffs allege that Defendant set or otherwise allowed third-party cookies that had the capacity to track certain actions taken on the Crypto.com website and link that information to the user's other online activity, to the extent the third-party has access to that information from other sources.  The new or additional information provided by Crypto.com's cookies thus relates only to information learnable from the user's activities on the website itself.  But Plaintiff's complaint is all but silent as to these activities.  Plaintiffs allege only that they visited Crypto.com "to obtain information about both the rates and prices for specific cryptocurrencies in which he was interested" and "to obtain information about trading, crypto assets, including pricing, and Defendant's credit cards offering."  *Id.* ¶¶ 106, 116.  The complaint does not make any allegations at to the actions plaintiffs actually took on the website – the complaint alleges only that they "browsed."  While the Court can reasonably infer that certain information may have been collected from the mere fact of the visit, including the Crypto.com url and the technical settings of the plaintiffs' devices and browsers when they visited, other categories of information that

United States District Court
Northern District of California

Plaintiffs claim the cookies can collect are only hypothetical without allegations that plaintiffs took those actions – such as clicking on ads, placing products into a shopping cart, and inputting information into form fields. As currently pled, Plaintiffs may have opened the website, rejected cookies, viewed the homepage for a few seconds, closed the website, and never returned. In that circumstance, it is difficult to see how the information collected about Plaintiffs – that they visited a cryptocurrency website on one occasion – constitutes an "egregious breach of the social norms." *Hernandez*, 47 Cal. 4th at 295.

It is true that "deceit can be a kind of 'plus' factor" in determining whether an action is highly offensive. *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021); *accord Facebook Tracking*, 956 F.3d at 606 ("Plaintiffs' allegations of surreptitious data collection when individuals were not using Facebook are sufficient to survive a dismissal motion on the [highly offensiveness] issue."). Here, Plaintiffs allege surreptitious collection, contrary to Defendant's representation that Plaintiffs could disable cookies. However, in *Facebook Tracking*, the panel distinguished several district court cases that found no highly offensive conduct despite surreptitious tracking, where there were no allegations that the tracking continued after the plaintiffs stopped using the defendant's services. *Facebook Tracking*, 956 F.3d at n. 8. Similarly, here, Plaintiffs do not allege tracking by Crypto.com that extends beyond Plaintiffs' activities on its website. Once Plaintiffs left Crypto.com, while they likely remained within the data-tracking ecosystem of third-parties like Google, it cannot be said that Crypto.com continued to track them. Where a company tracks limited information on its own website and discloses it to third parties, courts in this district have found that the intrusion does not meet the "high bar" to be highly offensive. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (dismissing invasion of privacy claim where "information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices"); *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 U.S. Dist. LEXIS 75154, at *13 (C.D. Cal. Apr. 1, 2026) ("misrepresentation alone" not "enough to meet the highly offensive bar"); *but see D'Antonio v. Smith & Wesson Inc.*, No. 25-cv-03085-PCP, 2026 U.S. Dist. LEXIS 32257, at *9 (N.D. Cal. Feb. 17, 2026) (finding that violation of

United States District Court
Northern District of California

specific promise to users that they could disable cookies was deceit that elevated conduct to highly offensive).

Defendant's motion to dismiss is **GRANTED** with leave to amend.  The amended complaint should clearly specify the actions Plaintiffs themselves took on the Crypto.com website that they allege to have been tracked, as opposed to general categories of information that third-party cookies could hypothetically collect.

**B.  CIPA Claims**

Plaintiffs allege violations of two sections of CIPA: §631(a) and §638.5.  Section 631(a) relates to the interception and transmission of Plaintiffs' communications on the Website; Section 638.5 concerns the prohibited uses of pen registers.

1.  CIPA §631(a)

Section 6 California Penal Code § 631(a) prohibits:

1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally tap[ping] or mak[ing] any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument"

2) "willfully and without consent of all parties to the communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the content or meaning of a message, report, or communication while the same is in transit"

3) "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained" and

4) "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

As the California appellate courts have explained, section 631 "prescribes criminal penalties for three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the

United States District Court
Northern District of California

previous two activities. *Tavernetti v. Superior Court of San Diego Cty.*, 22 Cal. 3d 187, 192 (Cal. App. 1978). Plaintiffs allege that Defendant violated the fourth CIPA prong by facilitating third parties in intercepting the contents of communications while in transit under prong two. Dkt. No. 23 (Opp.) at 7. Defendant challenges the "contents" and "in transit" elements of Plaintiffs' CIPA claim.

