**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

JOSE ORTIZ and JAVIER HERNANDEZ, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

FORIS DAX, INC.

Defendant.

Case No. 3:25-cv-08950-EMC

**PLAINTIFFS' OPPOSITION TO DEFENDANT FORIS DAX, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Hon. Edward M. Chen

Date: October 29, 2026
Time: 1:30 PM
Location: San Francisco, Crtrm 5, 7th Fl.

Complaint Filed: October 17, 2025

**TABLE OF CONTENTS**


I. INTRODUCTION ....... 1

II. BACKGROUND ....... 2

- A. Plaintiffs Allege That Defendant Ignored Their Cookie Preferences and Allowed Third-Party Tracking Despite Representing That It Would Not. ....... 2
- B. The Court Identified Three Discrete Pleading Deficiencies and Provided Clear Instructions for Amendment. ....... 3
- C. Plaintiffs' FAC Precisely Follows the Court's Roadmap for Amendment. ....... 3

III. ARGUMENT ....... 6

- A. Plaintiffs Adequately Plead Invasion of Privacy and Intrusion Upon Seclusion ....... 6
- B. Plaintiffs Adequately Plead their Wiretapping Claims under CIPA § 631(a). ....... 9
  - 1. Plaintiffs allege that third parties intercepted the contents of communications. ....... 10
  - 2. Plaintiffs allege that the third parties attempted to learn the contents of communications while in transit. ....... 11
- C. Plaintiffs Adequately Plead their Pen Register Claims under CIPA § 638.51. ....... 14
- D. Plaintiffs Adequately Plead their Claims for Fraud, Deceit, and Misrepresentation. ....... 14
- E. Plaintiffs Adequately Plead their Claims for Unjust Enrichment. ....... 16
- F. Plaintiffs Request Leave to Amend If Necessary. ....... 17

IV. CONCLUSION ....... 18

# TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Grp.*,
No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ...................... 17

*Bartling v. Apple Inc. (In re Apple Processor Litigation)*,
No. 22-16164, 2023 U.S. App. LEXIS 24257 (9th Cir. Sept. 13, 2023) ...................................... 17

*Blake v. Dierdorff*,
856 F.2d 1365 (9th Cir. 1988) ....................................................................................................... 15

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ..................................................................................... 11, 15

*Byars v. Tire*,
No. 5:22-cv-01358-SSS-KKx, 654 F. Supp. 3d 1020, 2023 U.S. Dist. LEXIS 22337
(C.D. Cal. Feb. 3, 2023) ................................................................................................................... 9

*D'Angelo v. Penny Opco, LLC*,
No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal. Oct. 24, 2023) ............... 13

*Davis v. Facebook, Inc. ("In re Facebook, Inc. Internet Tracking Litig.")*,
956 F.3d 589 (9th Cir. 2020) ........................................................................................... 6, 7, 8, 16

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ......................................................................................................... 17

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952 (N.D. Cal. Oct. 17, 2025) ................. 12, 13

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ...................................................................................... 12, 14

*Esparza v. UAG Escondido A1 Inc.*,
No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ................. 12

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) ............. 8, 15

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025 ......................... 8

*Guzman v. Polaris Industries Inc.*,
49 F.4th 1308 (9th Cir. 2022) ....................................................................................................... 17

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018) ......................................................................................................... 12

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781
(C.D. Cal. July 19, 2024) ............................................................................................................... 11

*Hernandez* z v. *Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ..................................................................................................................... 6

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) ................................................................................................................. 7

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................................................................... 11

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................................................. 8

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014)........................................................................................ 10

*Jackson v. Linkedin Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) ............................................................................ 11

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ...................................................................... 1, 9, 10

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022)......................................... 9

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........................................................................... 9, 16

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)........................................................................................ 14

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........................................................................... 13

*Mitchell v. Sonesta Int'l Hotels Corp.*,
No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024)............... 12

*Popa v. Microsoft Corporation*,
No. 24-14, 2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025) ............................................ 8

*R.C. v. Sussex Publishers, LLC*,
No. 24-cv-02609-JSC, 2025 U.S. Dist. LEXIS 59491 (N.D. Cal. Mar. 28, 2025)................. 13, 14

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ................................................................................................. 11, 12

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024)................................................................................ 9

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021)........................... 8

*Rodriguez v. Google*,
No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024).............................. 15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986)........................................................................................ 17

*Shah v. Capital One Fin. Corp.*,
No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025)........................ 17

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021).................... 9

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)......................................................................................... 17

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024)......... 9, 11, 12, 13

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-07465 (CRB), 2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) .................... 13

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........................................................... 11, 12, 13, 14

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)........................................................................................ 14

**Statutes**

Cal. Penal Code § 631 .......... 3
Cal. Penal Code § 631(a) .......... 9, 12
Cal. Penal Code § 638.51 .......... 3, 14

**Rules**

Fed. R. Civ. P. 9(b) .......... 15, 16

## I. INTRODUCTION

In its prior Order, the Court held that Plaintiffs adequately pleaded their pen register claim and granted leave to amend the remaining five claims. In doing so, the Court identified three discrete pleading deficiencies and provided corresponding guidance for curing them. Plaintiffs precisely followed the Court's guidance.

