Kevin P. Simpson (SBN: 344644)
Kevin.Simpson@winstontaylor.com
**WINSTON TAYLOR LLP**
333 South Grand Avenue, 38th Fl.
Los Angeles, California 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Sean G. Wieber (*pro hac vice*)
Sean.Wieber@winstontaylor.com
Sophie R. LaCava (*pro hac vice*)
Sophie.LaCava@winstontaylor.com
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive, Suite 4400
Chicago, Illinois 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Defendant Foris DAX, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOSE ORTIZ and JAVIER HERNANDEZ, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FORIS DAX, INC.,<br><br>Defendant. | Case No. 3:25-cv-08950-EMC<br><br>**DEFENDANT FORIS DAX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hearing Date: October 29, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5<br>First Amended Complaint Filed: June 22, 2026 |

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. ARGUMENTS .......... 2

A. Plaintiffs fail to plead claims for invasion of privacy (Count I) and intrusion upon seclusion (Count II). .......... 2

B. Plaintiffs fail to state a claim under CIPA Section 631(a) (Count III). .......... 6

1. Plaintiffs fail to allege that they made any "communications" containing "contents." .......... 6

2. Plaintiffs fail to allege that third parties attempted to read or learn the contents of Plaintiffs' communications while in transit. .......... 9

C. Plaintiffs fail to plead a claim for fraud, deceit, and/or misrepresentation (Count V). .......... 11

D. Plaintiffs fail to plead a claim for unjust enrichment (Count VI). .......... 13

III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.J. v. LMND Med. Grp.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ... 14

*Adler v. Cmty.*,
2021 U.S. Dist. LEXIS 201644 (C.D. Cal. Aug. 2, 2021) ... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 10

*Ayora v. Inspire Brands, Inc.*,
2026 U.S. Dist. LEXIS 126682 (N.D. Cal. June 8, 2026) ... 8

*Bartling v. Apple Inc. (In re Apple Processor Litig.)*,
2023 U.S. App. LEXIS 24257 (9th Cir. Sep. 13, 2023) ... 14

*Briskin v. Shopify Inc.*,
2026 U.S. Dist. LEXIS 11317 (N.D. Cal. Jan. 21, 2026) ... 10

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ... 6

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ... 12

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) ... 14

*DeLeon v. Wells Fargo Bank, N.A.*,
2011 U.S. Dist. LEXIS 8296 (N.D. Cal. Jan. 28, 2011) ... 12

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ... 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 4, 5, 13, 14

*Garcia v. Blackhawk Network, Inc.*,
2026 U.S. Dist. LEXIS 75154 (C.D. Cal. Apr. 1, 2026) ... 5

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ... 5, 8

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 5

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 13, 14

*LaCourt v. Specific Media, Inc.*,
2011 U.S. Dist. LEXIS 50543 (C.D. Cal. Apr. 28, 2011) .......... 13

*Lewis v. Magnite, Inc.*,
2025 U.S. Dist. LEXIS 263675 (C.D. Cal. Dec. 4, 2025) .......... 10

*Malko v. GNC Holdings, LLC*,
2026 U.S. Dist. LEXIS 172763 (C.D. Cal. July 29, 2026) .......... 2, 3

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. July 14, 2021) .......... 10

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*,
339 F.3d 1087 (9th Cir. 2003) .......... 14

*Myers v. Dick's Sporting Goods, Inc.*,
2026 U.S. Dist. LEXIS 85029 (E.D. Cal. Apr. 16, 2026) .......... 3

*Ortiz v. Deckers Outdoor Corp.*,
2026 U.S. Dist. LEXIS 100845 (N.D. Cal. May 6, 2026) .......... 10, 11

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 2, 3, 4, 5

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) .......... 12

*R.C. v. Sussex Publishers*, *LLC*,
2025 U.S. Dist. LEXIS 59491 (N.D. Cal. Mar. 28, 2025) .......... 10

*Rodriguez v. Google*,
2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) .......... 12

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 14

*Shannon v. Health Net LLC*,
2026 U.S. Dist. LEXIS 168843 (C.D. Cal. July 28, 2026) .......... 4, 5

*Snow v. Eventbrite, Inc.*,
2020 U.S. Dist. LEXIS 193249 (N.D. Cal. Oct. 19, 2020) .......... 8

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .......... 10

*Thomas v. Papa Johns Int'l, Inc.*,
2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024) .......... 5

*Torres v. Prudential Fin., Inc.*,
2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) .......... 10

*Tsering v. Meta Platforms, Inc.*,
2026 U.S. Dist. LEXIS 5762 (N.D. Cal. Jan. 12, 2026) .......... 5

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 11

*Walsh v. Dollar Tree Stores, Inc.*,
2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) .......... 13

