GUTRIDE SAFIER LLP
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ORTIZ and JAVIER HERNANDEZ, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FORIS DAX, INC.<br><br>Defendant. | Case No. 3:25-cv-08950-EMC<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEF RE ARTICLE III STANDING<br><br>Hon. Edward M. Chen<br><br>Date: October 29, 2026<br>Time: 1:30 PM<br>Location: San Francisco, Crtrm 5, 7th Fl.<br><br>Complaint Filed: October 17, 2025 |

On August 13, 2026, the Court ordered the parties to submit supplemental briefs addressing whether Plaintiffs have Article III standing in light of *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) and *Torres v. SeatGeek, Inc.*, No. 25-cv-07118-LB, 2026 U.S. Dist. LEXIS 118457 (N.D. Cal. May 21, 2026). ECF No. 41. They do.

A concrete injury in this context means alleging a harm that is "of the kind" traditionally recognized at common law, such as the "improper disclosure of private information." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, Defendant gave Plaintiffs the right to reject or opt-out of third-party tracking of their browsing activity; they exercised that right by selecting "Disable All" cookies, but Defendant still allowed third parties to track their browsing behavior, including tracking data regarding Plaintiffs' "financial interests, financial needs, and investment-related research." FAC ¶¶ 106, 116. Since Defendant "told them that their individual information would not be shared because they could opt out of unnecessary cookies, and yet it was shared," they have alleged a harm "similar in kind to a harm recognized as actionable at common law." *Shah v. MyFitnessPal, Inc.,* 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) (discussing *Popa*). Plaintiffs therefore indisputably have Article III standing.

In *Popa*, the Ninth Circuit examined when invasions of privacy can constitute Article III injuries. 153 F.4th at 790–95. It explained that "*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Id.* at 791. That involves looking "to the *specific* underlying harm experienced by the plaintiff" and comparing it "to a *specific* common-law tort." *Id.* So not just any privacy interest codified in a statute suffices. *Id.* at 793. There, the two potentially relevant common-law torts were intrusion upon seclusion and public disclosure of private facts. *Id.* at 791. Although both torts required either the information gathered or the disclosure to be "highly offensive to a reasonable person," the Ninth Circuit explained that *TransUnion* held that "an exact duplicate is not required, and many courts required a match only in the kind of harm and not the degree." *Id.* Thus, the Ninth Circuit held that what matters is whether the defendant gathered "embarrassing, invasive, or *otherwise private information*." *Id.* (emphasis added).

Applying this framework, the Ninth Circuit determined that the plaintiff in *Popa* lacked standing to bring her privacy claims. She had visited petsuppliesplus.com to browse for pet supplies. 153 F.4th at 786. The defendant, PSP, used only Microsoft's Clarity session-replay technology, which recorded Popa's interactions with the site, including her mouse movements, clicks, browsing activity, and the products she viewed. *Id.* at 786. However, nothing ever suggested, let alone promised, that the website would not observe or record those interactions. *Id.* The Ninth Circuit held that Popa lacked Article III standing because she failed to identify any private information that was actually intercepted. *Id.* at 791. As the court emphasized, "Clarity captured mundane information, such as the pet products Popa viewed and her street name" and analogized the tracking there to "a store clerk's observing shoppers in order to identify aisles that are particularly popular." *Id.* Fundamentally, *Popa* involved ordinary browsing on a website under circumstances giving the plaintiff no reason to expect that her interactions would remain private and certainly no specific representation that they would be kept private.

That is a stark contrast to here, where Defendant expressly offered Plaintiffs the choice to prevent third parties from tracking their Website activity. FAC ¶¶ 1, 37, 107, 117. Plaintiffs exercised that choice by selecting "**Disable All**" cookies. *Id.* ¶¶ 108, 118. Yet, Defendant nevertheless facilitated and allowed third parties to place cookies on Plaintiffs' devices and collect far more data, including their browsing histories, Website interactions, user inputs, interests and preferences, referring URLs, session information, persistent user identifiers, and other information. *Id.* ¶¶ 3, 31, 110, 120. Plaintiffs thus did not merely assume that their browsing would remain private. They affirmatively exercised a choice Defendant itself provided to prevent their browsing activity from being disclosed to third parties, rendering it "otherwise private." Defendant disregarded that choice and disclosed it to third parties anyway.

Moreover, the information at issue here is not about mundane pet products. It is sensitive and invasive. Ortiz alleges that he visited Defendant's Website multiple times to research cryptocurrency prices and market performance, entered specific search terms into the Website, including "BTC," "ETH," "XRP," and "BCH," and interacted with pricing charts, menus, and market-data tools. FAC ¶ 106. Hernandez similarly visited the Website multiple times and researched cryptocurrency trading

services and financial products, evaluated Defendant's credit-card program and trading platform, and reviewed Ethereum pricing and asset-specific information. *Id.* ¶ 116. Even *Popa* recognizes that financial information is sufficiently sensitive for people to expect it to remain private. 153 F.4th at 791.

