Kevin P. Simpson (SBN: 344644)
Kevin.Simpson@winstontaylor.com
**WINSTON TAYLOR LLP**
333 South Grand Avenue, 38th Fl.
Los Angeles, California 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Sean G. Wieber (*pro hac vice*)
Sean.Wieber@winstontaylor.com
Sophie R. LaCava (*pro hac vice*)
Sophie.LaCava@winstontaylor.com
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive, Suite 4400
Chicago, Illinois 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Defendant Foris DAX, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOSE ORTIZ and JAVIER HERNANDEZ, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FORIS DAX, INC.,<br><br>Defendant. | Case No. 3:25-cv-08950-EMC<br><br>**DEFENDANT FORIS DAX, INC.'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S AUGUST 13, 2026 ORDER**<br><br>Hearing Date: October 29, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5<br>First Amended Complaint Filed: June 22, 2026 |

The Court ordered the parties to "submit supplemental briefs on whether there is Article III standing in this case" in light of the Ninth Circuit's opinion in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), and the district court's ruling in *Torres v. SeatGeek, Inc.*, 2026 U.S. Dist. LEXIS 118457 (N.D. Cal. May 21, 2026). *See* Dkt. No. 41. Based on those cases and other applicable case law, Plaintiffs' allegations do not establish standing. Plaintiffs' alleged injuries—the purported tracking and disclosure of their interactions with Crypto.com—are not "concrete." *See Popa*, 153 F.4th at 788 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) ("the plaintiff must have suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent'")).

Standing analysis is claim-specific. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (noting that a plaintiff "must demonstrate standing for each claim that they press"). Accordingly, for each of Plaintiffs' claims, Plaintiffs must plead and prove that their alleged injuries are concrete.

**I. Plaintiffs lack standing for their CIPA claims.**

Plaintiffs allege no "concrete" injury based on Crypto.com's alleged violation of the California Invasion of Privacy Act ("CIPA"). To determine whether a defendant's statutory violation has caused a "concrete" injury, a court must "assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts"—in other words, whether there is "a close historical or common-law analogue for their asserted injury." *Popa*, 153 F.4th at 789 (quoting *TransUnion*, 594 U.S. at 424). For website tracking claims like those here, the nearest "historical or common-law analogue[s]" are the torts of "intrusion upon seclusion" and "public disclosure of private facts." *Id.* at 791. Under both torts, the alleged invasion of privacy must be "highly offensive." *See Popa*, 153 F.4th at 791; *Shannon v. Health Net LLC*, 2026 U.S. Dist. LEXIS 168843, at *5 (C.D. Cal. July 28, 2026) ("Harm in privacy actions is the kind that would be highly offensive to a reasonable person." (quotation omitted)). Accordingly, "[i]n the privacy context, the plaintiff must allege a reasonable expectation of privacy in the information collected and harm that is 'similar to the highly offensive interferences or disclosures that were actionable at common law.'" *Torres*, 2026 U.S. Dist. LEXIS 118457, at *5 (quoting *Popa*, 153 F.4th at 791).

In *Popa*, the Ninth Circuit examined the circumstances under which a defendant's tracking of a plaintiff's interactions with a public website could be "highly offensive." The plaintiff brought a statutory

wiretapping claim and a common law claim for intrusion upon seclusion, alleging that the defendant's "session replay technology" unlawfully captured her browsing activity on the defendant's website. The Ninth Circuit held that the plaintiff suffered no concrete injury:

> [Plaintiff] does not explain how the tracking of her interactions with [Defendant's] website caused her to experience any kind of harm that is remotely similar to the "highly offensive" interferences or disclosures that were actionable at common law. Of course, an "exact duplicate" is not required, and many courts require a match only in the kind of harm and not the degree. But [Plaintiff] identifies no embarrassing, invasive, or otherwise private information collected . . . . Indeed, the monitoring of [Plaintiff's] interactions with [Defendant's] website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales.

*Popa*, 153 F.4th at 791. Moreover, the court "distinguished its facts from those in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 599 (9th Cir. 2020), which involved cradle-to-grave profiles (without users' consent) assembled across numerous websites." *Torres*, 2026 U.S. Dist. LEXIS 118457, at *6 (citing *Popa*, 153 F.4th at 793–94). Thus, without any "highly offensive" collection of a plaintiff's personal information, tracking a plaintiff's interactions with a public website does not create standing. *Id.*

