United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ORTIZ, et al.,<br>Plaintiffs,<br>v.<br>FORIS DAX, INC.,<br>Defendant. | Case No. 25-cv-08950-EMC<br>**ORDER DISMISSING CASE**<br>Docket No. 38 |

Plaintiffs Jose Ortiz and Javier Hernandez ("Plaintiffs"), individually and on behalf of a putative class, bring this action against Defendant Foris Dax, Inc. ("Defendant"). Plaintiffs assert that Defendant violated their privacy by using third-party cookies to collect information about their activities on Defendant's website and transmit that information to third parties, despite Plaintiffs' opting out of such cookies. Plaintiffs allege invasion of privacy, intrusion upon seclusion, fraud, unjust enrichment, and violations of the California Invasion of Privacy Act. Defendant moves to dismiss for failure to state a claim for relief.

Defendant does not raise standing as a ground for dismissal. However, the Court addresses the issue of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) sua sponte given its independent duty to assess jurisdiction. *See Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (federal courts have "an independent duty to assure that standing exists, irrespective of whether the parties challenge it").

Because Plaintiffs fail to adequately allege facts that would establish Article III standing, the Court hereby **GRANTS** Defendant's motion to dismiss without prejudice.

/

/

United States District Court
Northern District of California

# BACKGROUND

## A. Factual Background

Plaintiffs Jose Ortiz and Javier Hernandez are residents of California. Dkt. No. 34 ("FAC") ¶¶ 6–7. Defendant Foris Dax, Inc. is a Delaware corporation with its headquarters and principal place of business in Tyler, Texas. *Id.* ¶ 8. Defendant operates www.crypto.com (the "Website"), a cryptocurrency exchange website. *Id.* ¶ 1.

Plaintiffs allege that they repeatedly visited the Website to research cryptocurrencies, including prices, rates, and market performance, and to evaluate its credit card program and trading platform. *Id.* ¶¶ 104, 106, 116. The Website allegedly uses third-party cookies to collect visitors' browsing and device data, including website interactions, user inputs (such as name, email address, and payment information), demographics, preferences, shopping behavior, device and session information, identifiers, and geolocation, and allows companies like Meta (Facebook), Google, X (Twitter), and Snap Inc. (Snapchat) (collectively, the "Third Parties") to track users across websites. *Id.* ¶¶ 2–4, 30–31, 45, 111, 121. The Third Parties use information collected on the Website as one input in their broader collection of data to build a more comprehensive profile about the user. *Id.* ¶¶ 45, 111.

Visitors to the Website are presented with a cookie consent banner disclosing the Website's use of cookies and offering users the option to "Accept All," "Disable All," or "Customize Settings." *Id.* ¶¶ 1, 37. Plaintiffs allege that, despite their selecting "Disable All," Defendant placed cookies on their devices and transmitted their data to the Third Parties. *Id.* ¶¶ 108–11, 118–21. The data provided by the Website contributed to the Third Parties' ability to create "comprehensive user profile[s] that reflected Plaintiff[s'] behavior, preferences, and demographics." *Id.* ¶¶ 111, 121.

Plaintiffs allege that while visiting the Website, they researched specific cryptocurrencies. *Id.* ¶¶ 106, 116. Thus, they allege, the third-party cookies were able to collect information about their "financial interests, financial needs, and investment-related research." *Id.* Because Plaintiffs' alleged activity on the Website was limited to browsing and entering search terms within the website, Plaintiffs do not allege that the tracking technology had an opportunity to

collect personal information like their names, email addresses, or payment information. *Id.* The only identifiers Plaintiffs allege were transmitted to the Third Parties were IP addresses, user-agent data, and cookie or browser IDs, which are non-personal alphanumeric device- or browser-level identifiers. *Id.* ¶¶ 28, 31, 33, 55, 62–63, 76, 89–90, 178–79. For example, the FAC alleges that the Website encourages visitors to create accounts, but does not allege that Plaintiffs created accounts, logged in, or filled out any forms with personal details. *Id.* ¶ 33. Similarly, the FAC alleges that Facebook's "c_user" cookie stores a logged-in user's unique Facebook ID, linking the user to their Facebook profile. *Id.* ¶ 58. But, again, the FAC does not allege that Plaintiffs had Facebook accounts or were logged in while visiting the Website. Additionally, the screenshots of data transmitted to the Third Parties appear to contain only page URLs and titles, event types, timestamps, screen size and device/browser details, and alphanumeric unique IDs. *Id.* ¶¶ 51–56, 68–72.