 *a. "Contents" of communications*

 "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (in ECPA context); *see also Yoon v. Lululemon*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (§ 631(a) protects "user-generated material" but not "routine identifiers"). Information about webpages viewed and search terms conducted are examples of contents, not record, communications. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023).

 In pleading a CIPA claim, there is no requirement that a plaintiff "specifically allege the exact contents of [their] communications," but the pleading must be sufficient for the court to determine that more than record information was implicated. *Id.* (quoting *Byars v. Tire*, 654 F. Supp. 3d 1020, 2023 U.S. Dist. LEXIS 22337, at *11-12 (C.D. Cal. Feb. 3, 2023)). Courts in this district have dismissed CIPA claims where plaintiffs fail to allege that they personally engaged in qualifying communications. *See Shah*, 2026 U.S. Dist. LEXIS 15193, at *20 (dismissing 631(a) claim where "Plaintiffs repeatedly allege that [Defendant] enabled third parties to track the information and communications" of website users "[b]ut with respect to *their own* interactions with [Defendant's] websites, plaintiffs allege only that they visited the website and chose to opt out of certain cookies") (emphasis in original); *Wiley v. Universal Music Grp., Inc.*, No. 25-cv-03095-PCP, 2025 U.S. Dist. LEXIS 261303, at *20 (N.D. Cal. Dec. 17, 2025) (dismissing 6319a) claim where plaintiffs "do not allege that, in interacting with [the website], they personally engaged in any communications with the websites whose content could have been intercepted"); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) *vacated on*

United States District Court
Northern District of California

*other grounds* (dismissing Section 631(a) claim where plaintiffs "fail[ed] to factually explain their personal participation in any of this").

Plaintiffs submit that their pleadings of intercepted "user data inputs" such as pages viewed, search queries, the user's name, age, gender, email address, location, and/or payment information qualify as the contents of communications.  However, as discussed above, Plaintiff's complaint is silent on the actions they *personally* took on the Crypto.com website after clicking the 'disable cookies' button.  Listing general categories of information that Plaintiffs allege the cookies are capable of collecting (without alleging such information was actually collected) does not suffice.  Accordingly, the Court **GRANTS** Defendant's motion to dismiss with leave to amend.

### 2.   CIPA §638.5

California Penal Code Section 638.51(a) prohibits "install[ing] or us[ing] a pen register" without a court order, subject to exceptions not applicable here.  Section 638.50(b) defines a "pen register" as "a device or process that record or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."  The parties dispute whether the internet tracking technology at issue here may qualify as a pen register, or whether the term is limited to telephonic devices.

No appellate court has yet construed the term pen register, but many federal and state court decisions have considered the issue.  While decisions are split, a majority have adopted the broader construction that Plaintiffs urge, mostly relying on the plain text of the statute.  *Compare, e.g., Shah*, 2026 U.S. Dist. LEXIS 15193, at *22 (rejecting "argument that pen register claims only apply to telephones"); *Wiley,* 2025 WL 3654085, at *8-9 (same); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same); *Moody v. C2 Educational Systems Inc.*, 742 F.Supp.3d 1072, 1076 (C.D. Cal. 2024) (same); *In re Variety Media, LLC*, 2025 Cal. Super. LEXIS 60788, *6 (Cal. Super. Ct. Sept. 24, 2025) (same); *Scarlett v. Future US, LLC*, 2025 Cal. Super. LEXIS 56166, *13-14 (Cal. Super. Ct.

Sept. 5, 2025) ("Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register."); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ("[T]he Court cannot ignore the expansive language in the California Legislature's chosen definition [of pen register]," which is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool") *with, e.g.*, *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025) ("[T]he legislative history of the CIPA suggests that 'pen register' and 'track and trace devices' refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites"); *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 Cal. Super. LEXIS 84257, *8 (Cal. Super Ct. Dec. 10, 2025) ("CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software"); *Aviles v. Liveramp, Inc.*, 2025 Cal. Super. LEXIS 776 (Cal. Super. Ct. Jan. 28, 2025); *Licea v. Hickory Farms, LLC*, No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024); *Casillas v. Transitions Optical, Inc.*, 2024 Cal. Super. LEXIS 70523 (Cal. Super. Ct. Sept. 9, 2024).