First, with respect to Plaintiffs' invasion of privacy and intrusion upon seclusion claims, the Court requested more detailed allegations regarding Plaintiffs' interactions with Defendant's Website, such that it could evaluate the nature of the activities and communications Defendant allegedly tracked. The FAC includes those allegations. Plaintiffs allege that they repeatedly visited Defendant's Website to research cryptocurrency assets, conducted searches, reviewed specific cryptocurrency pages, and interacted with Defendant's pricing tools and other Website features. ECF No. 34 ("FAC") ¶¶ 106, 116. These allegations show that, despite its express promise not to do so, Defendant then permitted third parties to track Plaintiffs' browsing, including information related to their financial interests, financial needs, and investment-related research—information that consumers reasonably consider highly private. Every court to consider this scenario—i.e., where a website promises consumers that they can "disable all" tracking and browse privately, but immediately violates that promise—is sufficient to plead both a reasonable expectation of privacy and a highly offensive intrusion.

Similarly, for Plaintiffs' wiretapping claim, the Court requested additional allegations regarding Plaintiffs' Website activity to determine whether Defendant intercepted the "contents" of Plaintiffs' communications, rather than merely record information. The FAC now satisfies that requirement. Plaintiffs allege, inter alia, that Defendant intercepted the webpage URLs they visited and the searches they performed. This information constitutes the contents of Plaintiffs' communications, not merely record information, because it reveals the substance and meaning of Plaintiffs' interactions with Defendant's Website. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023).

Second, with respect to Plaintiffs' fraud claim, the Court held that Plaintiffs should plead the approximate dates of their Website visits with greater specificity. The FAC now alleges the approximate month(s) and specific year(s) of Plaintiffs' visits to the Website.

Finally, the Court held that Plaintiffs' unjust enrichment claim should include allegations showing that Defendant, not merely the third-parties, received a benefit from the challenged conduct. The FAC alleges that Defendant received valuable advertising, analytics, customer-targeting, and other marketing benefits through enabling third-party tracking technologies. In short, Plaintiffs did exactly what the Court directed.

Defendant nevertheless asks the Court to dismiss the FAC by largely repackaging arguments the Court has already considered. Defendant also attempts to invent pleading requirements that appear nowhere in the Court's prior Order. This renewed motion is not an opportunity to relitigate issues the Court has already resolved or to require allegations beyond those the Court identified in granting leave to amend.

Because the FAC supplies the additional factual allegations contemplated by the Court's prior Order, Defendant's renewed motion should be denied.

## II. BACKGROUND

### A. Plaintiffs Allege That Defendant Ignored Their Cookie Preferences and Allowed Third-Party Tracking Despite Representing That It Would Not.

When consumers visit crypto.com (the "Website"), Defendant displays a popup cookie consent banner, in which Defendant disclosed it "use[s] cookies on our website to . . . conduct advertising and analytics," and gave Website users the option to either "Customize Settings," "Accept All," or "Disable All" such analytical, tracking and advertising cookies before continuing to browse Defendant's website. FAC ¶¶ 1, 37, 117. Despite this clear promise, Defendant nevertheless enabled numerous third parties—including, without limitation, Meta (Facebook), Google, X (Twitter), and Snapchat (the "Third Parties")—to use cookies to collect and aggregate those users' personal information, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and more. *Id.* ¶¶ 2–4. The Third Parties then instantly

analyze this ill-gotten personal information to create consumer profiles, target and personalize advertising, and evaluate the effectiveness of advertising. *Id.* ¶¶ 4, 32, 51, 61, 64, 78. This is exactly what website visitors like Plaintiffs Hernandez and Ortiz (who both "Disabled All" cookies) sought to avoid.

Based on these allegations, Plaintiffs assert six causes of action: (1) invasion of privacy, (2) intrusion upon seclusion, (3) violation of California's Invasion of Privacy Act ("CIPA") wiretapping provisions (Cal. Penal Code § 631), (4) violation of CIPA's prohibition on the use of unlawful pen registers (Cal. Penal Code § 638.51), (5) fraud, and (6) unjust enrichment.

### B. The Court Identified Three Discrete Pleading Deficiencies and Provided Clear Instructions for Amendment.

On May 21, 2026, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiffs' complaint. The Court denied Defendant's motion as to Plaintiffs' pen register claims, holding that the statute is "not limited to telephonic devices and may encompass the internet tracking technologies at issue." ECF No. 31 ("Order") at 13.