*Yoon v. Lululemon*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 7

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 6, 7, 8, 9

**Statutes**

Cal. Penal Code § 631(a) .......... *passim*

Cal. Penal Code § 632 .......... 9, 10

**Other Authorities**

Fed. R. Civ. P. 8(a) .......... 12

Fed. R. Civ. P. 9(b) .......... 1, 12, 13

Fed. R. Evid. 201(b)(2) .......... 8

## I. INTRODUCTION

Plaintiffs' response (Dkt. 39) does not—and cannot—save the First Amended Complaint ("FAC"). The Court dismissed the original complaint because Plaintiffs failed to plead specific facts necessary to sustain their claims. *See* Dkt. 31 ("Dismissal Order"). Plaintiffs now argue that because their new allegations in the FAC are responsive to the deficiencies the Court identified, they must be sufficient. But addressing a deficiency and curing it are two different things. Indeed, Plaintiffs' new allegations only weaken their claims: the FAC now makes clear that Plaintiffs shared no genuinely personal information, disclosed no sensitive data, and suffered no damages.

To obscure those deficiencies, Plaintiffs' response paints a dramatic picture of a website invading the private financial lives of its visitors. But the actual *allegations* in the FAC are mundane. Plaintiffs visited a publicly accessible website—Crypto.com—and browsed its pages, clicked its links, and viewed information about cryptocurrency products. They did not log into private accounts, enter sensitive personal information, or conduct confidential financial transactions. They simply looked around. Tracking that activity is no more invasive than a librarian observing which books a patron pulls off the shelf in the personal finance section, or a store clerk watching a customer walk down the cereal aisle and read nutrition labels. The observer learns that something caught the browser's eye—for some reason—and nothing more. That is not the stuff of a viable privacy claim.

As explained in Crypto.com's Motion to Dismiss (the "Motion," Dkt. 38) and detailed below, each of Plaintiffs' claims fails as a matter of law. Their claims for invasion of privacy and intrusion upon seclusion (Counts I and II) fail because their new allegations confirm that no genuinely private or sensitive information was collected or disclosed—only routine browsing data that does not come close to clearing the "highly offensive" bar. Plaintiffs' "wiretapping" claim (Count III) fails because Plaintiffs still have not alleged that any "communications" containing "contents"—as opposed to mere record information like URLs—were transmitted to third parties, and they have not alleged the required in-transit interception. Plaintiffs' fraud claim (Count V) fails because the FAC still does not plead scienter or damages with the particularity required by Rule 9(b). And Plaintiffs' unjust enrichment claim (Count VI) fails because Plaintiffs do not allege enrichment at their expense and have adequate legal remedies.

The Court should dismiss the FAC with prejudice.

## II. ARGUMENTS

### A. Plaintiffs fail to plead claims for invasion of privacy (Count I) and intrusion upon seclusion (Count II).

The Court should again dismiss Plaintiffs' claims for invasion of privacy and intrusion upon seclusion. The Court previously dismissed these claims because the original complaint did not allege the specific "actions [P]laintiffs actually took on the [W]ebsite." Dismissal Order at 6. For that reason, the Court lacked "sufficient allegations to evaluate the degree of the intrusion." *Id.* Plaintiffs have now added minor details about their alleged browsing activities on Crypto.com, and those details only confirm that no genuinely personal information was shared, nor any sensitive data disclosed. Because Plaintiffs have failed to plead facts plausibly establishing that the alleged tracking of their browsing activity on Crypto.com (the "Website") was "highly offensive," these claims must be dismissed.

This Court has already recognized that the "highly offensive" standard is a "high bar" requiring an "egregious breach of the social norms." Dismissal Order at 6. Plaintiffs' new allegations do not come close to clearing that hurdle. Stripped of its rhetoric, the FAC alleges only that third parties received data reflecting three categories of activity: (1) Plaintiffs' viewing of webpages about Crypto.com's cryptocurrency trading services, products, and credit card program (*see* Resp. at 6 (quoting FAC ¶¶ 106, 116)); (2) Plaintiffs' use of the Website's navigation menus and searches for cryptocurrency ticker symbols like "BTC" and "ETH" (*id.* (citing FAC ¶ 106)); and (3) Plaintiffs' unspecified "interact[ions] with pricing charts and market data tools" (*id.* (quoting FAC ¶ 106)). In other words, Plaintiffs browsed a public website and looked at publicly available information.