*Torres* confirms this distinction; it is a district court case, applying *Popa.* The plaintiff, Jose Torres, alleged that SeatGeek embedded third-party tracking technologies that collected his IP address, approximate location, browsing activity, and device information, enabling third parties to track him across websites, associate his activity with existing social-media profiles, and serve targeted advertisements. 2026 U.S. Dist. LEXIS 118457, at *2. Although *Torres* found no standing on the allegations before it, the court emphasized that Torres was not presented with a "pop-up blocker, consent checkbox, or other conspicuous notification before the trackers loaded." *Id.* More importantly, *Torres* recognized that a plaintiff can establish concrete injury by alleging that a defendant gathered "sensitive information or disclosed it offensively," including "inconsistently with promises to their users." *Id.* at *12. And in distinguishing cases finding standing, *Torres* specifically identified *MyFitnessPal*, explaining that there "the defendant lied to the plaintiffs and collected information related to nutrition and fitness tracking." *Id.* That is the circumstance alleged here: Defendant represented that Plaintiffs could prevent third-party tracking, Plaintiffs exercised that choice, and Defendant allegedly permitted the tracking anyway.

Courts applying *Popa* to materially similar allegations have accordingly distinguished it. In *Gabrielli v. Haleon US Inc.,* 815 F. Supp. 3d 852, 867 (N.D. Cal. 2025), Judge Orrick emphasized that "Popa never purported to have expressly 'reject[ed]' the tracking technology at issue." He also distinguished *Popa* based on the technology at issue, explaining that while "the session-replay technology [in *Popa*] was not alleged to track anything beyond her interactions with the website she chose to visit, and the information gathered was only alleged to be used by the owner of that website," the plaintiff in *Haleon*—like Plaintiffs here—"alleges that the cookies . . . store[d] on users' devices allow third parties 'to track and collect data in real time regarding . . . user input data,' which includes '[t]he information the user entered into the Websites' form fields, including search queries, the user's

name, age, gender, email address, location, and/or payment information, demographic information,' and also 'device information, session information, and/or geolocation data.'" *Id*. (citation omitted).

Further, as is the case here, the court in *Haleon* found *Popa* distinguishable because "Haleon's website explains what its cookies are capable of," i.e., that the cookies were used to "count visits and traffic sources so [it] can measure and improve the performance of its websites," and for "tracking users' browsers across other sites and building up a profile of users' interests." *Id*. at 867 (cleaned up); *compare* FAC ¶¶ 35–36 (alleging similar disclosures from the Website, including that it collects "Transactional Data, Investment Data and Usage Data"). Ultimately, the court in *Haleon* determined that the plaintiffs' "allegations are sufficient to show Article III standing." *Id*.[1]

The court in *MyFitnessPal* similarly distinguished *Popa* on facts virtually identical to those here. There, the plaintiffs alleged that the defendant "violated their privacy rights by placing certain cookies on their devices even though they had expressly opted out of receiving such cookies." 824 F. Supp. 3d at 912. Rejecting the defendant's Article III challenge, Judge Pitts explained that, "[u]nlike the plaintiff in *Popa*," the plaintiffs alleged an injury analogous to the harm traditionally actionable at common law. *Id.* at 914. Relying on the Restatement (Second) of Torts, which *Popa* cited approvingly, the court explained that "misrepresenting how private information will be used can constitute such an invasion of privacy." *Id.* (citing Restatement (Second) of Torts § 652D cmt. c, illus. 11; *Popa*, 153 F.4th at 791). Because the defendant "told them that their individual information would not be shared because they could opt out of unnecessary cookies, and yet it was shared," the plaintiffs had Article III standing. *Id.* Every court that has considered similar allegations has held the same. *See De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 U.S. Dist. LEXIS 264583, at *6 (N.D. Cal. Dec. 22, 2025) (Tse, J.) (distinguishing *Popa* and holding that De Ayora's injury was sufficiently concrete to confer standing); *Vishal Shah v. Politico LLC,* No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740, at *9 (N.D. Cal. Feb. 6, 2026) (Wise, J.) (similar); *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1134 (N.D. Cal. 2025) (similar); *see also Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 U.S. Dist. LEXIS 230964, 2025 WL 3268404, at *3

[1] Similarly, at issue here are numerous third-party tracking cookies that were placed on Plaintiffs' devices by various Third Parties, including Meta Platforms, Inc. (Facebook), Google LLC (DoubleClick and Google Analytics), X Corp. (Twitter), and Snap Inc. FAC ¶¶ 2, 50–97.

(N.D. Cal. Nov. 24, 2025) (Corley, J.) (finding Article III standing based on allegations that the defendant ignored the plaintiff's clear rejection of cookies, and thereby "deprived him of control of his personal information regarding his online activity, which is a concrete injury to his right to privacy sufficient for Article III standing").

Finally, even if the Court were to conclude that Plaintiffs lack Article III standing, dismissal must be without prejudice. A lack of Article III standing deprives a federal court of subject-matter jurisdiction; it does not constitute an adjudication on the merits. *See Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case."); *Fleck & Assocs., Inc. v. City of Phx.*, 471 F.3d 1100, 1106–07 (9th Cir. 2006) (similar).

Dated: August 20, 2026

**GUTRIDE SAFIER LLP**

*/s/ Rajiv V. Thairani*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*