**A. Plaintiffs lack standing for their claim under CIPA Section 631(a).**

Plaintiffs do not have standing for their claim under Section 631(a) of CIPA (Count III) because the alleged data collection is not "highly offensive." Following *Popa*, courts in this Circuit have identified two types of "highly offensive" data collection: (1) the *nature* of "the data collected is '*especially sensitive*,' such as 'health or financial information,'" and (2) "'the *scope* of the collection [is] so broad, for example by tracking a [p]laintiff's activity across other websites [e.g., by creating "cradle-to-grave profiles], that it renders the tracking highly offensive.'" *Malko v. GNC Holdings, LLC*, 2026 U.S. Dist. LEXIS 172763, at *7 (C.D. Cal. July 29, 2026) (emphases added) (quoting *Garcia v. Blackhawk Network, Inc.*, 2026 U.S. Dist. LEXIS 75154, at *14 (C.D. Cal. Apr. 1, 2026)).

Plaintiffs have not plausibly alleged either type of "highly offensive" data collection here. As to the *nature* of the data collected, aside from vague, conclusory allegations, Plaintiffs allege only that Crypto.com collected information about three kinds of activity on its website: (1) Plaintiffs' viewing of public webpages about Crypto.com's cryptocurrency trading services, products, and credit card program; (2) Plaintiffs' use of the website's navigation menus and searches for cryptocurrency ticker symbols like "BTC" and "ETH"; and (3) Plaintiffs' unspecified "interact[ions] with pricing charts and market data

tools." *See* First Am. Compl. (Dkt. No. 34) ¶¶ 106, 116. That information is not sensitive—let alone "especially sensitive." *See Shannon*, 2026 U.S. Dist. LEXIS 168843, at *8–9 (finding that collection of "information related to interaction and behavioral data, browsing activity and account-related interactions, pages viewed, engagement data, and persistent identifiers . . . reveals nothing more than the users' general identifying information, what the users have seen, and the products and services that interest the users" and is thus not "highly offensive"); *Malko*, 2026 U.S. Dist. LEXIS 172763, at *10–13 (finding that collection of "IP addresses, cookie and device IDs, browser metadata, and webpage URLs" from the plaintiff's online browsing of health-related products was not "highly offensive" because "[m]erely looking for a health-related product does not necessarily reveal anything about [the] [p]laintiff's own health information"). Indeed, a court recently found no standing in a website tracking case against United Healthcare, despite plaintiff's allegations that she "clicked on the website's Medicare coverage section; entered her ZIP code in Yuba County, California; proceeded to click 'View Plans' available in Yuba County; clicked on 'Plan G'; clicked on 'Medicare plans endorsed by AARP'; and finally clicked on a button to 'Learn More' about Plan G." *Magliocca v. United Healthcare Servs.*, 2026 U.S. Dist. LEXIS 186525, at *3 (E.D. Cal. Aug. 19, 2026). Just as "the mere collection of plaintiff's generic insurance browsing data is not enough to demonstrate the concrete harm necessary to reach an Article III injury-in-fact," *id.* at *10, the same is true of Plaintiffs' browsing for public information about cryptocurrencies.

As to the *scope* of the information collected, Plaintiffs have not plausibly alleged anything remotely resembling "cradle-to-grave" tracking. As this Court previously ruled, "[w]here a company tracks limited information on its own website and discloses it to third parties, courts in this district have found that the intrusion does not meet the 'high bar' to be highly offensive." Dkt. No. 31 at 7. The current complaint, like the original complaint, "do[es] not allege tracking by Crypto.com that extends beyond Plaintiffs' activities on its website." *Id.* Plaintiffs argue that their amended complaint should not be dismissed because it alleges that the tracking tools used "persistent identifiers" to link multiple visits to Crypto.com itself and "contributed to an ongoing system of cross-site surveillance." Dkt. No. 39 at 7. But Plaintiffs do not assert that the trackers monitored their activities on *other* websites, and Plaintiffs admit that "Defendant did not continue transmitting additional information after a particular browsing session ended." *Id.* Thus, as this Court ruled regarding the original complaint, "[o]nce Plaintiffs left

Crypto.com, while they likely remained within the data-tracking ecosystem of third-parties like Google, it cannot be said that Crypto.com continued to track them." Dkt. No. 31 at 7. Accordingly, Plaintiffs have failed to allege "highly offensive" tracking by Crypto.com. *See Garcia*, 2026 U.S. Dist. LEXIS 75154, at *15–16 ("At best, the [complaint] alleges that Defendant's conduct amounted to informing a third party about Plaintiff's interactions with its website. This argument is not sufficient to show that Defendant caused any injury Plaintiff may have suffered as a result of visitor data aggregated by those third parties.").