**B. Procedural History**

Plaintiffs filed this lawsuit on October 17, 2025, asserting various privacy-related claims under California law. Dkt. No. 1. Defendant filed a Motion to Dismiss, which the Court granted in part. *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *9 (N.D. Cal. May 21, 2026). Dismissal was with leave to amend. On June 22, 2026, Plaintiffs filed an amended complaint. Dkt. No. 34. Defendant again moved to dismiss. Dkt. No. 38. Defendant does not raise standing as a ground for dismissal, but the Court addresses the issue sua sponte.

## DISCUSSION

A federal court may exercise jurisdiction only when a plaintiff has established Article III standing. Article III standing requires that a plaintiff's privacy injury be "concrete" and "actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). For intangible injuries arising out of alleged privacy violations, courts ask "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). The fact of a statutory violation, itself, does not establish Article III standing. Instead, "*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th

784, 791 (9th Cir. 2025). The analysis must be "particularized to a plaintiff's circumstances and benchmarked to a specific tort." *Id.*

In *Popa*, the Ninth Circuit held that a plaintiff had not demonstrated standing where session-replay technology, which "allows a business to capture and reproduce customers' interactions with its website[,]" only collected the plaintiff's "pet-store preferences and her street name" while she browsed a pet-supply website. 153 F.4th at 786, 791. The court held that because the plaintiff failed to identify any "embarrassing, invasive, or otherwise private information" gathered by the defendant, the site's tracking was more analogous to "a store clerk's observing shoppers" than an intrusion into a traditionally protected "sensitive sphere." *Id.* at 791–92. The court recognized that the analysis could differ where the information collected includes inherently sensitive information like medical or financial information. *Id*.

The information Defendant allegedly collected about Plaintiffs is not materially more sensitive than the information collected in *Popa*. Plaintiffs allege that their browsing history was collected while they visited the Website, where they navigated menus, reviewed pricing data, and entered search terms relating to cryptocurrency. FAC ¶¶ 33, 106, 116. Plaintiffs allege that the cookies could, in theory, collect "user input data" including "the user's name, age, gender, email address, location, and/or payment information" and that the cookies enable third parties to "surreptitiously track in real time and collect Website users' personal information," but they do not allege that they entered any such information into the Website. *Id.* ¶¶ 31, 104, 106, 114, 116. Nor do Plaintiffs allege any information about their personal finances was disclosed and transmitted to third parties.

Standing must be "particularized to a plaintiff's circumstances and benchmarked to a specific tort." *Popa*, 153 F.4th at 791. Thus, the Court evaluates standing based on what Defendant's tracking actually revealed about Plaintiff, not what Defendant could, in theory, collect about another visitor to the Website. Based on the allegations regarding the information collected from the Plaintiffs, they cannot establish the concrete injury required for Article III standing.

Plaintiffs argue that Defendant collected their sensitive financial information. Dkt. No. 42 at 3–4. But the information allegedly collected here only involved Plaintiffs' non-identifiable

browsing data on a public website about cryptocurrency prices and market performance, not any information about Plaintiffs' *own* finances. *Id.* To be sure, the collection of information about a party's "own financial information" may be sensitive enough so as to constitute a concrete harm sufficient to establish standing. *Straight v. Edfinancial Servs., LLC,* 2026 WL 2087412, at *3 (N.D. Cal. July 20, 2026). *See Garcia v. Truist Fin. Corp.,* 825 F. Supp. 3d 1149, 1161–62, 1169 (C.D. Cal. 2026) (finding standing where plaintiff alleged the disclosure of sensitive personal information provided in a loan application); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *1–2, *4–6 (N.D. Cal. Jan. 27, 2026) (finding standing when defendant itself allegedly tracked users across websites and sold detailed profiles, tied to personal identifiers, that included plaintiff's own "credit score," "yearly household income," and "levels of investable assets"). *See also Tanner v. FCA US LLC*, 2026 WL 2754590, at *3 (E.D. Cal. Sep. 16, 2026) (finding standing based on "the collection and transmission of plaintiff's personal information, . . . including [plaintiff's] VIN, home address, and payment-related financial information"). However, that is not what Plaintiffs allege was collected here. *See Timothee v. Meta Platforms, Inc.*, 2026 WL 1130363, at *5 (N.D. Cal. Apr. 27, 2026) ("[D]isclosing that someone accessed food-resource information on a public website is not similar to revealing that someone applied for welfare and does not establish an injury-in-fact.").