The Court begins its analysis with the text of the statute. *See United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013). The statutory language here is broad—it encompasses any "device or process" that records or decodes dialing, routing, addressing, or signaling information. Pen. Code, § 638.5, subd. (b). The statute, by its plain language, nowhere limits the term "pen register" to telephones or telephone-like devices. By contrast, other provisions of CIPA do expressly limit application to telephones. For example, Section 632.7 of CIPA applies to "a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone." That the provision at issue here is not so explicitly limited is a "strong indication" that the telephonic limitation proposed by Defendant "misconstrues the statute." *Shah*, 2026 U.S. Dist. LEXIS 15193, at *22; *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *30 (N.D. Cal. July 14,

United States District Court
Northern District of California

2025) ("If the drafters of Section 638.50 had intended for 'pen register' to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations.").

To the extent legislative history is relevant here despite the clarity of the statutory text, *see Wells v. One2One Learning Found.*, 141 P.3d 225, 236 (Cal. 2006) ("[I]f the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction."), that history supports a broad construction.

The pen register provisions were added to CIPA as Assembly Bill 929 in 2015 to allow local and state law enforcement to obtain emergency orders for pen registers. *See* Dkt. No. 20, Ex. A (Assembly Committee on Public Safety, Apr. 7, 2015). At the time, California did not have a federally-compliant state statute authorizing the use of pen registers; the bill enabled "state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations." *Id.* In enacting AB 929, the legislature borrowed the pen register definition nearly word-for-word from the federal pen register law.

"When a statutory term is obviously transplanted from another legal source, it brings the old soil with it." *Tovar v. Zuchowski*, 982 F.3d 631, 636 (9th Cir. 2020). To understand the scope of pen registers in CIPA, the Court accordingly looks to the federal pen register law. The federal pen register law, which was first enacted in 1986, originally defined a pen register as "a device which records or decodes electronic or other impulses which identify the numbers dialed or otherwise transmitted on the telephone line to which such device is attached." Electronic Communication Privacy Act of 1986, 100 Stat. 1848. In 2001, Congress amended the definition, as follows: "a device **or process** which records or decodes ~~electronic or other impulses which identify the numbers dialed or otherwise transmitted on the telephone line to which such device is attached~~ dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted . . ." Oct. 26, 2001, P. L. 107-56, Title II, § 216(a), 115 Stat. 288 (bolding and strikethrough added). This amendment *removed* language which had limited pen registers to telephone lines and broadened their scope considerably to sweep in internet-based tracking. Since then, federal courts have routinely granted

12

pen register warrants to collect email and IP address metadata and have consistently held that these forms of pen registers are "analogous in all material respects to the telephone pen registers." *United States v. Soybel*, 13 F.4th 584, 587 (7th Cir. 2021); *accord United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (treating pen registers that reveal the to/from addresses of e-mail messages or the IP addresses of websites visited as "indistinguishable" from traditional telephonic pen registers for Fourth Amendment purposes); *see also Leopold v. United States*, 448 U.S. App. D.C. 77, 80, 964 F.3d 1121, 1124 (2020) (pen registers "tell the government such things as what number a person dialed, what address a person was emailed from, and when someone sent a text"). By directly borrowing the federal pen register definition, the California legislature imported the expansion of its scope which occurred in 2001, years before CIPA was enacted. The legislative history of the pen register provision thus supports a broad, rather than narrow, construction of the term pen register.

At least one state trial court has relied on a pending amendment to CIPA to adopt a limited construction of pen registers. *See Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 Cal. Super. LEXIS 84257, *10 (Cal. Super Ct. Dec. 10, 2025). This amendment was proposed in 2025 as SB 690, with the explicit aim to curb CIPA litigation – described by the bill's sponsor as "abusive and predatory" – by adding a "commercial purpose" exemption. *Id.* at *9-10. While the bill passed the California state senate, it stalled in the assembly and has been held over as a two-year bill to be reconsidered in 2026. *See* CalMatters, https://calmatters.digitaldemocracy.org/bills/ca_202520260sb690. This bill demonstrates that the California legislature is well aware of the current wave of cookie-tracking CIPA lawsuits. The decision to endorse or curtail this usage is one for the Legislature and the subsequent action in the Legislature provides little guidance. The Court is bound by the plain language of CIPA as it was enacted, and this language does not limit "pen register" to telephonic devices, nor does it provide a blanket exemption for businesses that track online metadata for commercial purposes.