As to Plaintiffs' remaining five causes of action, the Court granted leave to amend to cure the discrete pleading deficiencies it identified. Specifically, the Court directed Plaintiffs to: (1) "clearly specify the actions Plaintiffs themselves took on the Crypto.com website that they allege to have been tracked" to support their common law privacy and CIPA § 631 claims (*id.* at 8); (2) identify the approximate timing of their website visits to support their fraud claims (*id.* at 14); and (3) allege facts showing the benefit Defendant received from the challenged data collection to support their unjust enrichment claim (*id.* at 15).

### C. Plaintiffs' FAC Precisely Follows the Court's Roadmap for Amendment.

In response to the Court's Order, Plaintiffs filed the First Amended Complaint ("FAC"), which included additional factual allegations concerning the issues identified by the Court, which are summarized in the table below:

| Topic | FAC Allegations |
|---|---|
| **Plaintiffs' Actions on Crypto.com** | 106. Specifically, on several occasions, Plaintiff Ortiz visited the Website to obtain information regarding the rates, prices, and market performance of cryptocurrencies in which he was interested. To conduct this research, |

| | |
|---|---|
| | Plaintiff Ortiz used the Website's navigation menu, selected the "Markets" section, and reviewed information regarding numerous cryptocurrencies. Plaintiff Ortiz researched specific cryptocurrencies, including Bitcoin, Ethereum, XRP, and Bitcoin Cash, by clicking on asset-specific pages and, on other occasions, by using the Website's search functionality to search for terms such as "BTC," "ETH," "XRP," and "BCH." Plaintiff Ortiz reviewed historical and current pricing information and interacted with the Website's pricing charts and market-data tools. As alleged supra, the Third Parties' tracking technologies were designed to collect information regarding Plaintiff Ortiz's use of the Website, including the pages he viewed and the content with which he engaged, thereby revealing information regarding his financial interests, financial needs, and investment-related research. For example, each click corresponded to a URL that was transmitted to Third Parties. The URL revealed the contents of Plaintiff's communication because the URL includes the title of the page Plaintiff viewed on Defendant's website. *See*, e.g., supra ¶¶ 68, 70. This information was also used to add to and/or create a profile about Plaintiff that would, on information and belief, allow for increased revenue for Defendant.<br><br>116. Specifically, Plaintiff Hernandez used the Website's navigation menus to research Defendant's cryptocurrency trading services, financial products, and related offerings. Plaintiff Hernandez reviewed information on various Website pages regarding Defendant's credit-card program and cryptocurrency trading platform, including evaluating whether he could transfer balances from other platforms. Plaintiff Hernandez also viewed historical and current pricing information concerning Ethereum and visited the Website's Ethereum-specific asset page. As alleged supra, the Third Parties' tracking technologies were designed to collect information regarding Plaintiff Hernandez's use of the Website, including the pages he viewed and the content with which he engaged, thereby revealing information regarding his financial interests, financial needs, and investment-related research. For example, each click corresponded to a URL that was transmitted to Third Parties. The URL revealed the contents of Plaintiff's communication because the URL includes the title of the page Plaintiff viewed on Defendant's website. *See*, e.g., supra ¶¶ 68, 70. This information was also used to add to and/or create a profile about Plaintiff that would, on information and belief, allow for increased revenue for Defendant. |
| Timing of Plaintiffs' Visits | 104. Plaintiff Ortiz visited the Website to seek information about Defendant's cryptocurrency exchange services, while located in California, on multiple occasions during the four years preceding the commencement of this action, including visits in 2023, 2024, and on or around May 2025.<br><br>114. Plaintiff Hernandez visited the Website to seek information about Defendant's cryptocurrency exchange services, while located in |

| | |
|---|---|
| | California, on multiple occasions during the four years preceding the filing of this action, including in 2023. |
| Benefit Received by Defendant | 203. Defendant integrated the Third Parties' tracking technologies into the Website because doing so provided Defendant with valuable advertising, analytics, attribution, and customer-targeting services. Defendant permitted the Third Parties to collect information regarding Plaintiffs' and Class members' interests, browsing behavior, engagement with Website content, interactions with cryptocurrency products and services. Although the Third Parties collected this information, they did so, in part, for Defendant's benefit and to provide services that assisted Defendant in marketing and promoting its products and services.<br><br>204. In exchange for permitting the Third Parties to collect, analyze, and exploit Plaintiffs' and Class members' Private Communications, Defendant received the benefit of enhanced advertising, analytics, attribution, and customer-targeting services that enabled Defendant to identify, solicit, target, and convert consumers into customers. Defendant used the resulting audience insights to promote cryptocurrency-related products and services and drive account registrations and transactions on its platform.<br><br>205. The enhanced customer-targeting services constituted valuable commercial benefits that enabled Defendant to more effectively market its products and services, acquire customers, and increase revenue. Accordingly, Defendant received and retained a direct economic benefit from the collection, disclosure, and exploitation of Plaintiffs' and Class members' Private Communications. |
| Continued Tracking[1] | 111/121. The Third Party tracking technologies assigned persistent identifiers that enabled Third Parties to recognize [Plaintiffs] across multiple visits to the Website, link those visits together over time, associate those visits with [Plaintiffs'] activities on other websites and applications, and create [] comprehensive user profile[s] that reflected [Plaintiffs'] behavior, preferences, and demographics. Defendant deployed these technologies precisely because they intended to enable Third Parties to continue recognizing, profiling, and targeting [Plaintiffs] after [they]v left the Website and, in turn, provided Defendant with valuable customer-targeting services derived from that continued tracking. |