The law is clear that disclosing these alleged activities to third parties is not "highly offensive." In *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025), the Ninth Circuit held that the "tracking of [a plaintiff's] interactions with [a] website" is <u>not</u> "remotely similar to the 'highly offensive' interferences . . . actionable at common law" <u>unless</u> the plaintiff can "identif[y] [any] embarrassing, invasive, or otherwise private information" collected or transmitted by the defendant. *Id.* Plaintiffs identify no such information here. The webpages viewed or links clicked by a website visitor are paradigmatic examples of routine, non-sensitive browsing activity. *See Malko v. GNC Holdings, LLC*, 2026 U.S. Dist. LEXIS 172763, at *11 (C.D. Cal. July 29, 2026) (noting that the collection and

transmission of URLs of webpages Plaintiff viewed "is analogous to a retailer watching Plaintiff browse a store's aisles" and "does not give rise to an actionable injury"). And although the tracking of information entered into website search bars, web forms, and other interactive tools could in theory be "highly offensive" if the information entered is sensitive in nature, Plaintiffs fail to plausibly allege they entered such sensitive information here. Indeed, the only search queries alleged to have been inputted by a Plaintiff into the Website are the acronyms for certain cryptocurrencies—"BTC," "ETH," "XRP," and "BCH"—which are not sensitive in nature. Moreover, as detailed below in Section II(B), Plaintiffs do not plausibly allege that these queries were in fact captured or transmitted to third parties.

Plaintiffs attempt to inflate the significance of their routine browsing by arguing that their interactions on the Website "reveal[ed] information regarding [their] financial interests, financial needs, and investment-related research." *See* Resp. at 6 (citing ¶¶ 106, 116). But no matter how many times Plaintiffs use the word "financial," they cannot transform their window-shopping into something like a bank visit. "Indeed, the monitoring of [plaintiff's] interactions with [defendant's] website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Popa*, 153 F.4th at 791. That principle applies equally in the context of arguably sensitive topics, such as health care. *See Malko*, 2026 U.S. Dist. LEXIS 172763, at *12–13 ("The same holds true with respect to browsing and searching for health-related products on a website. Merely looking for a health-related product does not necessarily reveal anything about Plaintiff's own health information.").

Moreover, even if Plaintiffs' browsing activity on the Website suggests that they were interested in cryptocurrency, there is nothing inherently sensitive about that fact. *See Myers v. Dick's Sporting Goods, Inc.*, 2026 U.S. Dist. LEXIS 85029, at *7 (E.D. Cal. Apr. 16, 2026) ("The disclosure of information about what products Plaintiffs view on a sporting goods website does not qualify as 'highly offensive'" because "preferences for conventional products" are "not sensitive or private"). The titles of the specific webpages that Plaintiffs allegedly visited on the Website are no more sensitive than the titles of personal finance books that a patron pulls from a shelf in a library. Indeed, Plaintiffs cite no authority holding that their presumed interest in cryptocurrency is "embarrassing, invasive, or otherwise private

information." *Popa*, 153 F.4th at 791. As a matter of law, Crypto.com's alleged tracking of Plaintiffs' browsing activity on the Website is not "highly offensive." *Id.*

Recognizing that *Popa* forecloses their claims, Plaintiffs raise two meritless arguments for why the Court should disregard this binding precedent. First, Plaintiffs argue that *Popa* is distinguishable because it involved "session-replay technology," not cookies. Resp. at 8. But Plaintiffs concede that session replay technology "allows a business to capture . . . customers' interactions with its website," *id.*, which is what Plaintiffs allege the cookie tracking technology does here. *See Shannon v. Health Net LLC*, 2026 U.S. Dist. LEXIS 168843, at *8–9 (C.D. Cal. July 28, 2026) (noting that cookie-tracking technology functions "similarly" to the session-replay technology at issue in *Popa*).

Next, Plaintiffs argue that *Popa* is distinguishable because the defendant there did not surreptitiously continue tracking the plaintiff after she tried to opt out. Resp. at 8. Relatedly, this Court previously noted that alleged "deceit" *can* be a kind of "plus factor" in the "highly offensive" analysis. *See* Dismissal Order at 7. But as the Court also recognized, the panel in *Facebook Tracking* "distinguished several district court cases that found no highly offensive conduct despite surreptitious tracking, where there were no allegations that the tracking continued after the plaintiffs stopped using the defendant's services." *Id.* (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, n.8 (9th Cir. 2020)). And the FAC, like the original complaint, "do[es] not allege tracking by Crypto.com that extends beyond Plaintiffs' activities on its website." *Id.* Plaintiffs' response asserts that the tracking tools used "persistent identifiers" to link multiple visits to the Website itself and "contributed to an ongoing system of cross-site surveillance," Resp. at 7, but the FAC does not assert that the trackers monitored Plaintiffs' activities on *other* websites, and Plaintiffs admit that "Defendant did not continue transmitting additional information after a particular browsing session ended." *Id.*

Thus, as in the original complaint, "[o]nce Plaintiffs left Crypto.com, while they likely remained within the data-tracking ecosystem of third-parties like Google, it cannot be said that Crypto.com continued to track them." Dismissal Order at 7. And "[w]here a company tracks limited information on its own website and discloses it to third parties, courts in this district have found that the intrusion does not meet the 'high bar' to be highly offensive." *Id.* (collecting cases). Unlike social media companies, Crypto.com does not create "the 'cradle to grave' consumer profiles at issue that tracked activity across

browsing sessions and websites." *Garcia v. Blackhawk Network, Inc.*, 2026 U.S. Dist. LEXIS 75154, at *15 (C.D. Cal. Apr. 1, 2026) (distinguishing *Facebook Tracking* on that basis and dismissing privacy claims). Another court put it this way when rejecting Plaintiffs' theory here:

> Plaintiffs further allege that they had a reasonable expectation of privacy in their electronic communications with the Website, "particularly where Defendant represented through their Cookie Settings, that users could decline non-essential cookies." . . . The *Popa* court found that the plaintiff['s] . . . allegations failed to establish how the website's tracking of her interactions caused her harm "remotely similar" to "highly offensive" interferences or disclosures that were actionable at common law. *The same is true here.* . . . [I]nformation related to interaction and behavioral data, browsing activity and account-related interactions, pages viewed, engagement data, and "persistent identifiers" . . . reveal nothing more than users' general identifying information, what the users have seen, and the products and services that interest the users.

*Shannon*, 2026 U.S. Dist. LEXIS 168843, at *7–9 (emphasis added); *see also Garcia*, 2026 U.S. Dist. LEXIS 75154, at *15 ("As in *Popa*, Plaintiff identifies 'no embarrassing, invasive, or otherwise private information' that was shared . . . The information the FAC alleges third parties were able to track largely regard Plaintiff's interactions with Defendant['s] . . . website[.]").

Lastly, Plaintiffs argue that the Court cannot assess the seriousness of the intrusion at the pleadings stage because it "entails weighing the 'extent and gravity of the invasion[.]'" Resp. at 7 (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994)). But *Hill* itself defeats Plaintiffs' argument. That case and others instruct "that courts have a role to play in weed[ing] out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant.'" *Thomas v. Papa Johns Int'l, Inc.*, 2024 U.S. Dist. LEXIS 84019, at *15–16 (S.D. Cal. May 8, 2024) (citations omitted) (deciding the "highly offensive" issue at the pleadings stage based in part on *Hill*). Indeed, the Court granted Plaintiffs leave to amend their complaint so that the Court could conduct this exact analysis. *See* Dismissal Order at 6 ("To perform the 'highly-offensive' inquiry . . . the Court must have sufficient allegations to evaluate the degree of the intrusion."). Other courts have done the same. *See, e.g.*, *Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("[Plaintiffs'] two privacy claims fail because Plaintiffs do not allege that Google's intrusion was highly offensive."); *Tsering v. Meta Platforms, Inc.*, 2026 U.S. Dist. LEXIS 5762, at *21–22 (N.D. Cal. Jan. 12, 2026) ("The Second Amended Complaint fails to plausibly

allege that the intrusion occurred in a manner highly offensive to a reasonable person." (quotation omitted)).

The Court previously dismissed Plaintiffs' common law privacy claims, and it should do so again. And because Plaintiffs have plainly said all they can about their activity on the Website, the Court should dismiss the claims with prejudice.

**B. Plaintiffs fail to state a claim under CIPA Section 631(a) (Count III).**

The Court should dismiss Count III for two independent reasons. First, Plaintiffs do not allege that they had any "communications" with Crypto.com containing "contents" that were transmitted to third parties. Second, Plaintiffs do not allege that any third parties attempted to "learn" or "read" the contents of any communications while they were in transit.

**1. Plaintiffs fail to allege that they made any "communications" containing "contents."**

Plaintiffs do not dispute that to avoid dismissal of Count III, they must allege that Crypto.com conveyed to third parties "information concerning the substance, purport, or meaning of [Plaintiffs'] communication" with the Website. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). And Plaintiffs concede that "record information" does not qualify. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014). But record information is all that Plaintiffs have alleged. *See* Mot. at 8–10.

Plaintiffs' response confirms this. Plaintiffs focus on Paragraphs 106 and 116 of the FAC (*see* Resp. at 10), which describe Plaintiffs' own alleged browsing activity (in contrast to the generic allegations elsewhere in the FAC). As explained in the Motion, those Paragraphs contain two parts. First, Plaintiffs allege what they did on the Website. Second, Plaintiffs allege which of their actions were transmitted to third parties. The second part is the relevant one: liability under Count III depends on what information was "wiretapped" by third parties, not on what information was allegedly collected by Crypto.com. *See* Cal. Penal Code § 631(a) ("CIPA") (clause four) (liability for aiding and abetting third-party wiretapping); FAC ¶ 166 (alleging in Count III that "the Third Parties" committed wiretapping). And the second part of those Paragraphs confirms that the only information allegedly transmitted to third parties was the URLs of the webpages Plaintiffs viewed:

> As alleged supra, the Third Parties' tracking technologies were designed to collect information regarding Plaintiff Ortiz's use of the Website, including the pages he viewed and the content with which he engaged, thereby revealing information regarding his financial interests, financial needs, and investment-related research. For example, each click corresponded to a URL that was transmitted to Third Parties. The URL revealed the contents of Plaintiff's communication because the URL includes the title of the page Plaintiff viewed on Defendant's website. *See, e.g., supra* ¶¶ 68, 70.