Lastly, Plaintiffs cannot create standing merely by alleging that Crypto.com continued to track them after they "rejected all" tracking. As this Court noted when it dismissed the original complaint, "deceit can be a kind of 'plus' factor in concluding whether an action is highly offensive." Dkt. No. 31 at 7 (citation omitted). However, that factor does not transform otherwise innocuous data collection into highly offensive conduct. *See Garcia*, 2026 U.S. Dist. LEXIS 75154, at *13 ("misrepresentation alone" is not "enough to meet the highly offensive bar"). Accordingly, because Plaintiffs do not allege that the data collected was especially sensitive or that the collection continued after Plaintiffs left Crypto.com, Plaintiffs have failed to allege any "highly offensive" conduct. *See, e.g.*, *Shannon*, 2026 U.S. Dist. LEXIS 168843, at *7–9 (concluding that the defendant's alleged tracking of the plaintiff's interactions with the defendant's website was not "highly offensive" despite allegation that the defendant misrepresented cookie functionality); Dkt. No. 31 at 7 (this Court concluding that "allege[d] surreptitious collection, contrary to . . . representation that Plaintiffs could disable cookies" was not "highly offensive" because "there were no allegations that the tracking continued" after Plaintiffs left the website).

**B. Plaintiffs lack standing for their claim under CIPA Section 638.51.**

Plaintiffs lack standing for their claim under Section 638.51 of CIPA (Count IV) because, by definition, a "pen register" does not capture the "contents of a communication" and thus cannot cause a "highly offensive" invasion of privacy under *Popa* and its progeny. The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, *but not the contents of a communication*." Cal. Penal Code § 638.50(b) (emphasis added). Thus, a pen register captures *only record information*; if the device captures "contents," it is not a pen register.

Accordingly, the only injury Plaintiffs allege under Count IV is the disclosure of their "IP

address[es] and user-agent information" and other "routing, addressing, or signaling information." Dkt. No. 34 ¶ 178. And Plaintiffs admit that this information "*does not constitute the content* of Plaintiffs' and the Class members' electronic communications with the Website." *Id.* ¶ 180 (emphasis added). Thus, collecting this information cannot be "highly offensive" under *Popa*, and Plaintiffs lack standing to maintain their Section 638.51 claim. Indeed, courts have repeatedly held that disclosure of record information does not confer standing. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1181 (N.D. Cal. 2025) ("As in *Phillips*, the information at issue here—an IP address—is not sufficiently private or personal to be analogous to the type of harm recognized in traditional privacy torts." (citing *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 993 (9th Cir. 2023)); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("Plaintiffs do not plausibly allege anything more than the collection of IP addresses, and there is no legally protected privacy interest in IP addresses."). And while Plaintiffs allege they were misled about the disclosure of their record information, that does not change the standing analysis. *See Khamooshi*, 786 F. Supp. 3d at 1179 ("That [principle] remains true even if the information is revealed on the assumption that it will be used only for a limited purpose." (citation omitted)).

## II. Plaintiffs lack standing for their common law claims.

Finally, Plaintiffs lack standing for their common law claims for invasion of privacy (Count I), intrusion upon seclusion (Count II), fraud (Count V), and unjust enrichment (Count VI). For long-established common law claims such as these, the inquiry as to whether the plaintiff has plausibly alleged a concrete injury under Article III essentially merges with the inquiry as to whether the plaintiff has plausibly alleged the injury element of the claim. *See, e.g.*, *Blalock v. FCA US, LLC*, 2026 U.S. Dist. LEXIS 184583, at *13 (C.D. Cal. Aug. 14, 2026) (applying same standing analysis to intrusion upon seclusion claim as CIPA claim). In other words, for these claims, the "close historical or common-law analogue[s]," *Popa*, 153 F.4th at 789, are the claims themselves. As set forth in Crypto.com's briefing on its motion to dismiss the current complaint, Plaintiffs have failed to plausibly allege cognizable injuries as to each of their common law claims. *See* Dkt. Nos. 38 at 5–7, 40 at 2–6, 12–13. For these same reasons, they lack standing to press their claims in this Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs' allegations fail to establish standing for their claims.

Dated: August 20, 2026

**WINSTON TAYLOR LLP**

By: */s/ Kevin P. Simpson*

Kevin P. Simpson (SBN: 344644)
Kevin.Simpson@winstontaylor.com
**WINSTON TAYLOR LLP**
333 South Grand Avenue, 38th Fl.
Los Angeles, California 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Sean G. Wieber (*pro hac vice*)
Sean.Wieber@winstontaylor.com
Sophie R. LaCava (*pro hac vice*)
Sophie.LaCava@winstontaylor.com
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive, Suite 4400
Chicago, Illinois 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Defendant Foris DAX, Inc.*