While information about Plaintiffs' activities on the Website might suggest something about their financial capacity or interests, district courts in the Ninth Circuit have held that information about a plaintiff's browsing or research activities on a website involving potentially sensitive subject matter is not itself information of the kind that would constitute a "highly offensive" intrusion actionable at common law. *See, e.g.*, *Malko v. GNC Holdings, LLC*, 2026 WL 2218133 at *3–4 (C.D. Cal. July 29, 2026) (a vitamin retailer's collection of visitors' product-viewing history did not confer standing); *Magliocca v. United Healthcare Servs., Inc.*, 2026 WL 2444750, at *4–5 (E.D. Cal. Aug. 19, 2026) (a plaintiff who browsed Medicare plans on an insurer's website lacked standing because the "vaguely health-related nature of her information d[id] not reflexively render that information" sensitive or private where it revealed only the generic terms of an insurance plan); *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *5

(S.D. Cal. Feb. 23, 2026) (a plaintiff who searched for information about sexually transmitted infections on a health-information website lacked standing because the website was "not a patient portal" and the searches were not "tied to his personal medical history"). *Cf. Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 492 (9th Cir. 2019) (holding that a third party's unauthorized acquisition of the plaintiff's own credit report inflicted a concrete injury because "a credit report can contain highly personal information"); *Saeedy v. Microsoft Corp.*, 2024 WL 4945036, at *7–9 (W.D. Wash. June 13, 2024) (finding injury in fact sufficient for Article III jurisdiction only after the plaintiffs alleged that they were logged into their Microsoft accounts while using the browser to access their own banking, retirement, brokerage, and tax accounts).

Plaintiffs allege that Defendant's cookies "cause the Third Parties to track and collect data on users' behaviors and communications," and that "user data can be correlated and combined with other data sets to compile comprehensive user profiles that reflect consumers' behavior, preferences, and demographics (including psychological trends, predispositions, attitudes, intelligence, abilities, and aptitudes)." FAC ¶ 45. Plaintiffs further allege that the Third Parties were able to "create a comprehensive user profile that reflected Plaintiff's behavior, preferences, and demographics." *Id.* ¶¶ 111, 121. It is true that disclosure of information that allows a third party to create a "cradle-to-grave" profile can create an injury sufficient to establish standing. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020). But where a plaintiff does not allege that a third party "has in fact been able to collect and deanonymize information from other websites that is materially more sensitive" than the non-sensitive information collected from the defendant, there is not an invasion sufficient to create standing. *Lutge v. Timex.com, Inc.*, 2026 WL 2691100, at *4 (N.D. Cal. Sep. 14, 2026). Such is the case here; Plaintiffs make no such specific allegation that any third party in fact collected information about them that was materially more sensitive than that collected by Defendant.

It is also true that visitors to a site have "a reasonable expectation of privacy as to online activity that a website affirmatively represents that it will not track." *Ortiz*, 2026 WL 1430720, at *3 (citing *In re Facebook*, 956 F.3d at 602). The use of deceit can be a "'plus' factor" elevating otherwise borderline conduct to a "highly offensive" intrusion. *In re Google Location Hist. Litig.*,

United States District Court
Northern District of California

514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) (quoting *Heeger v. Facebook, Inc.*, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019)). "However, deceit alone does not convert every instance of routine information collection into a 'highly offensive' invasion." *Lutge*, 2026 WL 2691100, at *3 (holding that a watch retailer's alleged misrepresentation that the plaintiff had opted out of cookie tracking did not constitute a highly offensive intrusion because the information allegedly collected about the plaintiff was not sufficiently sensitive). "The key is the sensitivity of the information collected." *Id.* *See also Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *5–6 (C.D. Cal. Apr. 1, 2026) (finding no standing where, despite allegations of deceit, the complaint failed to allege that the tracking collected especially sensitive information, rejecting the view that "misrepresentation alone is enough to meet the highly offensive bar").

On the allegations of the FAC, Plaintiffs have not established Article III standing. Therefore, the Court must dismiss for lack of jurisdiction. The Court, however, cannot say with certainty that any further amendment would be futile.

Accordingly, the Court **GRANTS** Defendant's motion to dismiss with leave to amend within 30 days.

**IT IS SO ORDERED**.

Dated: October 6, 2026

EDWARD M. CHEN
United States District Judge