Based on the statute's plain meaning and legislative history, the Court holds that the term pen register is not limited to telephonic devices and may encompass the internet tracking devices at issue. Defendant's motion to dismiss on this ground is **DENIED**.

13

**C. Fraud Claim**

Plaintiffs assert a claim for common law fraud. Fraud claims must satisfy the Rule 9(b) pleading standard. Rule 9(b) requires that "the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted). This typically takes the form of providing the "who, what, when, where, and how of the misconduct alleged." *Id.* at 1126. (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Plaintiffs sufficiently allege the who, what, where, and how of the alleged fraud: Defendant said in its website popup that users could disable cookies by clicking a button, but this was a lie, because when Plaintiffs clicked this button, cookies were not disabled. However, Plaintiffs' vagueness as to the timing of their website visits raises notice issues. Plaintiffs allege only that they visited the website on "one or more occasions" "in the last four years." Four years is a broad enough span of time that Defendant's website – including its popups and cookie practices – may have been materially different at different times. Without a more specific timeframe, Defendant lacks the knowledge it needs to defend itself against the claim: it cannot check its records to determine what its banners said or what its cookie practices were at the time of Plaintiffs' visit. It might be a different case if Plaintiffs alleged that they submitted personally identifying information at the time of their visit, *e.g.*, created accounts in their names. In that case, Defendant would be well-positioned to determine the timing of Plaintiff's visits through its own records. But Plaintiffs do not allege that they submitted that kind of personally identifying information. They allege only that they "browsed." Plaintiffs' allegations as pled do not satisfy Rule 9(b)'s notice with particularity standard. *See Shah*, 2026 WL 216334, at *9 (holding that allegation of a website visit at "some unspecific point in the last four years" did not satisfy the "when" element of Rule 9(b)). While there is no hard and fast rule for how specific Plaintiffs must be about the timing of their site visit or visits, to provide fair notice in this case, Plaintiff should at least provide the year of any given visit.

Defendant's motion to dismiss this claim is **GRANTED** with leave to amend.

14

United States District Court
Northern District of California

**D. Unjust Enrichment**

Plaintiffs also assert a claim for unjust enrichment. "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.,* 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (quoting *ESG. Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). A defendant who is unjustly enriched "may be required to make restitution." *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998 (Cal. 2015). "[T]he obligation arises when the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.'" *Id.* (quoting Restatement (3d), Restitution and Unjust Enrichment, § 1 cmt. b).

Here, Plaintiffs have failed to plead in a non-conclusory fashion an essential element of an unjust enrichment claim – that Defendant was enriched. Plaintiffs allege that Defendant enabled third-parties to collect data from visitors to Defendant's websites and that these third-parties used this data to "create consumer profiles," and "perform targeted advertising and marketing analytics." Compl. ¶ 4. But this indicates, at most, that third-parties benefited from the data collection, not that Defendant did, and it does not describe what, if anything, Defendant obtained in exchange. Without non-conclusory allegations of the benefit Defendant received from placing third-party cookies, Plaintiffs cannot state a cause of action for unjust enrichment.

Defendant's motion to dismiss this claim is **GRANTED** with leave to amend.

15

United States District Court
Northern District of California

## IV.    CONCLUSION

Defendant's Motion to Dismiss is **GRANTED** as to Counts (I) Invasion of Privacy, (II) Intrusion Upon Seclusion, (III) Violation of CIPA Section 631, (V) Fraud, and (VI) Unjust Enrichment.  The motion is **DENIED** as to Count (IV) Violation of CIPA Section 638.51. Dismissal is with leave to amend.  Any amended complaint shall be filed within 30 days.


**IT IS SO ORDERED**.


Dated:  5/21/2026

_____
EDWARD M. CHEN
United States District Judge

16