[1] Although the Court did not require Plaintiffs to allege continued tracking, it recognized that such allegations are probative of whether an alleged intrusion was highly offensive.

## III. ARGUMENT

### A. Plaintiffs Adequately Plead Invasion of Privacy and Intrusion Upon Seclusion.

To plead invasion of privacy and intrusion upon seclusion, Plaintiffs demonstrate "(1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be 'highly offensive.'"[2] *Davis v. Facebook, Inc. ("In re Facebook, Inc. Internet Tracking Litig.")*, 956 F.3d 589, 606 (9th Cir. 2020); *see also Hernandez* v. *Hillsides, Inc*., 47 Cal. 4th 272, 285–97 (2009). In its prior Order, the Court held that Plaintiffs adequately alleged the first element by pleading "a reasonable expectation that Defendant's website would stop collecting their data via third-party cookies after they clicked 'disable all' cookies." ECF No. 31 ("Order") at 5. The Court identified only one pleading deficiency with respect to the second element. Because the original Complaint did not describe how Plaintiffs interacted with Crypto.com, the Court concluded that it could not evaluate the degree of the alleged intrusion and directed Plaintiffs to "specify the actions Plaintiffs themselves took on the Crypto.com website that they allege to have been tracked." *Id.* at 8.

Plaintiffs have done exactly that. The FAC now alleges with specificity the actions each Plaintiff took while using Crypto.com. Plaintiffs did not simply visit the Website and then immediately log off, as hypothetically discussed at the hearing. Far from it. Ortiz alleges that he visited the Website to obtain information regarding the "rates, prices, and market performance of cryptocurrencies," "used the Website's navigation menu," searched for terms such as "'BTC,' 'ETH,' 'XRP,' and 'BCH'" and "interacted with the Website's pricing charts and market-data tools." *Id.* ¶ 106. Hernandez similarly alleges that he "used the Website's navigation menus to research Defendant's cryptocurrency trading services, financial products, and related offerings," evaluated Defendant's credit-card program and cryptocurrency trading platform, and viewed Ethereum pricing and asset-specific information. *Id.* ¶ 116. Plaintiffs further allege that these page views and interactions were the tracked, contrary to Defendant's representations, "revealing information regarding [their] financial interests, financial needs, and investment-related research." *Id.* ¶¶ 106, 116.

---

[2] Although Defendant purports to preserve its disagreement for appeal, Defendant does not challenge the Court's prior holding that Plaintiffs adequately alleged a reasonable expectation of privacy.

Taken as true, these allegations establish a highly offensive intrusion. Unlike routine commercial browsing, Plaintiffs allege that Defendant tracked their research into specific cryptocurrency assets, investment strategies, and financial products. That information reveals far more than a consumer's interest in a particular website or a momentary peek. It discloses the assets a consumer owns or is considering purchasing, the investments they are evaluating, and their financial objectives, interests and needs. Hernandez's research into Defendant's credit-card offerings likewise reveals information about his financial circumstances and borrowing interests. Importantly, Defendant allowed third parties to collect this information, for both Defendant's benefit, after expressly promising not to. Viewed in light of the nature of the information collected and the manner in which it was obtained, the FAC plausibly alleges an intrusion a reasonable jury could find highly offensive.

The FAC further alleges that the intrusion was not limited to a single Website visit. As the Court recognized, both deception and ongoing tracking bear on whether an intrusion is "highly offensive." Order at 7; *see also In re Facebook*, *Inc. Internet Tracking Litig.*, 956 F.3d at 606 ("Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive.) (citation omitted). The FAC specifically alleges that Defendant's third-party tracking technologies "assigned persistent identifiers" that enabled third parties to recognize Plaintiffs across multiple visits and link those visits together over time. FAC ¶¶ 111, 121. Thus, although Defendant did not continue transmitting additional information after a particular browsing session ended, it enabled third parties to link Plaintiffs' Website activity to subsequent browsing activity. The alleged intrusion accordingly did not end when Plaintiffs left Defendant's Website. Rather, Defendant's alleged conduct contributed to an ongoing system of cross-site surveillance, not merely the collection of information during a single Website visit.