FAC ¶ 106; *see also id.* ¶ 116 (identical allegations for Plaintiff Hernandez).

Plaintiffs allege that URLs are an "example" of the information relayed to third parties. *See id.* But in fact, URLs are the *only* information that Plaintiffs specifically allege was transmitted. That is clear from the Paragraphs cited in the allegations above (¶¶ 68, 70). Those Paragraphs, as explained in the Motion at pages 9 and 10, depict and describe a screen shot in which the Website "disclose[s] to Google the exact webpage and title that the user was viewing"—nothing more. *See* FAC ¶ 70. Plaintiffs' response cites additional Paragraphs, but those add nothing relevant. *See* Resp. at 10. The screen shot and description in Paragraphs 42 and 43 do not allege any details about what specific data was transmitted to third parties. The screen shot in Paragraph 81 is like the one in Paragraph 68, except for Twitter instead of Google. Paragraph 174 merely realleges and incorporates all prior allegations, and Paragraph 175 quotes the legislative history of CIPA. Lastly, Plaintiffs cite their allegation that third parties can "eavesdrop upon, record, extract data from, and analyze conversations," *see* FAC ¶ 46, but Plaintiffs do not allege that they had any "conversations" with the Website (such as using a chat function). In sum, none of these Paragraphs, or any others in the FAC, specifically allege that third parties wiretapped any of Plaintiffs' purported "communications" other than the URLs they visited.

Plaintiffs do not dispute that mere URLs, without something more, are "record information"—not "contents" of a communication. *See Zynga Privacy Litig.*, 750 F.3d at 1107 (a "webpage address identifies the location of a webpage a user is viewing on the internet, and therefore functions like an 'address.' Congress excluded this sort of record information from the definition of 'contents.'"); *Yoon v. Lululemon*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (Section 631(a) protects "user-generated material" but not "routine identifiers"). To extend the library metaphor: a book's title and shelf location are record information—they identify what was *accessed*, not what was *said*. A patron does not create a "communication" with "content" merely by pulling a book off the shelf, even if the library transmits the

title of every book the patron touched to a third party. If, by contrast, the patron walks up to the reference desk and asks the librarian for help finding material on a particular topic, that *request* is a communication with content. *See Ayora v. Inspire Brands, Inc.*, 2026 U.S. Dist. LEXIS 126682, at *14 (N.D. Cal. June 8, 2026) (record information includes "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions," while contents include "chat conversations held over a website"). Plaintiffs' browsing activity on the Website falls squarely on the record-information side of that line.

Recognizing that mere URLs are typically record information, Plaintiffs attempt to rely on a narrow exception noted in *Zynga*: "Under some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL *containing that search term* to a third party could amount to disclosure of the contents of a communication." *Zynga*, 750 F.3d at 1108–09 (emphasis added); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) ("URLs are record information when they only reveal a general webpage address and basic identification information, but when they reproduce a person's personal search engine queries, they are contents."). But as explained at page 10 of the Motion—which Plaintiffs' response ignores—that exception does not apply here. Briefly, Plaintiffs do not allege that any of the URLs they visited contained embedded search terms; in fact, they do not allege that the Website is even *capable* of generating such URLs. *See* Mot. at 10. Without those allegations, the "embedded search" theory cannot save this claim.

Moreover, granting leave to amend on that issue would be futile because the Website's functionality makes Plaintiffs' unpled theory impossible. When a visitor enters characters into the Website's search bar, a dynamic list of webpages about specific crypto assets automatically appears in a dropdown menu, *not on a separate webpage*.[1] Thus, the search itself does not create a URL—let alone a URL containing the search query. When the visitor clicks one of the links in the dropdown menu or presses enter, the resulting URL contains the webpage title, but not the search query that led to the

[1] The Court can take judicial notice of the Website's functionality. *See Snow v. Eventbrite, Inc.*, 2020 U.S. Dist. LEXIS 193249, at *18-19 (N.D. Cal. Oct. 19, 2020) ("Judicial notice is proper because how [defendant's] own website functions currently 'can be accurately and readily determined.'" (quoting Fed. R. Evid. 201(b)(2))).

webpage. In other words, the visitor's query cannot be inferred from the URL of the webpage ultimately viewed, so the *Zynga* exception does not, and cannot, apply.

Lastly, Plaintiffs' response points to Plaintiff Ortiz's allegation that he entered certain "search terms" into the Website (FAC ¶ 106), and Plaintiffs assert that those searches are *themselves* communications. *See* Resp. at 10 n.3. But Plaintiffs relegate that argument to a footnote, and rightly so: the FAC does not allege that Ortiz's search terms were transmitted to any third parties. Thus, even if Ortiz's search terms were "communications" with the Website, they are not actionable under Count III. *See supra* at 6–8 (liability depends on what information was "wiretapped" by third parties).