In any event, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994); *see also Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *26 (N.D. Cal. July

14, 2025) (finding that it was premature to dismiss substantially similar claims based on a determination of how offensive or serious the privacy intrusion is); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *22 (N.D. Cal. Aug. 29, 2025) (agreeing with *Motorola Mobility LLC*); *In re Facebook*, *Inc. Internet Tracking Litig.*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive" inquiry before concluding it "cannot be resolved at the pleading stage"); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28 (N.D. Cal. May 21, 2021) ("[n]or is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to *Facebook*"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("[u]nder California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is"). Here, the jury must consider all of the circumstances around Defendant's conduct, including the type of information, the fact that the tracking was ongoing, and the fact that Defendant obtained the information through deception.

Defendant quotes *Popa v. Microsoft Corporation*, 2025 U.S. App. LEXIS 21946, at *24–25 (9th Cir. Aug. 26, 2025) suggesting that it rejected privacy claims arising out of much more significant information than Plaintiffs allege was disclosed here. Not so. In *Popa*, the Plaintiff "challenged user-tracking practices employed by a website that she visited. She did not challenge the storage and/or transmission of cookies; she challenged the use of something called 'session-replay technology,' which, put simply, 'allows a business to capture and reproduce customers' interactions with its website.'" *See Haleon*, 2025 U.S. Dist. LEXIS 169503, at *18 (*distinguishing Popa*, 2025 U.S. App. LEXIS 21946, at *1.). Most salient to the reasonable expectation of privacy, however; "*Popa* never purported to have expressly 'reject[ed]' the tracking technology at issue[,]" unlike the allegations in *Haleon* and here. *Id.* Beyond the tracking technology at issue, that is an independent basis for distinguishing *Popa* and its ilk.

Nor can Defendant dismiss its conduct as merely "routine commercial behavior" because there is nothing routine about lying to consumers who click to "Disable All" cookies, only to track them and profit off them via those cookies nevertheless. District courts uniformly recognize this mass

*accumulation* of data is highly offensive, regardless of the specific type and quality. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023); *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. July 28, 2021) ("volume of the collected information is also important" in determining whether "the intrusion was highly offensive."). Plaintiffs further allege that their data was collected to "create[] consumer profile[s] containing detailed information about a consumer's behavior." *See* FAC ¶¶ 4, 35. Plaintiffs expressly rejected Defendant's third-party cookies that compile that information. *Id*. Such conduct violates not only Defendant's own promises, but also social norms. *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) ("defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive). Given these facts, Defendant's conduct, as alleged, was highly offensive, and thus violated Plaintiffs' privacy interests guaranteed by the California Constitution.

**B. Plaintiffs Adequately Plead their Wiretapping Claims under CIPA § 631(a).**

The fourth clause of section 631(a) imposes liability on persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024) (cleaned up); *see also* FAC ¶¶ 16, 114–133, 178–179. This provision applies to internet communications. *Id.*; *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022). To plead a section 631 claim, a plaintiff need not "specifically allege the exact contents" of the intercepted communications; the complaint need only contain sufficient factual allegations for the court to determine that more than mere record information is implicated. *James*, 701 F. Supp. 3d at 956 (quoting *Byars v. Tire*, No. 5:22-cv-01358-SSS-KKx, 654 F. Supp. 3d 1020, 2023 U.S. Dist. LEXIS 22337, at *11–12 (C.D. Cal. Feb. 3, 2023)).

Defendant argues that Plaintiffs fail to allege (1) interception of the contents of communications and (2) interception while those communications were in transit. Neither argument has merit.

### 1. Plaintiffs allege that third parties intercepted the contents of communications.

In its prior Order, the Court identified a single pleading deficiency relevant to Plaintiffs' wiretap claim. Although Plaintiffs alleged that Defendant intercepted the contents of their communications, the Complaint did not describe "the actions they personally took on the Crypto.com website after clicking the 'disable cookies' button," making it difficult to determine whether the alleged interception involved communication "contents" rather than mere record information. Order at 10.

The FAC completely cures that deficiency. Plaintiffs now identify the specific search terms they entered, the cryptocurrency asset pages they viewed, and the menus and pricing tools with which they interacted. FAC ¶¶ 106, 116. They further allege that Defendant's tracking technologies collected "the pages [they] viewed and the content with which [they] engaged," that each click generated a URL transmitted to Third Parties, which "revealed the contents of Plaintiff's communication because the URL includes the title of the page Plaintiff viewed on Defendant's website." *Id.* Plaintiffs also allege that Defendant deployed third-party code that enabled those parties to "eavesdrop upon, record, extract data from, and analyze conversations," and Plaintiffs include screenshots depicting those transmissions. *Id.* ¶¶ 42–43, 81, 174–175. These allegations plausibly establish interception of the contents of Plaintiffs' communications under section 631.