Because Plaintiffs have not alleged that any "communications" with "contents" were transmitted to third parties, they have failed to state a claim under CIPA Section 631(a).

**2. Plaintiffs fail to allege that third parties attempted to read or learn the contents of Plaintiffs' communications while in transit.**

The Court should dismiss Count III for a second, independent reason: Plaintiffs fail to allege facts establishing the "in-transit" element of their claim. The relevant language of the statute is clear: it applies only when a party "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication ***while*** the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." CIPA § 631(a) (clause 2) (emphasis added). As detailed in the Motion, Plaintiffs fail to allege that any third parties attempted to "read" or "learn" any of Plaintiffs' purported communications *while*—i.e., at the same time as—they were transmitted from Plaintiffs to the Website. *See* Mot. at 10–12.

In their response, Plaintiffs do not point to any allegations of in-transit reading or learning. Instead, they argue it is enough to allege that third parties "intercepted" Plaintiffs' communications "in real time." Resp. at 11–14. That is wrong. To begin, the statute says nothing about interception, so Plaintiffs' allegations on that score are irrelevant. As another court in this District recently explained, re-writing the statute to replace "in-transit reading or learning" with "in-transit interception" would render another provision of CIPA superfluous:

> [I]n context, the better conclusion is that you must do something more than just intercept the communication while it is in transit to be held liable. That is in part because of the CIPA provision that immediately follows Section 631. As mentioned earlier, Section 632

> makes it unlawful to "eavesdrop upon or record" a "confidential communication" without the consent of all parties to the communication. Intercepting the contents of a communication and recording those contents (as [plaintiff] alleges [third-party] Meta does) would seem to be covered by Section 632. If the same conduct were covered by the second clause of Section 631(a), it would appear to render Section 632 superfluous—at least as applied to the type of internet communication at issue here. This is one reason why [defendant's] reading of the second clause of Section 631(a)—and Judge Breyer's application of it in *Torres*—makes more sense.

*Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025); *see also Torres v. Prudential Fin., Inc.*, 2025 U.S. Dist. LEXIS 73736, at *15–16 (N.D. Cal. Apr. 17, 2025) (same). Plaintiffs protest that *Doe* and *Torres* are summary judgment rulings, but their purely legal statutory analysis applies with equal force at the pleading stage. And many courts have applied the same rule in this posture.[2] While Plaintiffs cite several non-binding decisions supporting their attempt to rewrite the statute, *see* Resp. at 11–12, those decisions are not persuasive and the Court should not follow them.[3]

Moreover, Plaintiffs have not even met their own lesser requirement of in-transit "interception." As noted in the Motion—and as Plaintiffs fail to acknowledge—a court in this District recently dismissed the same essential allegations by Plaintiff Ortiz (and his counsel here) in another action. *See Ortiz v. Deckers Outdoor Corp.*, 2026 U.S. Dist. LEXIS 100845, at *6–7 (N.D. Cal. May 6, 2026). There, as here, Plaintiff Ortiz made "only conclusory allegations that [defendant's] websites tracked and collected users' data in real time." *Id.*; *see* FAC ¶ 31 (alleging only that the third parties "surreptitiously track in real time and collect Website users' personal information"). Those cursory allegations do not constitute in-transit "interception" because "the complaint does not indicate whether the cookie sends this information immediately or contemporaneously with the information's creation, nor does the complaint

[2] *Briskin v. Shopify Inc.*, 2026 U.S. Dist. LEXIS 11317, at *19–20 (N.D. Cal. Jan. 21, 2026); *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *38 (C.D. Cal. Dec. 4, 2025); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. July 14, 2021); *Adler v. Cmty.*, 2021 U.S. Dist. LEXIS 201644, at *9–12 (C.D. Cal. Aug. 2, 2021); *R.C. v. Sussex Publishers*, *LLC*, 2025 U.S. Dist. LEXIS 59491, at *22 (N.D. Cal. Mar. 28, 2025).

[3] The principal rationale of those cases is that without discovery, a plaintiff might not know whether any "reading" or "learning" occurred in-transit. *See, e.g.*, *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *15 (N.D. Cal. Oct. 1, 2024) (declining to "require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder."). But federal pleading rules "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

provide any information regarding when this transmission occurs." *Ortiz*, 2026 U.S. Dist. LEXIS 100845, at *7.

Because Plaintiffs plead no facts supporting the "in transit" requirement, their Count III wiretapping claim should be dismissed on this independent basis.

**C. Plaintiffs fail to plead a claim for fraud, deceit, and/or misrepresentation (Count V).**

Plaintiffs do not dispute that they must satisfy five elements to plead their fraud claim: (1) a false representation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damages. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (internal citation omitted). The Court did not address those elements in its prior Dismissal Order because Plaintiffs' fraud claim failed for a different reason: they failed to allege when they visited the Website with sufficient specificity. *See* Dismissal Order at 14. But adding those allegations to the FAC (however vaguely) does not relieve Plaintiffs of their obligation to plead the five substantive elements of fraud. They fail to do so in two independent respects.