Defendant argues that Plaintiffs' allegations are insufficient because URLs constitute mere record information, relying on *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1107 (9th Cir. 2014).[3] That argument ignores this Court's holding that "[i]nformation about webpages viewed and search terms conducted are examples of contents, not record, communications." Order at 9 (citing *James*, 701 F. Supp. 3d at 956). Indeed, in *James*, this Court rejected Defendant's reading of *Zynga*, explaining that the Ninth Circuit recognized that record information "can become content if the record is the subject of a communication." 701 F. Supp. 3d at 956 (quoting *In re Zynga Privacy Litig.*, 750 F.3d at 1107). Because Plaintiffs allege that the intercepted URLs revealed the specific webpages they viewed,

[3] This argument also entirely ignores that Ortiz alleges search terms that he entered into the Website including "BTC," "ETH," "XRP," and "BCH," which were also similarly transmitted to the Third Parties. FAC ¶ 106.

including specific crypto asset pages and pages regarding Defendant's credit card offerings, the FAC plausibly alleges interception of the contents of their communications, not merely record information.

Nor is Defendant's position consistent with the overwhelming authority recognizing that search terms, webpages viewed, and URLs revealing those communications constitute communication "contents" under section 631. *See, e.g.*, *Heerde v. Learfield Commc'ns, LLC*, 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also In re Zynga Priv. Litig.*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *11 (URLs which reveal queries reflect "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" constitute content); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content").

**2. Plaintiffs allege that the third parties attempted to learn the contents of communications while in transit.**

Defendant next argues that Plaintiffs do not allege that third parties "attempted to ***learn***" their communications "while" the communication was in transit. Mot. at 10–11. This is neither true, nor necessary for pleading a CIPA claim. Even if required, Plaintiffs plausibly allege that the communications were intercepted "contemporaneous[ly] with the sending or receipt of the message," *see Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Specifically, the FAC provides that "the third-party cookies . . . surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant." *Id.* ¶ 31. Plaintiffs further include screenshots showing network traffic that occurs *after* a user rejects these cookies using the Website's cookie banner and proceeds to browse the Website. *Id.* ¶¶ 42–43.

Allegations describing the real-time transmission of communications are sufficient to survive a motion to dismiss.[4] *See, e.g.*, *Jackson v. Linkedin Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024).

[4] Indeed, some federal courts question whether it is necessary for Plaintiffs to plead that the interception happened "while" the transmission occurred at all, given the California Supreme Court's keystone case *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985): "Section 631(a) relates not just to messages,

Not only have Plaintiffs explained how third-party cookies operate, they identify specific examples of transmissions occurring in real time. FAC ¶¶ 3, 31, 41, 51, 68, 81, 95.[5] Further, courts also find simultaneous duplication and interception of communications sufficient to meet CIPA's "in transit" element: "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Put differently, "the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17. Plaintiffs have alleged that "the interception [] occur[s] contemporaneous[ly] with the sending or receipt of the message," through alleging "real time" analysis of Plaintiffs' information. *Valenzuela*, 674 F. Supp. 3d at 759; *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."). Thus, Plaintiffs have alleged that their communications were tapped "in transit" sufficient to sustain their CIPA claims. *See, e.g., St. Aubin*, U.S. Dist. LEXIS 179067, at *17.

Defendant instead urges this Court to apply holdings born from disparate facts and different procedural postures; namely, *Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952, at *1 (N.D. Cal. Oct. 17, 2025) and *Torres v. Prudential Fin., Inc.*, 2025 U.S. Dist.

---

reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state." *Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. Oct. 4, 2024) (citing Cal. Penal Code § 631(a) and *Ribas*, 38 Cal. 3d at 359). The California Supreme Court's decision in *Ribas* is instructive. In *Ribas*, "the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California." *Mitchell*, 2024 U.S. Dist. LEXIS 186701, at *25 ("There is no indication in *Ribas* that the word 'while' was a key focus of the California Supreme Court's analysis.").

[5] Defendant similarly invites this Court to draw adverse inferences against Plaintiffs, and to hold that Plaintiffs' allegations in ¶¶ 45, 51, 55, 59, and 79 of the FAC "suggest attempts to learn the 'contents' *after* the alleged interception." Mot. at 18. But Defendant provides no support for why this would be a proper suggestion. It is also mistaken, as Plaintiffs specifically plead otherwise. FAC ¶¶ 49, 166, 3, 31, 41. Regardless, "[t]his Court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)"). *Hawkins v. Kroger Co.*, 906 F.3d 763, 767 n.2 (9th Cir. 2018).