First, the FAC—like the original complaint—does not allege facts showing that Crypto.com made a knowingly false statement or intentionally defrauded Plaintiffs. *See* Mot. at 14. The essence of the alleged fraud is that the Website's cookie banner told visitors that they could disable all third-party tracking, but users who clicked that button were tracked anyway. But Plaintiffs allege no *facts* showing that Crypto.com knew the "Disable All" button didn't work. Their response cites Paragraphs 34–35, 42, and 217 of the FAC on this point. But Paragraphs 34 and 35 merely allege that Crypto.com knew about the cookies and disclosed them in its privacy policy. Paragraph 42 alleges that Plaintiffs' counsel can monitor cookie tracking with unnamed "specialized tools," but Plaintiffs do not allege that Crypto.com had (or used) those tools. And Paragraph 217 does not exist.

Those same pleading deficiencies are precisely why a court in this District recently dismissed the same essential allegations by Plaintiff Ortiz (and his counsel here) in another case. *See Ortiz*, 2026 U.S. Dist. LEXIS 100845, at *3–5 ("[W]ithout more, the allegations in the complaint do not support a plausible inference that [defendant] knew that user data would be collected and transmitted to third parties regardless of whether users opted out of that collection and transmission, and accordingly do not support a plausible inference that [defendant] knew that its representations regarding whether users could opt out

were false.”). Plaintiffs ignore *Ortiz*, which was cited at page 14 of the Motion. Instead, Plaintiffs argue that knowledge and intent can be pleaded generally and “on information and belief.” Resp. at 15. But the FAC pleads no relevant facts “on information and belief.” And while knowledge and intent can be pleaded generally, Plaintiffs must allege enough facts to give rise to a plausible inference that Crypto.com knew its representations were false. *See DeLeon v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 8296, at *23 (N.D. Cal. Jan. 28, 2011) (“While the heightened pleading requirements of Rule 9(b) do not apply to allegations of knowledge or intent, Plaintiffs must still plead facts establishing scienter with the plausibility required under Rule 8(a).”). As explained above, they have not done so. Thus, this Court should dismiss Count V, with prejudice, for the same reason as in *Ortiz*. That ruling had already been issued when Plaintiffs filed their FAC, yet they chose not to cure the same pleading defect—and they ignore it entirely in their response.

Moreover, Plaintiffs’ fraud claim fails for a second reason: the FAC does not allege damages. As explained in the Motion, Plaintiffs do not plead that they provided any personal information to third parties—only browsing information—and they do not allege what value that browsing information had (if any), or how any purported value was diminished by its disclosure to third parties. *See* Mot. at 14–15. Plaintiffs’ response offers no answer. They point to their “allegations regarding invasion of protected interests, misappropriation of their information, and that their information has objective value.” Resp. at 15. But the Paragraphs they cite—FAC ¶¶ 69–73, 131, 150–51, 184—contain no such allegations. Paragraph 131, for instance, relates to the “superiority” element of Rule 23, and the other Paragraphs are equally irrelevant to damages. And even if those Paragraphs alleged what Plaintiffs claim, they would not constitute actionable damages under the case law cited in the Motion (which Plaintiffs utterly ignore).

Finally, Plaintiffs’ two cases do not help them. Their response cites *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) and *Rodriguez v. Google*, 2024 U.S. Dist. LEXIS 1290, at *35–36 (N.D. Cal. Jan. 3, 2024) for the proposition that Plaintiffs “have a stake in the value of their misappropriated data.” Resp. at 15. But again, Plaintiffs do not allege that the theoretical “value” of their browsing histories was diminished as a result of the alleged fraud. In other words, Plaintiffs fail to allege that they are economically worse off now than they were before they browsed the Website. *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App’x 613, 614–15 (9th Cir. 2021) (“Although the

studies cited by [plaintiff] establish that personal information may have value in general, Pruchnicki failed to adequately allege that her personal information actually lost value."); *Walsh v. Dollar Tree Stores, Inc.*, 2025 U.S. Dist. LEXIS 204652, at *52–53 (N.D. Cal. Oct. 16, 2025) (dismissing fraud claim based on Plaintiffs' theory here because "there are no allegations as to whether [plaintiffs] would either sell their data or pay anything to protect their data"); *LaCourt v. Specific Media, Inc.*, 2011 U.S. Dist. LEXIS 50543, at *12 (C.D. Cal. Apr. 28, 2011) (noting that complaint did not identify a "single individual who was foreclosed from entering a 'value-for-value exchange'" or explain how plaintiffs "were deprived of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party"). Accordingly, Plaintiffs' conclusory allegations that their browsing activity is "valuable" are insufficient to allege damages with the particularity required by Rule 9(b).