LEXIS 73736 (N.D. Cal. Apr. 17, 2025). To begin with, both *Eating Recovery Ctr.* and *Torres* were decided at ***summary judgment***, after extensive discovery, and not on the pleadings. *See, e.g.*, *Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS 207952, at *8 (examining whether a third party "attempt[ed] to learn this information while it was 'in transit'? If the answer is *indisputably* 'yes' . . . [plaintiff] is entitled to *summary judgment*.") (emphasis supplied). But there is neither reason nor authority to require Plaintiffs to prove as such at the pleadings. Indeed, "a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny Opco, LLC*, No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054, at *8 (S.D. Cal. Oct. 24, 2023). And in *Eating Recovery Center LLC*—even *after* extensive discovery where "corporate representative[s] testified" as to the specific steps taken in reading and processing data—the Court made its determination "***without*** a great deal of confidence that [the third party's] conduct did not satisfy the 'in transit' requirement as a matter of law." *See Eating Recovery Center LLC*, 2025 U.S. Dist. LEXIS 207952, at *8 (emphasis added).

Moreover, Defendant's only appropriately-postured case, *R.C. v. Sussex Publishers, LLC*, 2025 U.S. Dist. LEXIS 59491, at *22 (N.D. Cal. Mar. 28, 2025) is a doctrinal outlier that did not substantiate its holding. Despite properly observing that *Valenzuela* stands for the proposition that the eavesdropping must occur "while the communication is in transit," the court reached its conclusion in a vacuum. *See* 674 F. Supp. 3d at 759. Indeed, the *R.C.* court's only support for its stated holding that a plaintiff must allege the third party *read*—as opposed to *intercepted*—the contents of a message in transit is *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023). But *Licea* does not support that distinction: there, the court held that the plaintiff "d[id] not specifically allege that [his] messages were *intercepted* while in transit[;]" it did not read CIPA to require Plaintiff to plead that his messages were *read* in transit as well. *Id.* Regardless, neither *R.C.* nor *Licea* distinguish the clear rule that "the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17. And neither *R.C.*, nor *Licea* propose a *different* rule such that this Court must reach a different conclusion here. Plaintiffs have alleged interception in "real time" and supported with detailed allegations, which is more than sufficient. *See*

*Valenzuela*, 674 F. Supp. 3d at 759; *Tenet Healthcare*, 789 F. Supp. 3d at 838. And even if *R.C.* were properly decided, it is still distinct: there, the plaintiff alleged the information was "sent to Google for processing," without sufficiently specifying when or how that transmission occurred. *See R.C.*, 2025 U.S. Dist. LEXIS 59491, at *22. Here, however, Plaintiffs have alleged that the Third Parties "instantaneously collect and analyze" user data "in real time," and supported such allegations with specific screenshots of the HTTP network traffic to demonstrate exactly how and when the transmission occurred. FAC ¶¶ 31, 41, 42–43, 51, 68, 81, 93.

**C. Plaintiffs Adequately Plead their Pen Register Claims under CIPA § 638.51.**

Plaintiffs allege that Defendant's third-party cookies constitute unlawful "pen registers" in violation of Section 638.51 of CIPA. In its prior motion to dismiss, Defendant argued that CIPA does not apply to internet tracking technology. After considering the parties' briefing and conducting a thorough analysis of the statutory text and legislative history, however, the Court rejected that argument, holding that "[b]ased on the statute's plain meaning and legislative history, the Court holds that the term pen register is not limited to telephonic devices and may encompass the internet tracking devices at issue. Order at 13. Accordingly, the Court concluded that Plaintiffs had adequately pleaded a claim under Section 638.51. *Id.* Although Defendant notes its disagreement with the Court's ruling, it does not meaningfully challenge it in the present motion and reserves its rights with respect to its arguments. *See* Mot. at 19–20.

**D. Plaintiffs Adequately Plead their Claims for Fraud, Deceit, and Misrepresentation.**

As this Court previously held, "[f]raud claims must satisfy the Rule 9(b) pleading standard." Order at 14. This requires Plaintiffs to allege the "who, what, when, where, and how of the misconduct alleged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The Court already ruled that Plaintiffs "sufficiently allege the who, what, where, and how" of their fraud claims by pleading that "Defendant said in its Website popup that users could disable cookies by clicking a button, but this was a lie, because when Plaintiffs clicked this button, cookies were not disabled." Order at 14. However, the Court held that the Complaint failed to plead the "when" with sufficient particularity and held that "Plaintiffs should

at least provide *the year of any given visit*" to provide sufficient notice of their claims. Order at 14 (emphasis supplied.)

Plaintiffs have amended their complaint to do exactly what the Court directed. The FAC now alleges the year of Plaintiffs' visits. Plaintiff Ortiz alleges that he visited Defendant's website on "multiple occasions" in "2023, 2024, and on or around May 2025" (FAC ¶ 104), while Plaintiff Hernandez alleges that he visited the website on "multiple occasions . . . in 2023" (*id.* ¶ 114). These allegations afford Defendant sufficient notice of Plaintiffs' claims. Plaintiffs have therefore cured the sole pleading deficiency identified by the Court with respect to their fraud claim.