For these reasons, Plaintiffs' fraud claims should be dismissed.

**D. Plaintiffs fail to plead a claim for unjust enrichment (Count VI).**

As the Court made clear in its Dismissal Order, there is no independent claim for unjust enrichment unless the plaintiff "show[s] that the defendant received and unjustly retained a benefit at the plaintiff's expense." Dismissal Order at 15 (quoting *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (internal citation omitted)). The Court dismissed this Count in the original Complaint because Plaintiffs failed to plead that Crypto.com was enriched. *See id.* Without that allegation, the Court did not (and could not) decide whether any enrichment came at Plaintiffs' expense.

The FAC, like the original complaint, fails to plead that Crypto.com's alleged enrichment came at Plaintiffs' expense. In fact, Plaintiffs do not dispute that point. Instead, they argue that they are not required to plead that element. *See* Resp. at 16 (citing *Facebook Tracking*, 956 F.3d at 596). Not so. As the court explained in *Katz-Lacabe*, "Plaintiffs' appeal to *Facebook Tracking* misses the opinion's full context." 668 F. Supp. 3d at 946. In *Facebook Tracking*, the Ninth Circuit ruled that the plaintiffs had Article III standing based on their misappropriated data, even though the value of their data was not diminished, because California law permits disgorgement of profits without a financial loss to the plaintiff. But that is a separate question from whether a plaintiff can maintain a standalone cause of action for unjust enrichment when the benefit has not been retained "at the plaintiff's expense." *Katz-Lacabe*,

668 F. Supp. 3d at 946. As *Katz-Lacabe* makes clear, the answer to that question is no. *See id.* (dismissing unjust enrichment claim because, like here, "Plaintiffs and putative class members have neither directly expended their own resources, nor shown that their property has become less valuable."). Plaintiffs' claim should be dismissed on that basis.[4]

Moreover, Plaintiffs fail to allege that Crypto.com's alleged enrichment was "unjust." As explained in the Motion, Plaintiffs do not allege facts establishing that Crypto.com made a knowingly false statement or intentionally continued tracking Plaintiffs' browsing activity after Plaintiffs clicked "Disable All." Mot. at 16. Even if Crypto.com was somehow enriched by the allegedly non-functioning button, Plaintiffs fail to allege "that these profits were unjustly earned." *Facebook Tracking*, 956 F.3d at 601. Unlike in that case, Plaintiffs here do not allege that Crypto.com's business model is built upon allegedly unlawful tracking. *See id.* at 600 ("According to the complaint, Facebook sold user data to advertisers in order to generate revenue. Indeed, as alleged, Facebook's ad sales constituted over 90% of the social media platform's revenue during the relevant period of logged-out user tracking.").

Finally, Plaintiffs cannot proceed on their claim for unjust enrichment because their other claims seek money damages, meaning that Plaintiffs have an adequate remedy at law. *See* Mot. at 16. Plaintiffs do not dispute that their claims for money damages provide an adequate legal remedy. Their only response is that the cases in the Motion are inapposite because they involved "overlapping restitution claims under the CLRA and UCL, not a claim for unjust enrichment." Resp. at 17. That distinction is immaterial: a claim for unjust enrichment, like claims under the CLRA and UCL, is a "state-based equitable claim[]." *Bartling v. Apple Inc. (In re Apple Processor Litig.)*, 2023 U.S. App. LEXIS 24257, at *5 (9th Cir. Sep. 13, 2023); *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003) ("Unjust enrichment is an equitable rather than a legal claim . . . ."). And California law is clear that a plaintiff cannot proceed on a claim for unjust enrichment when adequate legal remedies are available. *See Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011)

[4] Plaintiffs' other cases do not help them. In *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1041 (N.D. Cal. 2025), the plaintiffs suffered injuries in the form of unwanted advertising based on their browsing history. And in *A.J. v. LMND Med. Grp.*, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024), the plaintiffs "paid money for [defendant's] services with the expectation that their valuable and confidential medical information would not be disclosed, and therefore failed to receive the benefit of their bargain."

(dismissing unjust enrichment claim based on "the general principle of equity that equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate").

Accordingly, Count VI should be dismissed.

## III. CONCLUSION

For these reasons, the Court should dismiss the FAC with prejudice.

Dated: August 10, 2026

**WINSTON TAYLOR LLP**

By: */s/ Kevin P. Simpson*

Kevin P. Simpson (SBN: 344644)
Kevin.Simpson@winstontaylor.com
**WINSTON TAYLOR LLP**
333 South Grand Avenue, 38th Fl.
Los Angeles, California 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Sean G. Wieber (*pro hac vice*)
Sean.Wieber@winstontaylor.com
Sophie R. LaCava (*pro hac vice*)
Sophie.LaCava@winstontaylor.com
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive, Suite 4400
Chicago, Illinois 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Defendant Foris DAX, Inc.*