Defendant nevertheless largely reprises the arguments advanced in its original motion to dismiss, even though the Court identified only a single pleading deficiency, which Plaintiffs cured. Defendant first argues that Plaintiffs have failed to allege that Defendant "made a knowingly false statement or intentionally defrauded Plaintiffs." Mot. at 20. That contention is unsupported by fact or law. In a claim for fraud, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). When essential information is within the other parties' knowledge, Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988). The FAC alleges that Defendant acted with knowledge. FAC ¶¶ 34–35, 42, 217. Despite Defendant's assertion that Plaintiffs must plead that it had "tools at its disposal" to uncover its own Website's failure, there is no such requirement. The existing allegations are sufficient. *See Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 ("Haleon argues that Gabrielli has failed to show intent. But because intent may be alleged generally, his allegations are sufficient for now." (*citing* Fed. R. Civ. P. 9(b)).

Defendant likewise renews its contention that Plaintiffs "fail to allege any damages resulting from the alleged fraud." Mot. at 20. But this ignores Plaintiffs' allegations regarding invasion of protected interests, misappropriation of their information, and that their information has objective value. *See, e.g.*, FAC ¶¶ 69–73, 131, 150–51, 184. These are recognized, cognizable damages. Plaintiffs "have a stake in the value of their misappropriated data." *Google LLC*, 685 F. Supp. 3d at 940 (denying summary judgment on a claim involving misappropriated data); *see also Rodriguez v. Google*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *35–36 (N.D. Cal. Jan. 3, 2024) (viable

damages model can be based on "[u]ser's willingness to pay to prevent data collection"). This is precisely what Plaintiffs have claimed here. FAC ¶¶ 101–102, 190.

Both of Defendant's arguments are unpersuasive. In any event, the Court already considered these arguments and found that the only deficiency in Plaintiffs' fraud pleading was the lack of specificity regarding the year when Plaintiffs visited the Website. Plaintiffs have cured that deficiency. Thus, Plaintiffs adequately plead their fraud, deceit and misrepresentation claims under Rule 9(b).

### E. Plaintiffs Adequately Plead their Claims for Unjust Enrichment.

To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. The Court previously held only that Plaintiffs had not adequately alleged that "Defendant was enriched" by its conduct. Order at 15. The FAC cures that discrete pleading deficiency by alleging that Defendant deployed the Third Parties' tracking technologies to "receive[] the benefit of enhanced advertising, analytics, attribution, and customer-targeting services that enabled [it] to identify, solicit, target, and convert consumers into customers." FAC ¶¶ 204. Further, Plaintiffs allege that "[t]he enhanced customer-targeting services constituted valuable commercial benefits that enabled Defendant to more effectively market its products and services." *Id.* ¶ 205. These allegations plausibly allege that Defendant derived a concrete economic benefit from the unauthorized collection and exploitation of Plaintiffs' data, thereby curing the pleading deficiency identified in the Court's prior order.

Despite Plaintiffs' addition of allegations that directly align with the Court's guidance, Defendant argues that Plaintiffs' allegations are deficient. It argues that Plaintiffs have not alleged that the benefit was retained at Plaintiffs' expense. However, as the Ninth Circuit recognized in *In re Facebook, Inc. Internet Tracking Litig.*, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." 956 F.3d at 596 (citation omitted). "In other words, California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *Id.* ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" where they "allege that their browsing histories carry financial value").

"These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (same).

Defendant also incorrectly suggests that Plaintiffs must plead that it knowingly or intentionally sought to obtain an unjust benefit in order to establish that its retention of that benefit was unjust. But Defendant cites no authority imposing such a requirement. Rather, as the Court correctly held, an unjust enrichment claim requires only that Defendant received and retained a benefit under circumstances making it inequitable to retain that benefit without restitution.

Finally, contrary to Defendant's assertion, Plaintiffs properly plead unjust enrichment in the alternative. FAC ¶ 208. Defendant relies on *Bartling v. Apple Inc. (In re Apple Processor Litigation)*, No. 22-16164, 2023 U.S. App. LEXIS 24257, at *5 (9th Cir. Sept. 13, 2023), but that case addressed overlapping restitution claims under the CLRA and UCL, not a claim for unjust enrichment. There, the Ninth Circuit held that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), "applies to equitable UCL claims when there is a viable CLRA damages claim." *Id.* (quoting *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022)). That reasoning rests on the substantial overlap between CLRA and UCL fraud claims, which have similar pleading standards. Unjust enrichment, by contrast, rests on a different equitable theory grounded in quasi-contract principles. Accordingly, *In re Apple Processor Litigation* is inapposite and Plaintiffs are entitled to plead unjust enrichment in the alternative at this stage of the litigation.

**F. Plaintiffs Request Leave to Amend If Necessary.**

"[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend is only properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

///

**IV. CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be denied in full.

Dated: August 3, 2026

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*